**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**IN RE: SEIZURE OF APPROXIMATELY $12,116,153.16 AND ACCRUED INTEREST IN UNITED STATES CURRENCY REPRESENTING:** )

**$475,607.10 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 8200875, AND KNOWN AS THE PIEDADE PEDRO ALMEIDA ACCOUNT, HELD IN THE NAME OF OR FOR THE BENEFIT OF PIEDADE PEDRO ALMEIDA AT VALLEY NATIONAL BANK;** )

**$1,026,455.90 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 45200491, AND KNOWN AS THE AVION RESOURCES LTD. ACCOUNT, HELD IN THE NAME OF OR FOR THE BENEFIT OF GUSTAVO XERFAN HABER AND MICHAEL HOMCI HABER;** )

**$1,343,746.05 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 45200483, AND KNOWN AS THE CHETTIAR BUSINESS, INC. ACCOUNT, HELD IN THE NAME OF OR FOR THE BENEFIT OF JANINE RIBIERO AND JOACYR REINANDO;** )

**$1,510,379.08 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 9006863, AND KNOWN AS THE FARSWISS ASSET MANAGEMENT LTD. ACCOUNT, HELD IN THE NAME OF OR FOR THE BENEFIT OF RUY ULHOA CINTRA ARAUJO;** )

**$2,675,387.73 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 9008295, AND KNOWN AS THE GATEX CORPORATION ACCOUNT, HELD IN THE NAME OF OR FOR THE** )

**BENEFIT OF ANTONIO PIRES DE ALMEIDA;**

**$1,698,878.23 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 9006556, AND KNOWN AS THE HARBER CORPORATION ACCOUNT, HELD IN THE NAME OF OR FOR THE BENEFIT OF ANTONIO PIRES DE ALMEIDA;**

**$84,260.01 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 9004008, AND KNOWN AS THE HARBORSIDE CORPORATION ACCOUNT, HELD IN THE NAME OF OR FOR THE BENEFIT OF JOAO CARLOS DA CUNHA AND RONALDO SPEISS FERNANDES CORTEZ;**

**$285,945.16 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 9009570, AND KNOWN AS THE SAFEPORT INVESTMENT CORPORATION ACCOUNT,HELD IN THE NAME OF OR FOR THE BENEFIT OF JOAO CARLOS DA CUNHA AND RONALDO SPEISS FERNANDES CORTEZ;**

**$800,968.88 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 9007663, AND KNOWN AS THE MABON CORPORATION ACCOUNT, HELD IN THE NAME OF OR FOR THE BENEFIT OF ELCIO AREIAS AND ANTONIO CARNEIRO;**

**$1,624,717.06 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 9010133, AND KNOWN AS THE MIDLAND FINANCIAL, INC. ACCOUNT, HELD IN THE NAME OF OR FOR THE**

**BENEFIT OF HENRIQUE LAMBERTI AND MARIANEL GANDOLFO;**

**$285,701.87 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 9204181, AND KNOWN AS THE BENEFICA ACCOUNT, HELD IN THE NAME OF OR FOR THE BENEFIT OF FARES BAPTISTA PINTO;**

**$237,829.82 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 9004681, AND KNOWN AS THE TIGRUS CORPORATION ACCOUNT, HELD IN THE NAME OF OR FOR THE BENEFIT OF POMPEU COSTA LIMA PINHEIRO MAIA;**

**$86,401.27 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 9200172, AND KNOWN AS THE POMPEU MAIA ACCOUNT, HELD IN THE NAME OF OR FOR THE BENEFIT OF POMPEU COSTA LIMA PINHEIRO MAIA.**

**EX-PARTE APPLICATION OF THE UNITED STATES FOR A PROTECTIVE ORDER PURSUANT TO 28 U.S.C. § 2467(d)(3)(B) AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

The United States of America, by and through its undersigned attorneys, respectfully requests that this Court issue a Protective Order pursuant to 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii) and 18 U.S.C. § 983(j) to enforce ten (10) foreign restraining orders issued by the 2nd and 4th Federal Criminal Courts of Paraná, Brazil, to freeze and restrain the captioned funds, totalling approximately $1.2 million, which were previously located in thirteen (13) bank accounts held at the Valley National Bank (formerly Merchants Bank) in New York City

associated with the captioned account holders. The account holders are all charged in Brazil with operating illegal money financial institutions, money laundering violations, and other financial crimes under Brazilian law. The Government of Brazil has made a formal request under the Mutual Legal Assistance in Criminal Matters Treaty between the United States and Brazil (the "MLAT"), signed by the United States and Brazil on October 14, 1997, and ratified by the United States on September 28, 1998, S. Treaty Doc. No. 105-42, asking the United States to enforce these 13 restraining orders. The instant Application seeks the restraint and seizure of the captioned funds, now in the possession of the District Attorney for New York County, New York, New York ("DANY"), which have been identified for restraint and forfeiture by the Brazilian authorities, and recognized as forfeitable by Brazilian courts of competent jurisdiction. The United States is coordinating with the DANY in this response to Brazil's MLAT request. At such time as final judgments of forfeiture are rendered by the Brazilian courts, and submitted to the United States for enforcement, the United States will seek enforcement of these orders in this Court pursuant to 28 U.S.C. § 2467(b).

## I. JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2467, and venue is proper with this Court pursuant to 28 U.S.C. § 2467(c)(2)(B) which provides in relevant part that "venue [for 2467 actions] shall lie in the district court for the District of Columbia . . . ."

## II. APPLICATION

To preserve property in the United States that may be the subject of a future foreign forfeiture order, "the Government may apply for, and the Court may issue, a restraining order pursuant to section 983(j) of title 18 . . . " of the United States Code. 28 U.S.C. § 2467(d)(3)(A).

To facilitate this process, the Court is empowered to "register and enforce a restraining order that has been issued by a court of competent jurisdiction in the foreign country and certified by the Attorney General pursuant to subsection (b)(2)."[1] This Court is further permitted to "take any other action to seize, secure, maintain, or preserve the availability of property subject to ... forfeiture." 18 U.S.C. § 983(j)(1).

From December 2004 to March 2006, Federal Judges Sergio Fernando Moon, Antonio Carlos Almeida Campelo, and Gueverson Farias of the 2nd and 4th Federal Criminal Courts of Paraná ("Brazilian Courts"), issued a total of ten restraining orders against the captioned funds. True and correct copies of the Brazilian Restraining Orders and their English translations are attached to the proposed Order as Exhibits A through J. On April 17, 2008, the Assistant Attorney General for the United States certified that it was in the interest of justice for the United States to certify these Brazilian Restraining Orders for enforcement in this Court. A true and correct copy of the Assistant Attorney General Certification is attached hereto as Exhibit A.

Since the requirements of 28 U.S.C. § 2467(d)(3)(B)(ii) have been met, the United States respectfully requests that this Court issue a Protective Order against the assets identified in the Brazilian Restraining Orders and Brazilian MLAT request, and that such Order remain in place until forfeiture proceedings in Brazil have been concluded.

## III. STATEMENT OF POINTS AND AUTHORITIES

As previously stated, 28 U.S.C. § 2467(d)(3)(A) grants this Court authority to "register and enforce a restraining order that has been issued by a court of competent jurisdiction in [a] foreign

[1] The Attorney General delegated this certification authority under Section 2467 to the Assistant Attorney General for the Criminal Division pursuant to order number 2820-2006.

country and certified by the Attorney General pursuant to subsection (b)(2)," in order to preserve its availability for forfeiture. 28 U.S.C. § 2467(d)(3)(B)(ii). "[T]he Attorney General or the designee of the Attorney General" must determine "whether, in the interest of justice, to certify the request . . . ." 28 U.S.C. § 2467(b)(2). Section 2467(d)(3)(A) permits this authority to preserve the assets, as permitted under 18 U.S.C. § 983(j), which permits the Court to "take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture." 18 U.S.C. § 983(j)(1).

As demonstrated below, the United States has met the statutory standards and, therefore this Court should issue the proposed protective order against the captioned assets pursuant to 28 U.S.C. § 2467(d)(3)(B)(ii).

A. FACTUAL BACKGROUND

This application arises from a lengthy Brazilian investigation into, and prosecution of, at least 23 Brazilian citizens and 10 companies associated with the subject funds.[2] The funds were previously held in 13 accounts at the Merchants Bank of New York, New York (now Valley National Bank), which were established and maintained by Maria Carolina Nolasco, a Portuguese-born naturalized U.S. citizen and former bank official at Merchants Bank. Ms. Nolasco has been convicted in the United States of knowingly assisting the Brazilian defendants in committing violations of United States criminal law. She was charged and convicted in the U.S. District Court for the District of New Jersey in 2004 for violations of 18 U.S.C. § 1960 (operating an unlicensed money remitter business in the United States), as well as several counts of federal

[2] The factual summary set forth below is derived from allegations and documentation produced by the Brazilian authorities in their mutual legal assistance request, as well as information elicited during a the Carolina Nolasco prosecution in the District of New Jersey.

income tax evasion for failure to pay taxes on the commissions she earned from the services she provided to the Brazilians. Approximately $21.2 million in funds were initially seized by federal authorities in New Jersey, of which the approximately $12.1 million involved in this request constituted a portion. As part of Nolasco's criminal case, approximately $3.1 million of those funds were forfeited. Subsequently, the DANY filed forfeiture actions against the remaining funds, which were transferred to New York custody, and approximately $5.3 million was forfeited in that state forfeiture case. A portion of the initially seized funds have been released.

The government of Brazil has obtained criminal charges against the 23 natural persons, and the 10 legal entities used by them, for violations of Brazilian law which are similar to the U.S. provisions of 18 U.S.C. §§ 1956 (money laundering), 1960 (operating an unlicensed money remitter business), and 1344 (bank fraud). Restraining Orders have been issued in Brazil over the past several years by the supervising judges on those cases, and forfeiture of the subject funds will be sought upon a successful conclusion of the Brazilian criminal cases. Brazil has sought the enforcement of those restraining orders here.

1. The Brazilian Offenses

The defendants have been charged in Brazil with violations of Brazil's laws against the laundering of proceeds of crime, the operation of illegal or unlicensed financial institutions, and conspiracy to commit criminal financial activity. Brazilian Law 7492/86: Article 4 criminalizes the fraudulent operation of a financial institution; Article 16 criminalizes the operation of an unauthorized financial institution; and Article 22 criminalizes unauthorized money exchange operations. Brazilian Law 9613/98: Article 1 criminalizes the concealment and disguise of the true nature, origin, location, disposition, movement or ownership of assets that result from acts

against the Brazilian financial system. Under provisions of the Brazilian Criminal Procedure Code and Penal Code, the subject funds are subject to initial restraint and to forfeiture if the defendants are convicted at the conclusion of the proceedings.

Illegal money transmitting businesses, known as "doleiros" (or "dollar dealers") in Brazil, are a major underground banking pipeline, similar to the Black Market Peso Exchange, used by criminals for the transmission of criminal proceeds, as well as by others for the transmission of payments for commercial transactions while evading financial reporting requirements in Brazil. Brazilian authorities use the term "doleiro" to refer to an individual or business engaged in an illegal and unauthorized foreign money remittance system. In such a system, ready supplies of funds must remain available in banks in both of the countries involved.

As a parallel exchange system which operates outside of the control and regulation of the Brazilian Central Bank (BACEN), the doleiro system generally involves the transfer of funds in Brazilian currency (usually in cash) by a client to a tourist cambio in Brazil. Brazilian cambios are licensed to perform travel agency functions, as well as the exchange of foreign currency, but are not permitted to perform any other financial transactions. The cambio then sends information to a cooperating person (such as Carolina Nolasco) in the United States, requesting that an equivalent amount of funds be wired, as requested by the client. In this investigation, the activity sometimes involved the shipping of products from the United States, and sometimes had no apparent associated legitimate commercial activity. U.S. dollar accounts in the names of fictitious entities, such as those at the Valley National Bank in this case, are maintained to permit the payment of U.S. dollars, at the client's direction, without any money actually being sent out of Brazil. Like most underground banking systems, such as the *hawala*, this process circumvents the

regulatory Central Banks in both countries, and permits the laundering of the proceeds of international crime and other funds below the radar detection of banking and law enforcement authorities.

2. Factual History of Doleiros in This Case

The investigations in this case discovered that some of the Brazilian doleiros which established accounts at the Valley National Bank were receiving funds from known drug organizations in South America. The Brazilian defendants accepted funds from their cash customers in Brazil, and transmitted faxes to Carolina Nolasco at Valley National Bank to request that funds from certain designated accounts at Valley National Bank be released at the clients' directions. Nolasco shifted credits from account to account in order to maintain sufficient balances to cover the requested transactions. Nolasco, who, like the cambios, earned a commission on the transactions, paid or wired funds from the specified Valley National Bank accounts to the identified recipients.

The funds collected by the Brazilian doleiros were sometimes sent to the U.S. accounts using a series of wire transfers routed through other countries, and were sometimes sent in the forms of checks by FedEx directly to Carolina Nolasco. These transactions were designed to create the appearance of legitimate commercial international activity with the United States.

All of the businesses that held accounts at Valley National Bank were offshore companies that had no legitimate commercial activities, formal headquarters, officers, or employees. These account holders were, in fact, fictitious businesses created solely as vehicles to perpetrate the illicit laundering operations, designed to conceal and disguise any transparency of the financial transactions.

Listed below are the thirteen accounts for which the United States is seeking restraint and seizure. The information provided illustrates the extent of involvement of each account and individual in the larger money remitting scheme. Many of the accounts interacted with each other. All of the signatories on the accounts have been charged with money laundering, illegal financial transactions, and illegal money transmitting violations under Brazilian law. The investigations indicated that these 13 accounts were used exclusively for receiving and paying funds as described above, and are subject to the eleven Brazilian Restraining Orders which are attached.

(a) Piedade Pedro Almeida (Exhibit A attached to proposed Order)

Piedade Pedro Almeida ("P.P. Almeida") utilized account number 8200875 at Valley National Bank, managed by Nolasco, which is restrained by order of Federal Judge Sergio Fenanado Moro dated January 26, 2006, attached as Exhibit A to the proposed Order. During six months in 2002, approximately $10.2 million was paid into the account and $10.5 million was paid out. From 1998 through 2002, $68 million in funds passed through the account. P.P. Almeida's account was associated with MCT Centro de Communicao and Gadi Viagens e Turismo (Gadi), a known Brazilian turist cambio. Gadi also filed false tax returns with Brazilian authorities. P.P. Almeida and Gustavo Henrique Correia Puga have been charged with money laundering, illegal financial transactions, and illegal money transmitting violations under Brazilian law.

(b) Avion Resources Ltd. (Exhibit B attached to proposed Order)

Avion Resources Ltd. ("Avion") was incorporated in the British Virgin Islands in March 1994. Avion utilized account number 45200491 at Valley National Bank, managed by Nolasco,

and restrained by order of Substitute Federal Judge Antonio Carlos Almeida Campelo dated March 22, 2005, attached as Exhibit B to the proposed Order. During six months in 2002, approximately $8.8 million was paid into the account and $8.3 was paid out. Avion was associated with Monopolio Cambio & Turismo Ltd, a known Brazilian turist cambio. Two of the account signatories, Gustavo Xerfan Haber and Michael Homci Haber, have been charged with money laundering, illegal financial transactions, and illegal money transmitting violations under Brazilian law.

(c) Chettiar Business, Inc. (Exhibit C attached to proposed Order)

Chettiar Business, Inc., ("Chettiar") was incorporated in the British Virgin Islands in September 2002. Chettiar utilized account number 45200483 at Valley National bank, managed by Nolasco, and restrained by order of Federal Judge Gueverson Rogerio Farias, dated April 14, 2005, attached as Exhibit C to the proposed Order. During six months in 2002, approximately $24.3 million was paid into the account and $23 million was paid out. The individuals involved in Chettiar filed false tax reports with authorities. Chettiar was associated with Clicktrade Corretora de Cambio, Valores e Mobiliaros SA, Fernando Janine Ribiero ("Ribiero"), and Joacyr Reinando ("Reinando"), known Brazilian cambios. Two of the account signatories, Ribiero and Reinando, have been charged with money laundering, illegal financial transactions, and illegal money transmitting violations under Brazilian law.

(d) Farswiss Asset Management Ltd. (Exhibit D attached to proposed Order)

Farswiss Asset Management Ltd. ("Farswiss") was incorporated in the British Virgin Islands in May 1999. Farswiss utilized account number 9006863 at Valley National Bank, managed by Nolasco, and restrained by order of Substitute Federal Judge Gueverson Farias dated

March 6, 2006, attached as Exhibit D to the proposed Order. During six months in 2002, approximately $7.5 million was paid into the account and $13 million was paid out. Between 2000 and 2003, approximately $43 million passed through the account. Farswiss was associated with Corretora Souza Barros Cambio e Titulos, a Brazilian cambio. One of the account signatories, Ruy Ulhoa Cintra Araujo, has been charged with money laundering, illegal financial transactions, and illegal money transmitting violations under Brazilian law.

(e) Gatex Corporation (Exhibit E attached to proposed Order)

Gatex Corporation ("Gatex") was incorporated in the British Virgin Islands in February 2000. Gatex used account number 9008295 at Valley National Bank, managed by Nolasco, and restrained by order of Federal Judge Sergio Fernando Moro dated December 13, 2004, attached as Exhibit E to the proposed Order. During six months in 2002, approximately $85.4 million was paid into the account and $85 million was paid out. Gatex was associated with Turist Cambio e Viagens, a known cambio. Antonio Pires de Almeida, has been charged with money laundering, illegal financial transactions, and illegal money transmitting business violations under Brazilian law. Pires de Almeida has also been convicted of assisting in the laundering of narcotics trafficking proceeds.

(f) Harber Corporation (Exhibit E attached to proposed Order)

Harber Corporation ("Harber") was incorporated in the British Virgin Islands in May 1999. Harber used account number 9006556, managed by Nolasco, and restrained by order of Federal Judge Sergio Fernando Moro dated December 13, 2004, attached as Exhibit E to the proposed Order. During six months in 2002, approximately $24.9 million was paid into the account and $23.6 million was paid out. Harber was also associated with Turist Cambio e

Viagens. As stated above, Antonio Pires de Almeida, a signatory on the Harber account, has been charged in Brazil.

(g) Harborside Corporation (Exhibit F attached to proposed Order)

Harborside Corporation ("Harborside") was incorporated in the British Virgin Islands in January 1998. Harborside used account number 9004008, managed by Nolasco, and restrained by order of Federal Judge Sergio Fernando Moro dated December 9, 2005, attached as Exhibit F to the proposed Order. During six months in 2002, approximately $2.8 million was paid into the account and $3 million was paid out. Harborside was associated with Levycam Corretor de Cambio e Valores. Joao Carlos da Cunha Canto Kneese and Ronaldo Speiss Fernandes Cortez, signatories for the Harborside account, have been charged with money laundering, illegal financial transactions, and illegal money transmitting violations under Brazilian law.

(h) Safeport Investments Corporation (Exhibit F attached to proposed Order)

Safeport Investments Corporation ("Safeport") was incorporated in the British Virgin Islands in September 2000. Safeport used account number 9009570, managed by Nolasco and restrained by order of Federal Judge Sergio Fernando Moro dated December 9, 2005, attached as Exhibit F to the proposed Order. During six months in 2002, approximately $1.5 million was paid into the account and $1.3 million was paid out. Safeport was associated with Levycam Corretor de Cambio e Valores. Joao Carlos da Cunha Canto Kneese and Ronaldo Speiss Fernandes Cortez, signatories for the Safeport account, have been charged with money laundering, illegal financial transactions, and illegal money transmitting violations under Brazilian law.

(i) Mabon Corporation (Exhibit G attached to proposed Order)

Mabon Corporation ("Mabon") was incorporated in the British Virgin Islands in October 1999. Mabon used account number 9007663, managed by Nolasco, and restrained by order of Federal Judge Sergio Fernando Moro dated January 23, 2005, attached as Exhibit G to the proposed Order. During six months in 2002, approximately $15.5 million was paid into the account and $15 million was paid out. Mabon was associated with New Sands Cambio Viagens e Turismo Ltd. Elcio Areias and Antonio Carneiro, signatories for the Mabon account, have been charged with and convicted of money laundering, illegal financial transactions, and illegal money transmitting violations under Brazilian law.

(j) Midland Financial, Inc. (Exhibit H attached to proposed Order)

Midland Financial, Inc., ("Midland") was incorporated in the British Virgin Islands in January 1994. Midland used account number 9010133, managed by Nolasco and restrained by order of Deputy Federal Judge Gueverson Farias dated April 20, 2005, attached as Exhibit H to the proposed Order. During six months in 2002, approximately $23.7 million was paid into the account and $22.4 million was paid out. Midland was associated with Suissa Administracão, Participação e Representacao Ltda. Henrique Lamberti and Marianel Gandolfo, signatories for the Midland account, have been charged with money laundering, illegal financial transactions, and illegal money transmitting violations under Brazilian law.

(k) Fares Baptista Pinto (Exhibit I attached to proposed Order)

Fares Baptista Pinto (F. Pinto) used account number 9204181 at Valley National Bank, managed by Nolasco, and restrained by order of Deputy Federal Judge Gueverson Farias dated March 7, 2006, attached as Exhibit I to the proposed Order (also known as the BENFICA

account). During six months in 2002, approximately $2.9 million was paid into the account and $2.9 million was paid out. F. Pinto was associated with Segaltur Turismo e Cambio Ltda. F. Pinto and Jose Baptista Pinto Neto, signatories for the F. Pinto account, have been charged with money laundering, illegal financial transactions, and illegal money transmitting violations under Brazilian law.

(l) Tigrus Corporation and Pompeu Costa Lima Pinheiro Maia (Exhibit J attached to proposed Order)

Tigrus Corporation ("Tigrus") was incorporated in the British Virgin Islands in May 1998 by Grant, Hermann, Schwartz & Klinger, L.L.P., and Icaza, Gonzalez-Ruiz & Aleman, Limited. Tigrus used account number 9004681, managed by Nolasco and restrained by order of Federal Judge Sergio Fernando Moro dated January 20, 2006, attached as Exhibit J to the proposed Order. During six months in 2002, approximately $10 million was paid into the account and $9.9 million was paid out. Between 1998 and 2002, over $ 44 million was transmitted through the account. Tigrus was associated with Imatur Cambio e Turismo Ltda. Pompeu Costa Lima Pinheiro Maia ("P. Maia") and Isabel Cristina Dutra Pinheiro Maia, signatories for the Tigrus account, have been charged with money laundering, illegal financial transactions, and illegal money transmitting violations under Brazilian law. P. Maia also had a personal account at Valley National Bank (acct. no. 9200172). This account was used in the same manner as the Tigrus account for which P. Maia was the signatory, and transmitted over $ 6 million between 1998 and 2002.

Carolina Nolasco pled guilty on October 4, 2004, in U.S. District Court for the District of New Jersey to charges of operating an unlicensed money remitter business in the U.S., in violation of 18 U.S.C. § 1960, and several counts of tax evasion. *United States v. Maria Carolina Nolasco*,

Crim. No. 04-617 (D.N.J.). In her Plea Agreement, Ms. Nolasco admitted that all of the captioned funds were "involved in an offense in violation of 18 U.S.C. § 1960, or are traceable to such property, and therefore subject to forfeiture.

B. ARGUMENT

1. This Court has Authority to Enforce Foreign Restraining Orders that Have Been Certified for Enforcement by the Assistant Attorney General

To ensure that U.S.- based property that may be subject to forfeiture in a foreign forfeiture proceeding is not dissipated or moved, § 2467(d)(3), which cross-references 18 U.S.C. § 983(j), allows this Court to issue a protective order (including a restraining or seizure order) against assets located in the United States pending the conclusion of a foreign forfeiture proceeding. For this Court to issue such an order, four elements should be met which will permit the U.S. to seek the enforcement of a final order of forfeiture once one is obtained: (1) the United States and the foreign nation in which the order was issued must be parties to a formal international agreement providing for mutual forfeiture assistance; (2) the foreign restraining order must have been issued by a court of competent jurisdiction in the foreign nation; (3) the property ordered restrained by the foreign court must be shown to be the proceeds of, or property involved in, a violation or offense that would give rise to forfeiture if committed in the United States; and (4) the Attorney General must have certified, in the interest of justice, the foreign order for enforcement in the United States. 28 U.S.C. § 2467(a)(1)-(2), and 2467(d)(3). The Attorney General's determination is nonreviewable. § 2467(b)(2).

2. The Requirements For Recognizing a Foreign Restraining Order Have Been Met

All four elements for recognition and enforcement of the Brazilian Restraining Orders have been met in this matter. First, the Government of Brazil has submitted its request pursuant

to the Mutual Legal Assistance in Criminal Matters Treaty between the United States and Brazil (the "MLAT"), which was signed by the United States and Brazil on October 14, 1997, and ratified by the United States on September 28, 1998. S. Treaty Doc. No. 105-42. Under Article 16 of the MLAT, the United States has an obligation to assist in the preservation of assets subject to forfeiture. Because Brazil is a U.S. treaty partner, the first criterion for enforcement is met.

Second, the Brazilian judges who signed the restraining orders sought for enforcement were authorized to order the restraint of property that will be subject to forfeiture in the criminal cases pending in Brazil. Thus, the Brazilian Restraining Orders were issued by courts of competent jurisdiction in Brazil, and, the second criterion for enforcement is met.

Third, the Property sought to be restrained represents the proceeds of, or property involved in, a violation or offense that would give rise to forfeiture if committed in the United States. The MLAT requests, and the foreign restraining orders explain, that the conduct under investigation by Brazil into the activities of the Brazilian doleiros and others constitutes, *inter alia*, the operation of illegal money transmitting businesses (financial institutions) in Brazil, money laundering, fraud, and other financial offenses under Brazilian law. Brazilian authorities have confirmed that such offenses will give rise to forfeiture, upon conviction, in Brazil. Based on the acknowledgment of Ms. Nolasco in her criminal prosecution in New Jersey, and on evidence obtained by Brazilian and U.S. investigators, it is clear that the funds at issue would be subject to forfeiture if offenses based on the conduct which occurred in Brazil were committed in the U.S. as property involved in, or traceable to, the felony offenses of money laundering, operating unlicensed money remitting businesses, and bank fraud.

Thus, the MLAT request and the Brazilian Restraining Orders describe conduct that, had it occurred in the United States, would constitute violations of 18 U.S.C. §§ 1956 (laundering of monetary instruments), 1960 (prohibition of unlicensed money transmitting businesses), and 1344 (bank fraud). Proceeds of, and property involved in, these United States offenses are subject to forfeiture in the United States pursuant to 18 U.S.C. § 981(a)(1)(A), (B) and (C). Accordingly, the third criterion is met since the conduct committed by the indicted Brazilians would give rise to forfeiture in both countries.

Fourth, the Brazilian Restraining Orders were certified by the United States Assistant Attorney General on April 17, 2008. The Assistant Attorney General determined that enforcement of the attached Restraining Orders is in the interest of justice.

The provisions of 28 U.S.C. § 2467(d)(3)(A) cross-reference 18 U.S.C. § 983(j) which permits the Court to grant any relief necessary to preserve property subject to forfeiture, including the power to "seize, secure, maintain" the property.

Thus, ample justification exists for enforcement of the attached Restraining Orders in the United States by the seizure of the captioned funds.

## IV. CONCLUSION

Therefore, the United States respectfully requests that this Court enforce the Brazilian Restraining Orders against the captioned funds, consistent with United States' treaty obligations under the MLAT between the Governments of the United States and Brazil, by entering the attached protective order applicable to all of the funds pursuant to this Court's authority under 28 U.S.C. § 2467(d)(3)(B)(ii) and 18 U.S.C. § 983(j)(1). The United States further asks that it be permitted to serve this Court's Order by facsimile transmission on the District Attorney for New

York County so that a duly authorized law enforcement officer of the United States may take possession of the funds to hold until final orders are obtained from the Government of Brazil. The United States will promptly request, through the appropriate legal assistance channels, that those individuals and entities with an apparent interest in the captioned funds be provided with notice of, and a copy of, this Court's Order.

Dated this 25th day of April, 2008.

Respectfully submitted,

RICHARD WEBER
CHIEF, ASSET FORFEITURE AND MONEY
LAUNDERING SECTION

__________________________________
LINDA M. SAMUEL (DC Bar #388970)
Deputy Chief
JEAN WELD (VA Bar #19295))
Sr. Trial Attorney
Asset Forfeiture and Money
Laundering Section
Criminal Division
United States Department of Justice
1400 New York Avenue, N.W., 10th Floor
Washington, D.C. 20530
Telephone: (202) 514-1263

Attorneys for Applicant
UNITED STATES OF AMERICA



U.S. Department of Justice

Criminal Division

*Assistant Attorney General* *Washington, D.C. 20530*

## ASSISTANT ATTORNEY GENERAL DECISION

Re: Certification of Eleven Foreign Restraining Orders Under 28 U.S.C. § 2467(b)(2) Pursuant to MLAT Request from the Government of the Federative Republic of Brazil For Funds Located in the United States and Owned by Piedade Pedro Almeida, Avion Resources Ltd., Chettiar Business Inc., Farswiss Asset Management Ltd, Gatex Corp., Fausto Guimaraes, Harber Corp., Harborside Corp., Mabon Corp., Pompeu Maia, Midland Financial Inc., Fares Baptista Pinto, Safeport Investment Corp., and Tigrus Corp.

**DECISION:**

The February 12, 2008 request by Brazil for domestic enforcement of the restraining orders, issued by the 2nd and 4th Federal Criminal Courts of Paraná, Brazil, against the Assets of PIEDADE PEDRO ALMEIDA, AVION RESOURCES LTD., CHETTIAR BUSINESS, INC., FARSWISS ASSET MANAGEMENT LTD., GATEX CORP., FAUSTO GUIMARAES, HARBER CORP., HARBORSIDE CORP., MABON CORP., POMPEU MAIA, MIDLAND FINANCIAL, INC; FARES BAPTISTA PINTO, SAFEPORT INVESTMENT CORP., AND TIGRUS CORP. is hereby CERTIFIED to be in the interest of justice.

**Alice S. Fisher**
**Assistant Attorney General**
**Criminal Division**

4/17/08
**Date**

08-261

FILED
APR 25 2008
Clerk, U.S. District and Bankruptcy Courts