# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE: SEIZURE OF APPROXIMATELY                     )
$12,116,153.16 AND ACCRUED INTEREST                 )
IN UNITED STATES CURRENCY                           )
REPRESENTING:                                       )
                                                )
$475,607.10 (AND ACCRUED INTEREST)                  )
FORMERLY CONTAINED IN ACCOUNT                       )
NUMBER 8200875, AND KNOWN AS THE                    )
PIEDADE PEDRO ALMEIDA ACCOUNT,                      )
HELD IN THE NAME OF OR FOR THE                      )
BENEFIT OF PIEDADE PEDRO ALMEIDA                    )
AT VALLEY NATIONAL BANK;                            )
                                                )
$1,026,455.90 (AND ACCRUED INTEREST)                )
FORMERLY CONTAINED IN ACCOUNT                       )
NUMBER 45200491, AND KNOWN AS THE                   )    MS-08-261 (RMC)
AVION RESOURCES LTD. ACCOUNT,                       )
HELD IN THE NAME OF OR FOR THE                      )
BENEFIT OF GUSTAVO XERFAN HABER                     )
AND MICHAEL HOMCI HABER;                            )
                                                )
$1,343,746.05 (AND ACCRUED INTEREST)                )
FORMERLY CONTAINED IN ACCOUNT                       )
NUMBER 45200483, AND KNOWN AS THE                   )
CHETTIAR BUSINESS, INC. ACCOUNT,                    )
HELD IN THE NAME OF OR FOR THE                      )
BENEFIT OF JANINE RIBIERO AND                       )
JOACYR REINANDO;                                    )
                                                )
$1,510,379.08 (AND ACCRUED INTEREST)                )
FORMERLY CONTAINED IN ACCOUNT                       )
NUMBER 9006863, AND KNOWN AS THE                    )
FARSWISS ASSET MANAGEMENT LTD.                      )
ACCOUNT, HELD IN THE NAME OF OR                     )
FOR THE BENEFIT OF RUY ULHOA                        )
CINTRA ARAUJO;                                      )
                                                )
$2,675,387.73 (AND ACCRUED INTEREST)                )
FORMERLY CONTAINED IN ACCOUNT                       )
NUMBER 9008295, AND KNOWN AS THE                    )
GATEX CORPORATION ACCOUNT,                          )

HELD IN THE NAME OF OR FOR THE    )
BENEFIT OF ANTONIO PIRES DE    )
ALMEIDA;    )
    )
$1,698,878.23 (AND ACCRUED INTEREST)    )
FORMERLY CONTAINED IN ACCOUNT    )
NUMBER 9006556, AND KNOWN AS THE    )
HARBER CORPORATION ACCOUNT,    )
HELD IN THE NAME OF OR FOR THE    )
BENEFIT OF ANTONIO PIRES DE    )
ALMEIDA;    )
    )
$84,260.01 (AND ACCRUED INTEREST)    )
FORMERLY CONTAINED IN ACCOUNT    )
NUMBER 9004008, AND KNOWN AS THE    )
HARBORSIDE CORPORATION ACCOUNT,    )
HELD IN THE NAME OF OR FOR THE    )
BENEFIT OF JOAO CARLOS DA CUNHA    )
AND RONALDO SPEISS FERNANDES    )
CORTEZ;    )
    )
$285,945.16 (AND ACCRUED INTEREST)    )
FORMERLY CONTAINED IN ACCOUNT    )
NUMBER 9009570, AND KNOWN AS THE    )
SAFEPORT INVESTMENT    )
CORPORATION ACCOUNT,HELD IN    )
THE NAME OF OR FOR THE BENEFIT    )
OF JOAO CARLOS DA CUNHA    )
AND RONALDO SPEISS FERNANDES    )
CORTEZ;    )
    )
$800,968.88 (AND ACCRUED INTEREST)    )
FORMERLY CONTAINED IN ACCOUNT    )
NUMBER 9007663, AND KNOWN AS THE    )
MABON CORPORATION ACCOUNT,    )
HELD IN THE NAME OF OR FOR THE    )
BENEFIT OF ELCIO AREIAS AND    )
ANTONIO CARNEIRO;    )
    )
$1,624,717.06 (AND ACCRUED INTEREST)    )
FORMERLY CONTAINED IN ACCOUNT    )
NUMBER 9010133, AND KNOWN AS THE    )
MIDLAND FINANCIAL, INC. ACCOUNT,    )
HELD IN THE NAME OF OR FOR THE    )
BENEFIT OF HENRIQUE LAMBERTI    )

2

AND MARIANEL GANDOLFO;                        )
                                              )
$285,701.87 (AND ACCRUED INTEREST)            )
FORMERLY CONTAINED IN ACCOUNT                 )
NUMBER 9204181, AND KNOWN AS THE              )
BENEFICA ACCOUNT, HELD IN THE                 )
NAME OF OR FOR THE BENEFIT OF                 )
FARES BAPTISTA PINTO;                         )
                                              )
$237,829.82 (AND ACCRUED INTEREST)            )
FORMERLY CONTAINED IN ACCOUNT                 )
NUMBER 9004681, AND KNOWN AS THE              )
TIGRUS CORPORATION ACCOUNT,                   )
HELD IN THE NAME OF OR FOR THE                )
BENEFIT OF POMPEU COSTA LIMA                  )
PINHEIRO MAIA;                                )
                                              )
$86,401.27 (AND ACCRUED INTEREST)             )
FORMERLY CONTAINED IN ACCOUNT                 )
NUMBER 9200172, AND KNOWN AS THE              )
POMPEU MAIA ACCOUNT,                          )
HELD IN THE NAME OF OR FOR THE                )
BENEFIT OF POMPEU COSTA LIMA                  )
PINHEIRO MAIA.                                )
_____ )

## ORDER

This matter having come before this Court on the *ex parte* application of the United

States of America for a protective order pursuant to 28 U.S.C. § 2467(d)(3)(B)(ii), which

provides United States district courts with jurisdiction to enter restraining orders and take such

other action in connection with any property or other interest in the United States which may be

subject to forfeiture in a foreign proceeding to ensure its availability for forfeiture;

IT APPEARING TO THE COURT THAT:

1.    This Court has jurisdiction of the subject matter of this case, and pursuant to

28 U.S.C. § 2467(c)(2)(B), venue is appropriate in the United States District Court for the

District of Columbia.

3

2.    The Assistant Attorney General of the Criminal Division of the United States

Department of Justice, being duly authorized, has certified that it is in the interest of justice to

enforce ten (10) restraining orders issued by the 2nd and 4th Federal Criminal Courts of

Parana, Brazil (the "Brazilian Courts"), attached to this Order as Exhibits A through J, by seizing

the captioned funds which previously were held in accounts at Valley National Bank (previously

Merchants National Bank, New York, New York) in the names of the following:

        (a)    Piedade Pedro Almeida

        (b)    Avion Resources Ltd.

        (c)    Chettiar Business, Inc.

        (d)    Farswiss Asset Management Ltd.

        (e)    Gatex Corporation

        (f)    Harber Corporation

        (g)    Harborside Corporation

        (h)    Safeport Investments Corporation

        (i)    Mabon Corporation

        (j)    Midland Financial, Inc.

        (k)    Fares Baptista Pinto

        (l)    Tigrus Corporation and Pompeu Costa Lima Pinheiro Maia

3.    The 2nd and 4th Federal Criminal Courts of Paraná, Brazil are courts of competent

jurisdiction for such rendering restraining orders in Brazil.

4.    The Brazilian restraining orders apply to the thirteen accounts listed above.

5.    The restraining orders issued by the Brazilian courts establish that criminal

proceedings are pending in Brazil that will likely result in the entry of forfeiture or confiscation

4

judgments against the listed individuals and/or account holders as to the proceeds of or property involved in unlicensed money remitting, money laundering, and bank fraud which are also offenses in the United States giving rise to forfeiture authority.

6.    The Governments of the United States and Brazil are parties to a mutual legal assistance treaty that creates an international legal obligation to assist one another in forfeiture matters.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, PURSUANT TO 28 U.S.C. § 2467(d)(3)(B)(ii) AND 18 U.S.C. § 983(j)(1)THAT:

A.    The ten restraining orders issued by the Brazilian Courts which are attached as exhibits to this Order shall hereby be given full force and effect in the United States.

B.    The funds appearing in the caption of this Order are hereby RESTRAINED pending further of this Court.

C.    The captioned funds shall be transferred to a duly authorized officer of the United States, and shall be held in a seized assets account of the United States until further order of this Court.

D.    All persons, including the above-listed account holders, their agents, servants, employees, attorneys, family members, and those persons in active concert or participation with him, and anyone in possession of or holding any interest in the Property be and are hereby ENJOINED AND RESTRAINED from selling, assigning, pledging, distributing, giving away, encumbering or otherwise participating in the disposal of or removal from the jurisdiction of this Court, any interest, direct or indirect, in the Property, without prior approval of the Court upon notice to the United States and an opportunity for the United States to be heard, except as specified in this Order and except that, in accordance with 28 U.S.C. § 2467(d)(3)(C), no person

may object to this order on the grounds that it is thesubject of parallel litigation involving the captioned funds pending in a foreign court.

      D.    The terms of this Order shall remain in full force and effect until the Brazilian criminal cases are concluded and any forfeiture judgments obtained therein have been presented for enforcement to this Court, or said funds are sought by Brazilian authorities to be released.

      E.    The United States may serve a copy of the this Order on the New York County District Attorney's Office by facsimile, and pursuant to Rule 4(f) of the Federal Rules of Civil Procedure to the extent applicable, shall provide a copy of the Court's Order upon any identifiable persons holding any legal interest in the captioned funds.

Dated this _28_ day of April 2008.

                                                                     _____

                                                                UNITED STATES DISTRICT JUDGE
                                                                United States District Court for the
                                                                District of Columbia

.

# Piedade Pedro Almeida
# Acct. No. 8200875



# FEDERAL COURT
### JURISDICTION OF PARANÁ

### CONCLUSION

On December 15, 2006, I give this case to the Honorable Federal Judge of the 2nd Federal Criminal Court of Curitiba.

For the record, I drew up this entry.

### Case number 2005.7000034207-5

1. It is the accusation formulated by the Federal Public Prossecutor's Office against Gustavo Henrique Corrèa Puga and Piedade Pedro de Almeida, for having performed the crimes established in articles 4, 16, 22, sole paragraph, of Law number 7.492/86, article 1 of Law number 9.613/98.

2. In summary, the matter in issue in the accusation is the financial activity abroad, without any statement or control from the public authorities, of the account number 8200875 on behalf of the very charged Piedade, held at the Merchants Bank in New York.

3. According to expert reports elaborated by the Federal Police the Tigrus account would have had activities, in the period from January, 1998, to November, 2002, around sixty-eight million dollars, whereas the account on behalf of the very charged around six million dollars in the period from January, 1998, to July, 2002.

4. The group would also have activities in Brazil through the company called Gadi Viagens e Turismo Ltda., registered with the CNPJ/MF Corporate Taxpayer Roll under the number 40.190.506/0001-25, with headquarters in Rio de Janeiro.

5. Also according to the complaint, the charged would be black market traders, with strong actuation, and they would use the foreign accounts and companies in Brazil to perform illegal financial operations, deceiving the control systems of the Brazilian Central bank and concealing of their own or third parties' assets from the Federal Revenue, performing financial crimes.

6. When conceiling and dissimulating the provenance, ownership, location or activities or their own or third parties' amounts held in accounts abroad, sent there or brought whence, they would have practiced the crime of money laundering, having crimes against the national financial system as precedings.

7. The Federal Public Prosecutor's Office also informs that the account had its balance, US$ 460,611.42, frozen in the United States by the North American authorities themselves in the criminal suit number 04-CR-617, United States v. Maria Carolina Nolasco (the manager of the Merchants Bank responsible for the accounts), in path in procedural progress at the Federal Court of New Jersey.

8. At the present procedural moment, all that has to be done is to verify if there are indications enough of materiality and authorship to authorize the accusation.

9. In that perspective, there are elements enough to authorize



# FEDERAL COURT
## JURISDICTION OF PARANÁ

controlled by alleged Brazilian dollar dealers are indicators that the accounts were used for the practice of illlegal exchange transactions.

11. It deserves equal prominence petition sent by the charged,

Piedade, through its defender, to the North American authorities in the which it is affirmed that it has as its line of business arranging for its customers services of foreign currency exchange, and that the foreign account was used for that purpose (pages  05-06 of vol. II 17 of appendant I). Another document, subscribed by the very charged Piedade, contains the assertion that the account at issue would be used for investments in funds in the United States and also for imports and exports (page  32 of appendant I, vol. IV). There are two other letters of similar contents (pages 36 and 54 of appendant I, vol. IV). It is also worth noticing the deposition of the manager of the financial institution in which the account was held as how it was used by the two charged (page  10 of appendant I, vol. III)

12. Well, although the claims deserve further explanations, the use of a foreign account for carrying out exchange transactions and also to serve importers and exporters greatly differs, in principle, from the activities that are proper to travel and exchange agencies. Even the exchange activity of travel agencies is limited to the market of floating rates, with exchange of foreign currency at the counter.

13. On the other hand, the Gadi company, in its tax return form to the Federal Revenue does not state having assets or transactions abroad, nor profits or losses resulting from activities abroad. There are also no records about the holding of accounts abroad in the tax return forms of the charged.

14. It has to be taken into account that the existing exchange system in Brazil

allows the sending of money abroad whether as payments or as investments. However, as it is reasonable in any liberal-democratic system, there is a control system on the part of the monetary authority, especially the demand for recording the transactions and investments at the Central bank, as well as that they are performed by duly accredited financial institutions  (article 10, X, "d" of Law number 4.595/64; article 23 of Law number 4.131/62; and article 1 of Law number 5.601/70). Even the recent flexibilization of the exchange system with Bacen's Resolutions numbers 3.265 and 3.266, from March 4, 2005, did not alter this basic structure. The activity carried out by the charged seems to be part of the parallel exchange system. Such parallel system would be controlled by "dollar dealers" that would perform exchange transactions outside the official system, with unauthorized purchase and sale of dollars, whether in cash or through the clearance system, with the delivery of dollars through deposit in foreign bank accounts in return to payment in Real in Brazil or vice-versa. Such clearance system is commonly calIled "dollar cable" in Brazil and "dollar discounting" abroad (as  names extracted from RICHARDS, James R. Transnational criminal organrtzations, cybercrime, and money laundering. CRC Press, 1999, p. 57). It also bears resemblance, due to its informality and partially being outside the formal financial system, with what has been internationanlly called the "hawala system". Such transactions, besides illegal, are kept outside the official accounting or any control on the part of the public authorities, constituting a favorable environment for tax dodging, foreign currency drain, and also money laundering. In fact, the deliberate purpose of such transactions,

# FEDERAL COURT
## JURISDICTION OF PARANÁ

besides any final cost reduction, is carrying out transactions away from any public control.

15. Of course if they are legal and regular, nothing shall prevent

such from being demonstrated to this Court through the meticulous description of the transactions and the identification of their customers, as well as the presentation of the book-keeping of the accounts.

16. From all that has been exposed, one should conclude that there is enough evidence

to authorize the accusation that the charged, through their company in Brazil and their undeclared foreign account, dedicated themselves, in a business-like and habitual way, to practice illegal financial transactions, including exchange ones, which may characterize the practice of the financial crimes described in the complaint. As of the crime of money laundering, whereas taking into considering that the amounts held abroad on their own behalf and on behalf of third parties were the proceeds of financial crimes and that the actions performed by the accused parties implicate in the concealment or dissimulation of their kind and provenance, there is equally enough grounds for the accusation for crime of money laundering.

17. Considering everything that has been exposed, bearing in mind that judgement is made here

based on the cognition, yet summary, of the case, I receive the accusation against Gustavo Henrique Corrêa Puga and Piedade Pedro de Almeida.

18. Based on the same evidencen and considering that the existing balance on the account number 8200875 on behalf of the very charged Piedade, held at the Merchants Bank, currently Valley National Bank, in the United States, constitute the proceedings or gains from crimes described in the accusation, especially of the illegal financial activity of the parties, as well as the possible object of money laundering of the proceedings or gains of the financial crimes practiced by them or their customers, I also decree the blockade or the freezing of those assets, those being subject to the sentence of loss as established by article 91 of the Penal Code. The determination involves the request to the North American authorities, through MLAT or direct cooperation, for the blockade of the balance of the accounts abroad, as well as the determination, under penalty of disobedience, that the very charged refrain from personally or through attorneys-in-fact make withdrawals from the account and use the amounts held in them. Likewise I decree the breach of bank confidentiality of the account on behalf of the charged Piedade Pedro de Almeida, number 20-09455, held at the First New York Bank, in order to obtain copy of the documents of the opening of the account and those of its activity.   The Federal Public Prossecutor's Office is to provide for the formal arrangement, through MLAT or direct cooperation, of the request of international legal cooperation.

19. Based on the same ground and bearing in mind what is requested by the Federal Public Prossecutor's Office, I decree the breach of bank and fiscal confidentiality of the charged Gustavo Henrique Corrêa Puga, Taxpayer's Registration Number (CPF) 689.129607-25, Piedade Pedro de Almeida,, Taxpayer's Registration Number (CPF) 839.423.517-49, and of the company Gadi Viagens e Turismo Ltda., registered with the CNPJ/MF Corporate Taxpayer Roll under the number 40.190.506/0001-25.

20. Bacen's Office in Curitiba shall be sent an official communication requesting: a)





# FEDERAL COURT JURISDICTION OF PARANÁ

Sisbacen from the same company and during the same period; d) records of exchange transactions at Sisbacen, including those referring to importation or exportation payments that have, in the field credited abroad the name "Piedade" in the period from 01/1998 to 11/2005; e) that it is verified if there is any infromation available at Sisbacen concerning the foreign company "Sebi Express", mainly if it has an agreement with any official financial institution in Brazil for the remittance of money to Brazil. Within 60 days.

    21. The Office of COAF – Conselho de Controle sobre Atividades Financeiras (Council of Control on Financial Activities) shall be sent an official communication requesting information about any records in its databases concerning the charged and the company Gadi Viagens e Turismo Ltda. Within 30 days.

    22. I appoint the date of March 10, 2006, at 2:00 p.m. for the examination of the charged.

    23. The charged shall be notified and summoned, of the date of the hearing and of all the contents of this decision, including the blockade of the balance of the accounts ordered by the Court.

    24. Being timely, the already appointed defenders shall be summoned, by report, of the date and time of the hearing.

    25. Acknowledgement of this decision by copy authenticated to the Federal Public Prossecutor's Office.

    26. Necessary communications and registrations.

    27. Have them certified and be requested their records in the States of Paraná and Rio de Janeiro.

    28. Register, at last, and only for the sake of that the competence of this Court over the case results from its connection with the so-called "Caso Banestado" (Banestado Case), the Merchants account having been found through the tracking of amounts evaded from Foz do Iguaçu, which was determined in the investigation number 2003.7000030333–4 in procedural progress at this Court. Besides, the accusation is related to the crime of money laundering, having, as precedings, crimes against the national financial system committed by other dollar dealers and that are object of other criminal suits or investigations in procedural progress at this Court. This way, for example, the accounts controlled by the charged would have had transactions with accounts on behalf of other off-shores companies and that are matter in issue of investigation in other cases at this Court (e.g.: Ônix, case number 2003.7000035861-0, and Tupi Câmbios, criminal case number 2002.7000039533-2). Between the crime of money laundering and the preceeding crime there is an evident procedural connection in the terms of article 76, II and III, of the Code of Criminal Procedure. There is precedent in this very sense in the recourse instance (HC 2005.0401047806-0/PR). Besides, there are records of transactions of the account with a person domiciled in Paraná (page 19)

    29. As of that, the General Office shall certify that the digital midia referring to the activities of the Piedade account (Expert Report 891/05) have not been forwarded. In case they have, the original shall be filed in Court, and a copy kept at the inside cover of the records. In case they have not, the Public Prosecutor's Office shall be contacted in order to verify if it has not kept the midia by mistake, and in case it has, it should send it to this Court.

Curitiba, January 26, 2006.

Sérgio Fernando Moro
Federal Judge

**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ

**CONCLUSÃO**

Em 15 de 12 de 2006, faço estes autos conclusos ac
MM. Juiz Federal da 2.ª Vara Criminal Federal de Curitiba.

Para constar, lavrei este termo.

Processo n.º 2005.7000034207-5

1. Trata-se de denúncia formulada pelo MPF contra
Gustavo Henrique Correa Puga e Piedade Pedro de Almeida, pela prática dos
crimes previstos nos artigos 4.º, 16, 22, parágrafo único, da Lei n.º 7.492/86, e
artigo 1.º da Lei n.º 9.613/98.

2. Em síntese, a denúncia tem por objeto a movimentação
financeira no exterior, sem qualquer declaração ou controle pelas autoridades
públicas, de conta de n.º 8200875 em nome do próprio acusado Piedade, e mantida
no Merchants Bank de Nova York.

3. Segundo laudos periciais realizado pela Polícia Federal
a conta Tigrus teria movimentado no período de 01/98 a 11/2002, cerca de sessenta
e oito milhões de dólares, enquanto a conta em nome do próprio acusado, cerca de
seis milhões de dólares no período de 01/98 a 07/2002.

4. O grupo ainda operaria no Brasil através da empresa
Gadi Viagens e Turismo Ltda., CNPJ 40.190.506/0001-25, com sede no Rio de
Janeiro.

5. Também segundo a peça inicial, os acusados seriam
operadores no mercado de câmbio paralelo, com forte atuação, e utilizariam as
contas no exterior e empresas no Brasil para a realização de operações financeiras
ilegais, com a burla de sistema de controle do Banco Central do Brasil e
ocultamento dos ativos próprios e de terceiros da Receita Federal, com a prática de
crimes financeiros.

6. Ao ocultarem e dissimularem a origem, a propriedade,
a localização ou movimentação de valores próprios e de terceiros mantidos em
contas no exterior, para lá remetidos ou de lá trazidos, teriam praticado crime de
lavagem de dinheiro, tendo como antecedentes crimes contra o sistema financeiro
nacional.

7. Informa ainda o MPF que a conta teve o seu saldo, de
US$ 460.611,42, bloqueado nos Estados Unidos pelas próprias autoridades norte-
americanas na ação criminal 04-CR-617, *United States v. Maria Carolina Nolasco* (a
gerente do Merchants Bank responsável pelas contas), em trâmite na Corte Federal
de Nova Jersey.

8. No presente momento processual, cumpre apenas
verificar se há indícios suficientes de materialidade e autoria para amparar a
denúncia.

9. Nessa perspectiva, há elementos suficientes a amparar
a denúncia.

10. Cumpre destacar inicialmente os cadastros bancários
das contas que estão assinados pelos dois acusados. Ambos, pelo menos durante o
período dos fatos delitivos, eram sócios gerentes da empresa Gadi. Além disso, o
elevado volume de movimentação e a identificação de várias transações com contas



**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ

controladas por supostos doleiros brasileiros são indicativos de que as contas eram utilizadas para a prática de operações de câmbio ilegais.

        11. Merece igual destaque petição dirigida pelo acusado Piedade, através de sua defensora, às autoridades norte-americanas na qual se afirma que tem por negócio providenciar aos seus clientes serviços de troca de moeda estrangeira e que a conta no exterior era utilizada para esse propósito (fls. 05-06 do vol II do apenso I). Outro documento, subscrito pelo próprio acusado Piedade, contém afirmação de que a conta em questão seria utilizada para investimentos em fundos nos Estados Unidos e ainda em importação e exportação (fl. 32 do apenso I, vol. IV). Há duas outras cartas de similar teor (fls. 36 e 54 do apenso I, vol. IV).Também merece registro depoimento da gerente da instituição financeira na qual a conta era mantida no sentido de que ela era movimentada pelos dois acusados (fl. 10 do apenso I, vol. III)

        12. Ora, embora as afirmações mereçam maiores esclarecimentos, a utilização da conta no exterior para a prática de câmbio e inclusive atendimento a importadores e exportadores, refoge, em princípio, em muito das atividades próprias de agência de turismo e câmbio. Mesmo a atividade cambial de agências de turismo restringe-se ao mercado de taxas flutuante, com troca de moeda estrangeira em balcão.

        13. Por outro lado, a empresa Gadi, em suas declarações de rendimento à Receita Federal, não declara possuir ativos ou operações no exterior, nem lucros ou perdas auferidas com atividades no exterior. Também não se vislumbram registros a respeito da manutenção das contas no exterior nas declarações de rendimentos dos acusados.

        14. Registre-se que o regime cambial existente no Brasil permite a remessa de dinheiro ao exterior seja na forma de pagamentos, seja na forma de investimentos. Como, contudo, é razoável em qualquer regime liberal-democrático, existe um sistema de controle por parte da autoridade monetária, especialmente a exigência de registro das transações e investimentos junto ao Banco Central, bem como que elas sejam realizadas por instituições financeiras devidamente credenciadas (artigo 10, X, "d" da Lei n.º 4.595/64; artigo 23 da Lei n.º 4.131/62; e artigo 1.º da Lei n.º 5.601/70). Mesmo a recente flexibilização do regime cambial com as Resoluções  n.os 3.265 e 3.266, de 04/03/2005, do Bacen, não alterou  este quadro fundamental. A atividade desenvolvida pelos acusados parece fazer parte do sistema paralelo de câmbio. Tal sistema paralelo seria controlado por "doleiros" que realizariam operações de câmbio à margem do sistema oficial, com compra e venda de dólares não-autorizada, seja em espécie, seja através de sistema de compensação, com entrega de dólares através de depósito em conta no exterior em contrapartida a pagamento de reais no Brasil ou vice-versa. Tal sistema de compensação é denominado vulgarmente no Brasil de "dólar cabo" e de "dollar discounting" no exterior (cf. denominação extraída de RICHARDS, James R. *Transnational criminal organizations, cybercime, and money laundering*. CRC Press, 1999, p. 57.). Ainda guarda semelhanças, pela sua informalidade e por transitar em parte fora do sistema financeiro formal, com o que vem sendo denominado internacionalmente de "hawala system". Tais operações, além de ilegais, são mantidas à margem da contabilidade oficial ou de qualquer controle por parte das autoridades públicas, constituindo ambiente propício à sonegação fiscal, evasão de divisas e ainda lavagem de dinheiro. Aliás, o propósito deliberado de tais operações,





**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ

além de eventual redução de custos, é a realização de transações à margem c qualquer controle público.

15. Por certo, se forem legais e regulares, nada imped que isso demonstrado a este Juízo mediante a descrição minuciosa da transaçõe e identificação de seus clientes, bem como a apresentação da contabilidade da contas.

16. De todo o exposto, é de se concluir que há prov suficiente para amparar a denúncia de que os acusados, através de sua empresa n Brasil e conta não-declarada no exterior, dedicavam-se, de forma empresarial e habitualmente, a praticar operações financeiras ilegais, inclusive cambiais, o qu pode configurar a prática dos crimes financeiros narrados na inicial. Quanto ao crime de lavagem de dinheiro, considerando que os valores mantidos no exterior em nome próprio e de terceiros eram produto de crimes financeiros e que os expediente adotados pelos acusados implicam na ocultação ou dissimulação de sua natureza e origem, há igualmente suficiente base para a acusação por crime de lavagem de dinheiro.

17. Ante todo o exposto, lembrando que se faz aqui juízo com base em cognição ainda sumária do processo, recebo a denúncia contra Gustavo Henrique Correa Puga e Piedade Pedro de Almeida.

18. Com base nos mesmas provas e tendo em vista que c saldo existente na conta n.º 8200875 em nome do próprio acusado Piedade. mantida no Merchants Bank, atualmente Valley National Bank, nos Estados Unidos, constitui produto ou provento dos crimes narrados na denúncia, especialmente da atividade financeira ilegal dos acusados, bem como possível objeto de lavagem de dinheiro do produto ou provento dos crimes financeiros por eles ou por seus clientes praticados, decreto igualmente o bloqueio ou a indisponibilidade destes ativos, estando eles sujeito à pena de perdimento na forma do artigo 91 do Código Penal. A determinação envolve solicitação às autoridades norte-americanas, via MLAT ou cooperação direta, para o bloqueio do saldo da conta no exterior, bem como determinação judicial, sob pena de desobediência, aos próprios acusados para que se abstenham de, pessoalmente ou por procuradores, de movimentar a conta e dispor das quantias nela constante. Decreto igualmente a quebra do sigilo bancário da conta titularizada pelo acusado Piedade Pedro de Almeida, de n.º 20-09455, mantida no First New York Bank, para o fim de obter cópia dos documentos de abertura e de movimentação da conta. **Cumpre ao MPF** providenciar a formalização, via MLAT ou cooperação direta, da solicitação de cooperação judiciária internacional.

19. Com base nos mesmos fundamentos e tendo em vista o requerido pelo MPF, decreto a quebra do sigilo bancário e fiscal dos acusados Gustavo Henrique Correa Puga,  CPF 689.129607-25, Piedade Pedro de Almeida, CPF 839.423.517-49, e da empresa Gadi Viagens e Turismo Ltda.., CNPJ 40.190.506/0001-25.

20. Oficie a Secretaria ao Bacen, Curitiba, solicitando: a) informação sobre a existência junto ao Bacen de declaração da manutenção de ativos no exterior pelos acusados e pela empresa Gadi Viagens e Turismo Ltda., CNPJ 40.190.506/0001-25b) informações se a empresa Gadi Viagens e Turismo Ltda., CNPJ 40.190.506/0001-25 está autorizada a operar com câmbio, se positivo de que forma, e a totalização, mês a mês, de 01/1998 a 11/2005, do volume de operações; c) registros de operações de remessas/recebimentos internacionais no

37

**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ

Sisbacen pela mesma empresa e no mesmo período; d) registros de operações de câmbio no Sisbacen, inclusive relativo a pagamentos de importação ou exportação que tenham no campo creditado no exterior o nome "Piedade" no período de 01/1998 a 11/2005; e) que seja verificado se há alguma informação disponível no Sisbacen acerca da empresa estrangeira Sebi Express, especialmente se ela possui convênio com alguma instituição financeira oficial no Brasil para a remessa de dinheiro ao Brasil. Prazo de 60 dias.

21. Oficie a Secretaria ao COAF - Conselho de Controle sobre Atitividades Financeiras solicitando informações sobre eventuais registros em seus bancos de dados acerca dos acusados e da empresa Gadi Viagens e Turismo Ltda. Prazo de 30 dias.

22. Designo a data de 10/03/2006, às 14:00 para o interrogatório dos acusados.

23. Citem-se e intimem-se os acusados, da data da audiência e do inteiro teor desta decisão, inclusive sobre o bloqueio do saldo das contas determinada pelo Juízo.

24. Por oportuno, intimem-se, por boletim, os defensores já constituídos da data e hora da audiência.

25. Ciência desta decisão por cópia autenticada ao MPF.

26. Comunicações e anotações necessárias.

27. Certifiquem-se e solicitem-se seus antecedentes no Estado do Paraná e no Rio de Janeiro.

28. Registre-se, por fim, e apenas a título de argumentação, que a competência deste Juízo sobre o caso decorre da conexão do mesmo com o assim denominado "Caso Banestado", tendo se chegado às contas do Merchants mediante rastreamento de valores evadidos de Foz do Iguaçu, o que foi determinado no inquérito 2003.7000030333-4 em trâmite nesta Vara. Além disso, a denúncia reporta-se ao crime de lavagem tendo por antecedentes crimes financeiros praticados por outros doleiros e que são objeto de outras ações penais ou inquéritos em trâmite por esta Vara. Assim, por exemplo, as contas controladas pelo acusado teriam transacionado com contas em nome de outras off-shores e que são objeto de investigação em outros processos perante esta Vara (v.g.: ônix, processo 2003.7000035861-0, e Tupi Cambios, ação penal 2002.7000039533-2). Entre crime de lavagem e crime antecedente há uma evidente conexão processual no termos do artigo 76, II e III, do CPP. Há precedente neste exato sentido da instância recursal (HC 2005.0401047806-0/PR). Além disso, há registro de transações da conta com pessoa domiciliada no Paraná (fl. 19)

29. Certifique a Secretaria se neste feito não foram encaminhadas as mídias digitais relativas à movimentação da conta Piedade (Laudo 891/05). Em caso positivo, arquive-se o original em Juízo, mantendo cópia na contracapa dos autos. Em caso negativo, contate-se o MPF a fim de verificar se, por equívoco, não permaneceu com a mídia, se positivo, enviando ela a este Juízo.

Curitiba, 26 de janeiro de 2006.

Sergio Fernando Moro
Juiz Federal

.

# Avion Resources Ltd.
# Acct. No. 45200491

THE JUDICIAL POWER - FEDERAL JUSTICE
PARÁ SECTION. CRIMINAL COURTS – 4TH DIVISION

PROCESS nº 2305.39.00.002034-8 -  PROV.REMEDY/CRIMINAL –ASSEC- FREEZE ASSETS/OTHERS
PETITIONER:        FEDERAL PUBLIC PROSECUTION
ACCUSED:           CONFIDENTIAL
FEDERAL JUDGE:   ANTONIO CARLOS ALMEIDA CAMPELO

## DECISION

The documents presented represent a petition for a preventive measure put forward by the Federal Public Prosecution with a few to freezing assets maintained in the Merchants Bank of New York, in the United States by GUSTAVO XERFAN HABER, MICHEL HOMCI HABER, ELZA XERFAN HABER, MEG LUNA SOARES HABER, AVION RESOURCES LIMITED, and MONOPÓLIO CÂMBIO TURISMO LTDA. all duly identified in the same.

The Federal Public Prosecution relates that the accused are under investigation in the documentation of inquiry IPL Nº 258/2004 and Penal Proceedings Nº 2005.001917-9 due to indications of crimes characterized in the provisions of Laws Nº* 7.492/86 and 9.613/98. It states that the facts that gave rise to its request stem from the investigations of the CC5 Task Force and allude to illegal remittance of currency overseas made by current account holders and ex-current account holders of the New York branch of the BANESTADO. By means of North American investigating agencies, the existence was detected of other financial institutions involved in these transactions, like  Chase Manhattan (now J.P. Morgan Chase), MTB bank and Merchants Bank of New York (now Valley National). In the Merchants Bank, preliminary information pointed to the existence of 39 accounts belonging to Brazilians, among them, AVION RESOURCES (Nº 45200491) opened by the accused in their own name or with their consent and participation. The accounts were managed by a Portuguese woman, naturalized American, MARIA CAROLINA NOLASCO and the indications of illegal remittances overseas lie chiefly in the fact of the accounts' having been held by offshore companies registered in tax havens. It must be added that in the period from December/2001 to May/2002 the AVION account handled US$ 6,940,637.70.

The documents of pp. 10/34 accompany the petition and include the record of statements made by MARIA CAROLINA NOLASCO to a team made up of Brazilian and American authorities, on November 15 2004 in the United States.

THE JUDICIAL POWER - FEDERAL JUSTICE
PARÁ SECTION.  CRIMINAL COURTS – 4TH DIVISION

The brief report concluded, I hereby Decide:

The preventive procedure being petitioned for is appropriate to this type of provision and serves to guarantee the efficacy of the main proceedings, being therefore, of an instrumental nature.

Thus it is bound to the Criminal Proceedings set in course by the Federal Public Prosecution against the accused suspected of crimes against the financial system and of money laundering, as a way of guaranteeing that the eventual conviction which they receive may also have civil consequences.

As is well known, one of the effects of the sentence in a criminal conviction is to ensure the obligation of compensating for the damages caused and to determine the loss, in favor of the Union, of the instruments of the crime or of the product or benefit obtained from the same (Penal Code article 91).

As a means of ensuring these effects for the future sentence of conviction, among other measures, article 132 of the Penal Procedure Code foresees the freezing of moveable assets when it is not feasible to seize them and when there are "vehement signs of the illicit origin of the assets" (CCP article 125 *in fine*).

The signs of criminal activity are the result of the elements that inform the Criminal Proceedings as well as the statements of Maria Carolina Nolasco, Portuguese responsible for managing the accounts of Brazilians held in the Merchants Bank and which are suspected of handling transactions with resources illegally remitted overseas.

The passage of her statement underlined by the Public Prosecutors is reproduced *verbis*:

> "...almost all the clients of the witness were from the field of tourism and exchange. THAT they carried out reciprocal compensation of amounts, loaning money to one another. THAT this kind of compensation was carried out most intensely by ANTONIO PIRES with HELIO LANIADO, POMPEU MAIA and GUSTAVO XERFAN. [...]. THAT the AVION account belonged to GUSTAVO XERFAN. THAT his company was in Pará, worked with tourism and exchange and the contact person in Brazil was he, himself. THAT GUSTAVO ordered checks from various countries to be deposited, which were sent to the USA by the DHL. That when the checks were compensated, the entire amounts made available were immediately transferred to the GATEX or HARBER on the orders of GUSTAVO. [...]. THAT the checks were for large amounts and in great quantities. THAT the checks were payable to AVION. THAT  many of the issuers of the checks were Brazilians."

THE JUDICIAL POWER - FEDERAL JUSTICE
PARÁ SECTION.  CRIMINAL COURTS – 4TH DIVISION

The need for, and the urgency of the measure, are evident. Being financial assets and being held in a foreign banking institution, it is indispensable that there be a legal order issued freezing these assets which should be carried out by mans of the Mutual Legal Assistance Treaty-MLAT in effect with that foreign nation, as a means of ensuring that a future lawsuit for compensation moved against   the accused may have effective consequences. There is a further urgency imposed by the news of the un-freezing of assets to the amount of US$ 1,026,455.90 in the AVION account, decreed by the American legal system in response to a request from the Public Prosecution of the United States.

In addition to the persons mentioned by name in the testimony of Maria Carolina, all the other accused are partners in the companies AVON RESOURCES LIMITED and MONOPÓLIO CÂMBIO XERFAN HABER and have been duly denounced by the Federal Public Prosecution for the crimes referred to above.

There being present clear signs of the practice of criminal activity and of the need to ensure that resources illegally remitted overseas be repatriated or compensation guaranteed for the damages eventually caused by the offense, I hereby **GRANT** the petition for a preventive measure and based on the provisions set out in articles 132 and 126 of the Penal Procedure Code, I determine the freezing of those financial assets maintained in the **Merchants Bank of New York** (now the J.P. Morgan Chase), **in the United States of America** by **GUSTAVO XERFAN HABER**, Brazilian, married, son of Michel Homci Haber and Elza Xerfan Haber, Tax Reg. N° 101.602.722-20 and ID N° 4609235 –SSP-PA, **MICHEL HOMCI HABER**, Brazilian, businessman, son of Nassry Homci Haber and Nazira Homci Haber, Tax Reg. N° 000.261.902-49 and ID N° 1721525 –SSP/SP, **ELZA XERFAN HABER**, Brazilian,, businesswoman, daughter of José Xerfan and Leonor Hachem Xerfan, Tax Reg. N° 307.048.552-91 and ID N° 4609235 – SSP/PA, **MEG LUNA SOARES HABER**, Brazilian, businesswoman, daughter of Salomão Essucy Soares and Rachel Larrat Soares, Tax Reg. N° 219.342.662-72 and ID N° 1402370- SSP/PA., **AVION RESOURCES LIMITED**, offshore legal entity, registered in the British Virgin Islands, belonging to Michel Haber, Gustavo Xerfan Haber, Elza Haber and Meg Luna Soares Haber, and **MONOPÓLIO CÂMBIO TURISMO LTDA.** Company Tax Reg. N° 34.666.362/0001-38, with head office at Av. Braz de Aguiar, N° 202, Nazaré, Belém/PA and the information referred to should be requested by the Federal Public Ministry by means of the MLAT and shared with the Department for the Recovery of Assets and International Cooperation of the Ministry of Justice and the Federal Public Prosecution itself.

THE JUDICIAL POWER - FEDERAL JUSTICE
PARÁ SECTION.  CRIMINAL COURTS – 4TH DIVISION

Inform the Federal Public Prosecution.

Maintain the confidentiality of the documentation until the freezing of the assets has been effectively confirmed by the Federal Public Prosecution.

Belém   *illegible*   of March 2005

*illegible signature*

**ANTONIO CARLOS ALMEIDA CAMPELO**

Substitute Federal Judge – 4th Division.



**PODER JUDICIÁRIO - JUSTIÇA FEDERAL**
**SEÇÃO JUDICIÁRIA DO PARÁ, 4ª VARA FEDERAL**

PROCESSO Nº 2005.39.00.002034-8 – MED CAUTELAR/PENAL-ASSEC-SEQUESTRO/OUTRAS
REQTE           MINISTÉRIO PÚBLICO FEDERAL
REQDO          : SIGILOSO
JUIZ FEDERAL   : ANTONIO CARLOS ALMEIDA CAMPELO

D E C I S Ã O

        Versam os autos sobre medida Cautelar de Seqüestro, intentada pelo Ministério Público Federal, com vistas à indisponibilidade de ativos financeiros mantidos no **Merchants Bank of New York, nos Estados Unidos da América,** por GUSTAVO XERFAN HABER, MICHEL HOMCI HABER, ELZA XERFAN HABER, MEG LUNA SOARES HABER, AVION RESOURCES LIMITED e MONOPÓLIO CÂMBIO TURISMO LTDA, todos qualificados nos feito.

        Narra o MPF que os Requeridos são investigados nos autos do IPL nº 258/2004 e ação penal nº 2005.001917-9 por indícios de crimes tipificados nas Leis nºs 7.492/86 e 9.613/98. Relata que os fatos que deram causa ao pedido decorreram de investigações da Força-Tarefa CC-5 alusivas a remessas ilegais de recursos para o exterior por correntistas e ex-correntistas da Agência do BANESTADO em Nova Iorque. Constatou-se, através de agências de investigação norte-americanas, a existência de outras instituições financeiras envolvidas nessas transações, como Chase Manhattan (atual J. P. Morgan Case), MTB Bank e Merchants Bank of New York (atual Valley National). No Merchants Bank, informações preliminares apontaram a existência de 39 contas de brasileiros, dentre elas **AVION RESOURCES** (nº 45200491), aberta pelos requeridos, em nome próprio ou com a anuência e participação deles. As contas eram geridas pela portuguesa, naturalizada norte-americana, MARIA CAROLINA NOLASCO e os indícios de remessas ilegais para o exterior resultam sobretudo do fato de serem titularizadas por empresas *offshores* com sede em paraísos fiscais. Acrescenta que, no período de dezembro/2001 a maio/2002, a AVION movimentou US$ 6.940.637,70.

        Acompanham o pedido os documentos de fls. 10/34, inclusive termo de declarações prestadas por MARIA CAROLINA NOLASCO em 15.11.2004, nos Estados Unidos, a uma equipe formada por autoridades brasileiras e americanas.

**PODER JUDICIÁRIO - JUSTIÇA FEDERAL**
**SEÇÃO JUDICIÁRIA DO PARÁ. 4ª VARA FEDERAL**

Brevemente relatados. Decido.

A medida cautelar postulada, como é próprio desse tipo de provimento, presta-se a garantir a eficácia do processo principal, tendo, por isso, natureza instrumental.

Vincula-se, desse maneira, à ação penal ajuizada pelo MPF contra os requeridos por suspeitas de crimes contra o sistema financeiro e de lavagem de dinheiro, como forma de garantir que eventual condenação que venha a lhes ser imposta tenha conseqüência no âmbito civil.

Como é cediço, um dos efeitos da sentença penal condenatória é tornar certa a obrigação de indenizar o dano causado e determinar a perda em favor da União dos instrumentos utilizados para o crime ou do produto ou proveito com ele obtido (CP, art. 91).

Como forma de assegurar esses efeitos da futura sentença penal condenatória, entre outras medidas assecuratórias, prevê o art. 132 do Código de Processo Penal o seqüestro de bens móveis quando, inaplicável a busca e apreensão, houver "indícios veementes da proveniência ilícita dos bens" (CPP, art. 125, in fine).

Os indícios da prática criminosa resultam dos elementos que instruem a ação penal, bem como das declarações prestadas por Maria Carolina Nolasco, portuguesa responsável pelo gerenciamento das contas brasileiras mantidas no Merchants Bank, sobre as quais pesam suspeitas de transações com os recursos remetidos ilegalmente para o exterior.

Extrai-se do depoimento da declarante passagem sublinhada pelo órgão do Parquet, no sentido de que, verbis:

> " quase todos os clientes da depoente eram da área da área de turismo e câmbio. QUE eles faziam compensação recíproca, emprestando dinheiro uns aos outros. QUE essa compensação era feita mais intensamente por ANTONIO PIRES com HELIO LANIADO, POMPEU MAIA e GUSTAVO XERFAN. [...]. QUE a conta AVION era de GUSTAVO XERFAN. QUE a empresa dele ficava no Pará era do ramo de turismo e câmbio e o contato no Brasil era com ele mesmo. QUE GUSTAVO mandava depositar cheques de vários países do mundo, que eram enviados aos EUA pela DHL. QUE quando os cheques eram compensados os valores disponibilizados eram transferidos internamente para a GATEX ou HARBER por ordem de GUSTAVO [...]. QUE os cheques eram de valores altos e em grande quantidade. QUE os cheques eram pagáveis a AVION. QUE muitos dos emitentes eram brasileiros. "



**PODER JUDICIÁRIO - JUSTIÇA FEDERAL**
**SEÇÃO JUDICIÁRIA DO PARÁ. 4ª VARA FEDERAL**

A necessidade e a urgência da medida soam evidentes. Tratando-se de ativos financeiros, ainda mais em instituição bancária estrangeira; indispensável a ordem judicial de bloqueio desses valores, a ser cumprida através do tratado de cooperação (MLAT) mantido com aquela nação estrangeira, como forma de assegurar que ação de indenização que futuramente possa vir a ser intentada contra os Requeridos tenha efetiva conseqüência. A urgência é reclamada pela notícia de desbloqueio da quantia de US$ 1.026.455,90, da conta AVION, determinada por autoridade judiciária americana, que se encontrava indisponível em virtude de pedido da Procuradoria dos Estados Unidos.

Além das pessoas nominalmente citadas nas declarações de Maria Carolina, todos os demais requeridos são sócios das empresas AVION RESOURCES LIMITED e MONOPÓLIO CÂMBIO XERFAN HABER e encontram-se denunciados pelo MPF nas penas dos crimes antes referidos.

Presentes, assim, indícios fundados da prática criminosa e a necessidade de assegurar que recursos ilegalmente remetidos para o exterior sejam repatriados ou garantida a indenização dos danos porventura causados com o delito, **DEFIRO** a medida cautelar pleiteada para, com fundamento no art. 132 c/c o art. 126 do CPP, determinar a indisponibilidade dos ativos financeiros, mantidos no **Merchants Bank of New York (atual J. P. Morgan Case), nos Estados Unidos da America,** por GUSTAVO XERFAN HABER, brasileiro, casado, filho de Michel Homci Haber e de Elza Xerfan Haber, CPF 101.602.722-20 e RG nº 2080503-SSP/PA, **MICHEL HOMCI HABER,** brasileiro, empresário, filho de Nassry Homci Haber e de Nazira Homci Haber, CPF 000.261.902-49 e RG nº 1721525-SSP/SP, **ELZA XERFAN HABER,** brasileira, empresária, filha de José Xerfan e de Leonor Hachem Xerfan, CPF 307.048.552-91 e RG nº 4609235-SSP/PA, **MEG LUNA SOARES HABER,** brasileira, empresária, filha de Salomão Essucy Soares e de Rachel Canat Soares, CPF 219.342.662-72 e RG nº 1402370-SSP/PA, **AVION RESOURCES LIMITED,** pessoa jurídica offshore, sediada nas Ilhas Virgens Britânicas, pertencente a Michel Haber, Gustavo Xerfan Haber, Elza Haber e Meg Luna Soares Haber, e **MONOPÓLIO CÂMBIO TURISMO LTDA,** CNPJ 34.606.362/0001-38, com sede na Av. Braz de Aguiar, nº 202, Nazaré, Belém/PA, devendo referidas informações serem solicitadas pelo Ministério Público Federal através do MLAT e compartilhadas entre o Departamento de Recuperação de Ativos e Cooperação Jurídica Internacional do Ministério da Justiça e Ministério Público Federal.

• Após o cumprimento, notifiquem-se os Requeridos para as providências que entenderem de direito.



**PODER JUDICIÁRIO - JUSTIÇA FEDERAL**
**SEÇÃO JUDICIÁRIA DO PARÁ. 4ª VARA FEDERAL**

Ciência ao MPF.

Mantenha-se o sigilo dos autos até comprovação do cumprimento dos efetivos bloqueios pelo Ministério Público Federal

Belém,         de março de 2005.

**ANTONIO CARLOS ALMEIDA CAMPELO**
Juiz Federal Substituto da 4ª Vara

# Chettiar Business, Inc.
# Acct. No. 45200483

**FEDERAL JUSTICE**
PARANA JUDICIARY SECTION
2nd Federal Criminal Court of Curitiba
Specialized in Money Laundering Crimes and Crimes against the National Finance System

### Proceedings nr. 2005.70.00.008925-4

I

According to the accusation and the evidence gathered during the investigation, FERNANDO JANINE RIBEIRO, JOACYR REINALDO, TERESA MITSUMUNE and MYRIAM DE VASCONCELOS ORTIZ REYNALDO, would be responsible for **currency evasion** at the amount of R$ U$ 22,751,021.64, through the company 'Click Trade Corretora de Câmbio, Títulos e Valores Mobiliários S/A' (a money services business), which would make deposits and received money through the CHETTIAR account, operating in the parallel exchange market by means of the 'cable-dollar' type from December 10th, 2001 through this date, by means of **deposits abroad** to the bank account belonging to the offshore company 'Chettiar Business Inc.' at the Merchants Bank of New York, **not reported** to the Brazilian authorities.

The defendants would have practiced **money laundering**, a criminal offense preceded by crimes against the finance system mentioned above, through the hiding and dissimulation of the source, property, location and operation of that money. Due to the high amount of money and the nature of the operations – exchange – they also incur in the crimes of **clandestine finance institution** and **fraudulent management**. They would have also practiced the crime of **crime organization (gang or mob)** since they would have associated in order to commit all of the criminal offenses described above.

Also according to the accusation, FERNANDO JANINE RIBEIRO and JOACYR REINALDO with the participation of TERESA MITSUMUNE and MYRIAM DE VASCONCELOS ORTIZ REYNALDO would have sent/kept abroad resources belonging to them, hiding their identities through the Chettiar account, characterizing thus the crime of **currency evasion** and **money laundering**.

Among the evidence grounding the accusation, the following can be mentioned as proof of crime existence and authorship:

**FEDERAL JUSTICE**
**PARANA JUDICIARY SECTION**
2nd Federal Criminal Court of Curitiba
Specialized in Money Laundering Crimes and Crimes against the National Finance System

a) documents anent the opening of the CHETTIAR account and the organization of the offshore itself;

b) Expert's Report # 625/05-INC and enclosed documents revealing operations made in the account mentioned heretofore from December 2001 through January 2003;

c) income return forms belonging to the defendants and to the companies controlled by them revealing discrepancies between the income reported by them and the high operations made in the name of their companies;

d) documents, bank statements and depositions that would prove the specific participation of the defendants FERNANDO and JOACYR, partners at CLICKTRADE and empowered to manage the CHETTIAR account in the capacity of attorneys for the company;

e) a fax message sent by TERESA to Maria Carolina Nolasco informing on the defendants Fernando's and Joacyr's personal data and requesting that bank statements should be sent to her fax number.

Thus, considering the evidence anent crime existence and authorship, I ACCEPT hereby the accusation made by the Federal Prosecution against FERNANDO JANINE RIBEIRO, JOACYR REINALDO, TERESA MITSUMUNE and MYRIAM DE VASCONCELOS ORTIZ REYNALDO due to the possible practice of the crimes settled in articles 4, 16 and 22, single paragraph combined with the 1st article, single paragraph, I and II, all of Law 7492/86 (Crimes Against the National Financial System); article 1, items VI and VII, combined with article 1, 1st paragraph, I and II, 2nd paragraph, I and II and 4th paragraph, all of Act 9613/98 (Money Laundering); and article 288 (Crime Organization/Gang) of the Brazilian Penal Code

I appoint **May 6th, 2005 at 02:00 p.m.** for the interrogation hearing of the defendants Fernando Janine Ribeiro, Joacyr Reinaldo, Tereza Mitsumune and Myriam de Vasconcelos Ortiz Reynaldo.

**FEDERAL JUSTICE**
PARANA JUDICIARY SECTION
2nd Federal Criminal Court of Curitiba
Specialized in Money Laundering Crimes and Crimes against the National Finance System

The defendants shall be served and summoned at the locations specified in the accusation so that they may come, along with their lawyers, before this Court for the hearing mentioned heretofore.

Notwithstanding, their criminal antecedents shall be requested.

If the certificates anent criminal antecedents do bear criminal occurrences, the respective crime descriptions shall be requested along with the dates when the crimes have been committed.

II

The Court Clerk Office shall see to the calculation of an eventual negative prescription, affixing the respective label to the cover of the proceedings.

III

I **grant** the requests made by the Federal Prosecution in items 3 through 11 of the opinion on folios 37-40.

Thus, the following agencies shall be noticed:

a) the BACEN (Central Bank of Brazil) to inform on all of the transactions anent 'international availability in *reais*' and exchange operations made by the defendants or by the corporate entity CLICKTRADE CORRETORA DE CÂMBIOS, TÍTULOS E VALORES MOBILIÁRIOS LTDA' between January 1st, 1999 and this date (item 4). The same notice shall also request the sending of all information on file involving the individuals indicted by the Federal Prosecution and the companies CLICKTRADE CORRETORA DE CÂMBIOS, TÍTULOS E VALORES MOBILIÁRIOS LTDA (Tax Roll # CNPJ 58225426/0001-23), MYRMA EMPREENDIMENTOS E PARTICIPAÇÕES S/C LTDA (Tax Roll # CNPJ 57814022/0001-22), and PARATI EMPREENDIMENTOS E PARTICIPAÇÕES LTDA (Tax Roll # CNPJ 02525047/0001-22), all of them from Sao Paulo/SP (item 07);

## FEDERAL JUSTICE
### PARANA JUDICIARY SECTION
#### 2nd Federal Criminal Court of Curitiba
##### Specialized in Money Laundering Crimes and Crimes against the National Finance System

b) the **Brazilian Internal Revenue Service in Sao Paulo/SP**

so that it starts the tax procedures anent the defendants due to the possible practice of the criminal offense described in the 1st article of Law 8137/90, sending copies of the five last income return forms concerning the individuals Teresa Mitsumune and Myriam de Vasconcelos Ortiz Reynaldo (item 3). I do not request hereby the income return forms of the defendants Fernando and Joacyr and the Clicktrade company because the pertaining income return forms anent those individuals and that company for the fiscal years of 1999 through 2003 have already been enclosed to these proceedings (enclosures II and III);

c) the **COAF** (Conselho de Controle de Atividades Financeiras – Council for Financial Activities Control), requesting that agency to send to this Court all of the information they may have on file involving the individuals indicted by the Federal Prosecution and the companies CLICKTRADE CORRETORA DE CÂMBIOS, TÍTULOS E VALORES MOBILIÁRIOS LTDA (Tax Roll # CNPJ 58225426/0001-23), MYRMA EMPREENDIMENTOS E PARTICIPAÇÕES S/C LTDA (Tax Roll # CNPJ 57814022/0001-22), and PARATI EMPREENDIMENTOS E PARTICIPAÇÕES LTDA (Tax Roll # CNPJ 02525047/0001-22), all of them from Sao Paulo/SP (item 07);

d) the **Comissão de Valores Mobiliários – CVM (Securities and Exchange Commission of Brazil)** in Rio de Janeiro/RJ so that it sends to this Court all of the information they may have on file involving the individuals indicted by the Federal Prosecution and the companies CLICKTRADE CORRETORA DE CÂMBIOS, TÍTULOS E VALORES MOBILIÁRIOS LTDA (Tax Roll # CNPJ 58225426/0001-23), specifically the full list of the company clients during the time comprehended between December 1st, 2001 and July 31st, 2002, as well as a full copy of the records of the Sanctioning Administrative Process CVM/TA/SP2002/0487 (item 08).

IV

The Federal Prosecution requests the disclosure of bank costumer secrecy anent the bank accounts held by the offshore companies Liraway International Corporation and Maximus S/A and by the company Paratia Empreendimentos e Participações Ltda  maintained in Brazil and abroad (items 5 and 9).

## FEDERAL JUSTICE
### PARANA JUDICIARY SECTION
#### 2nd Federal Criminal Court of Curitiba
Specialized in Money Laundering Crimes and Crimes against the National Finance System

The right to data secrecy (Federal Constitution, 5th article, X) is not absolute – the disclosure is regulated by the 1st article, 4th paragraph of Complementary Law 105/01, which revoked article 38, 1st paragraph of Law 4595/65.

In this concrete case, as it has been seen, there is evidence of the practice of crimes against the national financial system and money laundering.

Thus, it is **necessary** to grant access to the defendants' bank data, an essential piece of evidence in this kind of criminal offense.

Given the above, I ORDER the **disclosure of bank secrecy**:

- of the bank accounts held by the offshore companies LIRAWAY INTERNATIONAL CORPORATION and MAXIMUS S/A at the Merchants Bank of New York (currently the Valley National bank), MTB (currently Hudson United Bank – HUB) – both of them with main offices in New York, AMTRADE Bank, Miami branch and Banco Central del Uruguay, from *December 1st, 2001 through July 31st, 2002*;

- of the bank accounts held by the company PARATI EMPREENDIMENTOS E PARTICIPAÇÕES LTDA. at the Banco Paulista S/A from *April 1st, 2002 through July 31st, 2002*;

The Banco Paulista S/A shall be requested to provide this Court with a copy of the bank statements anent all of the accounts maintained by the company Parati within the spans of time mentioned in the paragraphs above. Furthermore, the Bank shall send the record information concerning the account mentioned heretofore and the documents anent the two deposits at the amount of U$ 44,650.00 received on April 17th, 2002.

V

As for item 6 on folio 38 I order that a copy of folios 190, 199, 228 and 229 of Police Investigation # 1167/04 be enclosed hereto.

# FEDERAL JUSTICE
### PARANA JUDICIARY SECTION
### 2nd Federal Criminal Court of Curitiba
Specialized in Money Laundering Crimes and Crimes against the National Finance System
### VI

The Federal Prosecution has requested search and seizure measures at the defendant Teresa Mitsumune's home.

In accordance with preliminary investigations held by the Federal Prosecution, assisted by the Federal Police, it was shown that the defendant sent a fax to Maria Carolina Nolaski, a manager at Merchants Bank, with addresses and phone numbers of the defendants Fernando and Joacyr.

As it can be inferred from fax message on folio 71 of enclosure I, said manager should send bank statements anent a certain account, probably CHETTIAR, to the phone/fax number (11) 3032-1364, in the name of Tereza Mitsumune, according to information on folio 143 obtained from the Brazilian Internal Revenue Service data bank.

It might be inferred that Tereza would receive, in the names of Fernando and Joacyr, the documents anent the transactions made through that account, as in a division of roles within the intrinsic scope of the criminal organization.

Thus, there are signs that there may be bank statements or other documents showing the connection of the defendant with the financial crimes and money laundering through operations in the CHETTIAR account or maybe clarifying further the facts described in the accusation.

Given these circumstances, the search and seizure at the location indicated by the Federal Prosecution is necessary in order to enable the gathering of any evidence elements related to the defendants' financial activity or in the parallel exchange, specially documents, bank statements, accounting records and data banks of any kind (Brazilian Code of Criminal Procedure, article 240, 1st paragraph, items d, e and h).

Due to the reasons above, I grant the search and seizure requested by the Federal Prosecution at the following locations:

- Rua Teodoro Sampaio, 2622, apt. 63, Pinheiros, Sao Paulo/SP;

**FEDERAL JUSTICE**
**PARANA JUDICIARY SECTION**
2nd Federal Criminal Court of Curitiba
Specialized in Money Laundering Crimes and Crimes against the National Finance System

The respective warrant shall be duly issued.

The Federal Police shall be noticed through the sending of the warrant so as to be duly complied with. The access to any data banks and files in magnetic media (hard disk or diskettes) in the defendant's personal computers is since now authorized.

All of the objects seized shall be at the disposal of the Federal Police. The Federal Police shall send to this Court an official report anent the search and seizure operation within 15 (fifteen) days.

**VII**

According to item 16 on folio 40, the Federal Prosecution requests the sequester of U$ 1,338,660.25 deposited to the Chettiar account at the Merchants Bank of New York, in the name of the homonymous offshore company, controlled by the defendants Fernando and Joacyr. The Federal Prosecution informs that said amount has already been blocked by the American Justice in the criminal action US versus Nolasco (04-CR-617) – New Jersey Criminal Court.

The decree of such measure demands evidence of crime existence and authorship (Brazilian Code of Criminal Procedure, article 134). As it can be seen in item I herein, these requisites do exist in this case.

In this specific case, this measure is necessary so as to secure, if there is a conviction, the payment of the fine (amercement), court costs and also eventual damages to be paid to the victim – the Union, in this case.

The preceding sequester of assets is settled in article 136 of the Brazilian Code of Criminal Procedure: "*the sequester of the real state may be ordered from the very beginning, being revoked, however, if within 15 (fifteen) days the legal mortgage process is not carried on.*' Although the article refers to real estate property, article 137 of the Brazilian Code of Criminal Procedure extends its scope to assets and other property, too. This measure aims to avoid the inefficacy of the measure due to an eventual delay in the procedure of specialization of the legal mortgage.

# FEDERAL JUSTICE
**PARANA JUDICIARY SECTION**
**2nd Federal Criminal Court of Curitiba**
Specialized in Money Laundering Crimes and Crimes against the National Finance System

It is worth mentioning that the Chettiar account operated – between 2001 and 2003 – an amount which would be equivalent to almost **23 million dollars** – a fact that legitimizes the blocking of US 1,338,660.25 requested hereby, a significantly lower amount.

The passing of time until the end of the main action may cause an irreparable damage – or hard to repair – consisting in the inefficacy of an eventual conviction, at least concerning measures that would have (or should have) effect in the defendant's patrimony. This makes the provisional remedy fully necessary.

In this context, either that amount is set apart since now or there is a risk of not achieving the remedy intended by the accusation and the efficacy of the law itself – although the American Justice has blocked the money, that order can be revoked at any time.

Thus, the *fumus boni juris* (smoke of good law) – consisting in the existence of proof elements concerning the crime and its authorship – and the *periculum in mora* (danger in the delay) – deriving from the risk of waiting for the adjudication of the final sentence, are present in this case. For these reasons, the provisional remedy anent the sequester of assets shall be decreed.

Thus, the sequester records shall be formed based on this decision, to be distributed by dependency to these proceedings. All notices anent the sequester shall be enclosed to the specific records.

## VIII

Due to the disclosure of secrecy and the search and seizure decreed above, these proceedings shall remain in **secrecy of Justice**.

# FEDERAL JUSTICE
### PARANA JUDICIARY SECTION
2nd Federal Criminal Court of Curitiba
Specialized in Money Laundering Crimes and Crimes against the National Finance System

IX

The Federal Prosecution shall be noticed so as to forward the request for mutual legal assistance – via MLAT – to the American Authorities anent the measures granted hereby in items IV and IX above.

This decision is to be abided by with urgency.

Curitiba, April 14th, 2005

(signature)
**GUEVERSON ROGÉRIO FARIAS**
**Federal Judge**

## RECEIPT

On 04/15/2005 I received this judicial proceedings. In witness whereof. (signature)

*Court Seal*



DE :    FAX :



## JUSTIÇA FEDERAL
### SEÇÃO JUDICIÁRIA DO PARANÁ
### 2ª Vara Criminal de Curitiba
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

### Autos nº 2005.70.00.008925-4

I

De acordo com a denúncia e os elementos colhidos durante a investigação, FERNANDO JANINE RIBEIRO, JOACYR REINALDO, TEREZA MITSUMUNE e MYRIAM DE VASCONCELOS ORTIZ REYNALDO teriam promovido a evasão de divisas de R$ US$ 22.751.021,64, por intermédio da empresa Click Trade Corretora de Câmbio, Títulos e Valores Mobiliários S/A, a qual efetuaria depósitos e receberia valores através da conta CHETTIAR, operando no mercado de câmbio paralelo através da modalidade conhecida como "dólar-cabo", no período de 10 de dezembro de 2001 até a presente data, por meio da na conta da *off shore* Chettiar Business Inc., junto ao Merchants Bank de Nova Iorque, depósitos no exterior não declarados às autoridades brasileiras.

Ocultando e dissimulando a origem, propriedade, localização ou movimentação desses recursos, os acusados praticariam o crime de lavagem de dinheiro, cujo antecedente seriam os crimes contra o sistema financeiro acima referidos. Em face do volume de recursos movimentados e da natureza das operações – câmbio – manutenção de instituição financeira clandestina e de gestão fraudulenta. Teriam ainda praticado o crime de formação de quadrilha, pois teriam se associado para cometimento de todos os delitos acima descritos.

Ainda nos termos da denúncia, FERNANDO JANINE RIBEIRO e JOACYR REINALDO, com a participação de TEREZA MITSUMUNE e MYRIAM DE VASCONCELOS ORTIZ REYNALDO teriam remetido/mantido no exterior recursos de sua propriedade, com a ocultação de suas identidades, através da conta Chettiar, o que caracterizaria os crimes de evasão de divisas e de lavagem de dinheiro.

Dentre os elementos de prova que amparam a acusação, destacam-se como indícios de materialidade e autoria os seguintes:

a) documentos relativos à abertura e movimentação da conta e da *off-shore* CHETTIAR;

b) Laudo Pericial nº 625/05-INC e documentos anexos, que revelam as movimentações feitas na referida conta no período compreendido entre dezembro de 2001 a janeiro de 2003;

c) declarações de rendimentos dos acusados e das empresas por eles controladas, que revelam desconformidade entre a renda por eles declarada e as vultosas movimentações realizadas em nome das suas empresas;

d) documentos, extratos de movimentação e depoimentos que comprovariam a participação específica dos acusados FERNANDO E JOACYR, sócios da

2



**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ
2ª Vara Criminal de Curitiba
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

E VALORES MOBILIÁRIOS LTDA., entre 1º de janeiro de 1999 e a presente data (item 4). No mesmo ofício, solicite-se ainda a remessa de todas as informações constantes em seus arquivos envolvendo as pessoas físicas dos denunciados e as pessoas jurídicas CLICKTRADE CORRETORA DE CÂMBIOS, TÍTULOS E VALORES MOBILIÁRIOS LTDA. (CNPJ 58.225.426/0001-23), MYRMA EMPREENDIMENTOS E PARTICIPAÇÕES S/C LTDA (CNPJ 57.814.022/0001-22) e PARATI EMPREENDIMENTOS E PARTICIPAÇÕES LTDA (CNPJ 02.525.047.0001-22), todas de São Paulo/SP (item 07);

   b) à **Receita Federal em São Paulo/SP**, para que inicie procedimentos fiscais em face dos denunciados, em virtude do possível cometimento do delito tipificado no artigo 1º da Lei 8.137/90, enviando-se cópia das cinco últimas declarações de rendimentos das pessoas físicas Tereza Mitsumune e Myriam de Vasconcelos Ortiz Reynaldo (item 3). Deixo de solicitar as declarações dos acusados Fernando e Joacyr e da empresa Clicktrade, pois verifico que as aquelas referentes aos períodos-base de 1999 a 2003 já constam dos autos, compondo os apensos II e III;

   c) ao **COAF**, em Brasília/DF, solicitando a remessa a este Juízo de todas as informações constantes em seus arquivos envolvendo as pessoas físicas dos denunciados e as pessoas jurídicas CLICKTRADE CORRETORA DE CÂMBIOS, TÍTULOS E VALORES MOBILIÁRIOS LTDA. (CNPJ 58.225.426/0001-23), MYRMA EMPREENDIMENTOS E PARTICIPAÇÕES S/C LTDA (CNPJ 57.814.022/0001-22) e PARATI EMPREENDIMENTOS E PARTICIPAÇÕES LTDA (CNPJ 02.525.047.0001-22), todas de São Paulo/SP (item 07);

   d) à **Comissão de Valores Mobiliários – CVM**, no Rio de Janeiro/RJ, para que remeta a este Juízo todas as informações constantes em seus arquivos envolvendo as pessoas físicas dos denunciados e a pessoa jurídica CLICKTRADE CORRETORA DE CÂMBIOS, TÍTULOS E VALORES MOBILIÁRIOS LTDA. (CNPJ 58.225.426/0001-23), sobretudo a relação integral de clientes da empresa durante o período compreendido entre 1º de dezembro de 2001 e 31 de julho de 2002, bem como cópia integral dos autos do Processo Administrativo Sancionador CVM/TA/SP2002/0487 (item 08).

IV

   O Ministério Público Federal requer a quebra de sigilo bancário das contas das empresas *off-shore* Liraway International Corporation e Maximus S/A, e da empresa Paratia Empreendimentos e Participações Ltda mantidas em bancos do Brasil e exterior (itens 5 e 9).

   O direito ao sigilo de dados (CF. art. 5º, X) não é absoluto, sendo possível sua quebra nos termos do disposto no art. 1º, § 4º da Lei Complementar





## JUSTIÇA FEDERAL
### SEÇÃO JUDICIÁRIA DO PARANÁ
#### 2ª Vara Criminal de Curitiba
**Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional**

CLICKTRADE e autorizados a movimentarem a conta CHETTIAR na condição de procuradores da empresa;

e) fax remetido por TEREZA a Maria Carolina Nolasco, informando os dados dos réus Fernando e Joacyr e solicitando a remessa de extratos para o seu número de fax.

Assim sendo, presentes indícios de materialidade e autoria, **RECEBO a denúncia** oferecida pelo Ministério Público Federal contra **FERNANDO JANINE RIBEIRO, JOACYR REINALDO, TEREZA MITSUMUNE e MYRIAM DE VASCONCELOS ORTIZ REYNALDO**, pela prática, em tese, dos crimes previstos no arts. 4º, 16 e 22, parágrafo único, c/c o artigo 1º, parágrafo único, incisos I e II, todos da Lei nº 7.492/86 (Crimes Contra o Sistema Financeiro Nacional); art. 1º, VI e VII, c/c art. 1º, §1º, I e II, §2º, I e II e §4º, todos da Lei 9.613/98 (Lavagem de Dinheiro) e art. 288 do Código Penal (Formação de Quadrilha).

Designo o dia 6 de maio de 2005, às 14:00 horas, para a audiência de interrogatório dos réus Fernando Janine Ribeiro, Joacyr Reinaldo, Tereza Mitsumune e Myriam de Vasconcelos Ortiz Reynaldo.

**Citem-se e intimem-se** os denunciados, nos endereços indicados na denúncia, a fim de que, acompanhados de defensor, compareçam neste Juízo para a audiência ora designada.

Sem prejuízo, **certifiquem-se** e **requisitem-se** seus antecedentes criminais.

Ressalto, por oportuno, caso as certidões venham com ocorrências criminais, desde já, solicitem-se as respectivas certidões narratórias, inclusive com a informação acerca da(s) data(s) do(s) fato(s), em tese, delituoso(s).

II

Promova a Secretaria o cálculo da prescrição, apondo a respectiva etiqueta na capa dos autos.

III

**Defiro** o requerido pelo Ministério Público Federal nos itens 3 a 11 de sua manifestação de fls. 37-40.

Assim sendo, oficie-se:

a) **ao BACEN**, para que informe todas as operações, na modalidade 'disponibilidade internacional de reais' e operações de câmbio realizadas pelos denunciados ou pela pessoa jurídica CLICKTRADE CORRETORA DE CÂMBIOS, TÍTULOS



**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ
2ª Vara Criminal de Curitiba
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

Torne-se assim **necessário** autorizar o acesso aos dados bancários dos investigados, prova essencial nessa espécie de delito.

Ante o exposto, **DECRETO** o afastamento do sigilo *bancário*:

- das contas das empresas *off shore* LIRAWAY INTERNATIONAL CORPORATION e MAXIMUS S/A, mantidas nos bancos Merchants Bank of New York (hoje Valley National Bank), MTB (hoje Hudson United Bank – HUB) – ambos sediados em Nova Iorque - Banco AMTRADE, agência situada em Miami, e Banco Central do Uruguai, no período de *1º de dezembro de 2001 até 31 de julho de 2002*;

- das contas da empresa PARATI EMPREENDIMENTOS E PARTICIPAÇÕES LTDA, mantidas no Banco Paulista S/A, no período de *1º de abril de 2002 até 31 de julho de 2002.*

Oficie-se ao Banco Paulista S/A, solicitando cópia dos extratos de todas as contas mantidas pela empresa Parati, nos períodos mencionados nos parágrafos anteriores. Solicite-se, ainda, o envio das informações cadastrais do titular da conta mencionada e dos documentos referentes aos dois depósitos de US$ 44.650,00, recebidos em 17 de abril de 2002.

V

Com relação ao item 6 da fl. 38, determino a juntada a estes autos de cópia das fls. 190, 199, 228 e 229 dos autos do IPL nº 1167/04.

VI

O Ministério Público Federal requereu a busca e apreensão na residência da denunciada Tereza Mitsumune.

De acordo com as investigações preliminares realizadas pelo Ministério Público Federal, com o auxílio da Polícia Federal, foi constatado que a denunciada remeteu um fax a Maria Carolina Nolaski, gerente do Merchants Bank, no qual constam endereços e telefones dos acusados Fernando e Joacyr.

Segundo se infere do texto do fax de fl. 71 do apenso I, a referida gerente deveria enviar os extratos de uma determinada conta, provavelmente a CHETTIAR, para o telefone (fax) nº (11) 3032-1364, o qual está em nome de Tereza Mitsumune, consoante informação de fl. 143, obtida junto à base de dados da Receita Federal.

Poder-se-ia concluir que Tereza recebia, em nome de Fernando e Joacyr, a documentação referente às transações realizadas por intermédio da referida conta, como uma divisão de tarefas no âmbito intrínseco da organização criminosa..



## JUSTIÇA FEDERAL

SEÇÃO JUDICIÁRIA DO PARANÁ

2ª Vara Criminal de Curitiba

Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

Há, portanto, indícios de que possam existir extratos ou outros documentos que demonstrem a ligação da ré com os crimes financeiros e de lavagem de dinheiro cometido através de movimentações na conta CHETTIAR, ou talvez melhor esclarecer os fatos descritos na denúncia.

Nessas circunstâncias torna-se necessária a realização de busca e apreensão no endereço indicado pelo Ministério Público Federal, a fim de possibilitar a colheita de quaisquer elementos de prova relacionados à atividade financeira ou no câmbio paralelo dos investigados, em especial documentos, extratos, registros contábeis e bancos de dados de qualquer espécie (CPP, art 240, § 1º, alíneas d, e e h).

Ante o exposto, defiro a **busca e apreensão** requerida pelo Ministério Público Federal, nos seguintes endereços:

- Rua Teodoro Sampaio, nº 2611, ap. 73, Pinheiros, São Paulo/SP;

Expeça-se o respectivo mandado.

**Oficie-se à Polícia Federal**, encaminhando o mandado para cumprimento. Fica desde já autorizado, também, o acesso a quaisquer bancos de dados e arquivos mantidos em meio magnético (disco rígido ou disquetes) nos computadores da investigada.

Todos os objetos apreendidos ficarão à disposição da Polícia Federal, devendo a mesma enviar, a este Juízo, no prazo máximo de 15 (quinze) dias, relatório circunstanciado da operação de busca e apreensão.

VII

No item 11 da fl. 40, o *parquet* federal requer o seqüestro da quantia de US$ 1.338.660,25, depositada na conta Chettiar do Merchants Bank of New York, em nome da *off shore* homônima, controlada pelos denunciados Fernando e Joacyr. Informa ainda o Ministério Público Federal que tais valores já se encontram bloqueados pela Justiça norte-americana na ação criminal US v. Nolasco (04-CR-617), da Corte Criminal de New Jersey.

Para que a medida seja decretada, faz-se necessária prova da **existência do crime e indícios de autoria** (CPP, art. 134), que, conforme visto no item I da presente decisão, existem no presente caso.

No caso concreto, a medida se revela como necessária a fim de assegurar, em caso de condenação, o pagamento da **pena de multa**, das custas processuais e também de eventual ressarcimento de danos à vítima, no caso a União.

O seqüestro prévio de bens está previsto no artigo 136 do Código de Processo Penal, o qual dispõe que *"o seqüestro do imóvel poderá ser decretado de início, revogando-se, porém, se no prazo de 15 (quinze) dias não for promovido o*

5

FAX :

DE :



**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ
2ª Vara Criminal de Curitiba
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

processo de inscrição da hipoteca legal." Muito embora o dispositivo se refira somente a imóvel, o artigo 137 do estatuto processual estende seu alcance também a bens móveis e valores. Trata-se de medida que visa a evitar que eventual demora no processo de especialização da hipoteca legal acabe por tornar ineficaz a medida.

Vale consignar que a movimentação da conta Chettiar, no período compreendido entre os anos de 2001 e 2003, corresponderia a uma quantia equivalente a quase 23 milhões de dólares, o que sem dúvida legitima o bloqueio de US$ 1.336.660,25 ora requerido, valor significativamente inferior àquele .

O decurso do tempo até o término da ação principal pode causar dano irreparável ou de difícil reparação, consistente na ineficácia de eventual provimento jurisdicional condenatório, ao menos no que se relaciona com medidas que teriam (ou deveriam ter) efeito no patrimônio do acusado, o que torna a medida cautelar absolutamente necessária.

Ademais, verifica-se que o réu FERNANDO JANINE RIBEIRO peticionou, em nome próprio, perante o cônsul dos Estados Unidos em São Paulo, a fim de obter a restituição da quantia bloqueada pela justiça norte-americana (cf. fls. 62-63 do apenso I), existindo o risco de que a qualquer momento possa o magistrado estrangeiro entender liberação do referido numerário em favor do réu.

Nesse contexto, ou se reserva desde já o referido valor, ou se correrá o risco de ter frustrada a realização do provimento almejado pela acusação e a efetividade do próprio direito, pois muito embora haja determinação de bloqueio judicial pela justiça norte-americana, tal medida pode ser revogada a qualquer momento, como se discorreu anteriormente.

Presentes, portanto, tanto o fumus boni iuris – consubstanciado na existência de elementos de prova acerca da existência do crime e de sua autoria –, quanto o periculum in mora – decorrente do risco em aguardar o trânsito em julgado da decisão definitiva – há de ser decretada a medida cautelar de seqüestro (arresto) de bens.

Assim, formem-se autos de seqüestro a partir do presente despacho, a serem distribuídos por dependência a este. Todos os informes referentes ao seqüestro deverão ser juntados nos autos específicos para a medida.

VIII

Em face da quebra de sigilo e da determinação de busca e apreensão acima decretadas, estes autos deverão tramitar em silêncio de justiça.

6

DE :



### JUSTIÇA FEDERAL
SEÇÃO JUDICIÁRIA DO PARANÁ
2ª Vara Criminal de Curitiba
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

IX

Intime-se desde já o Ministério Público Federal que deverá providenciar, conforme requerido, a juntada e o encaminhamento do pedido de assistência via MLAT às autoridades norte-americanas quanto à medida deferida no item IV supra.

Cumpra-se, com urgência.

Curitiba, 14 de abril de 2005.

**Gueverson Rogério FARIAS**
Juiz Federal Substituto

RECEBIMENTO

Aos _____ de 2005, recebi estes autos. Do que, para constar, lavrei esta termo._____

7

# Farswiss Asset Management, Ltd. Acct. No. 9006863

# FEDERAL JUSTICE
## District Court of Paraná
2nd Criminal Court of Curitiba
Specialized in crimes of Money Laundering and against the National Financial System

### CONCLUSION

On March 6th, 2006, I hereby close this proceeding and submit it to the Honorable Substitute Federal Judge of the 2nd Federal Criminal Court of Curitiba. I prepared this term to enclose herewith.

---

Proceeding No. 2005.70.00.034011-0

Owing to evidence of perpetration of crimes against the national financial system and money laundering described in the charges-acceptance decision (pages 116/120), it is to be rendered the precautionary seizure of the funds maintained in the account FARSWISS No. 9-006863 at the Merchants Bank/NY, currently frozen owing to decision by US authorities.

The Brazilian legislation provides for the possibility of seizure of assets in order to ensure the payment of a fine, the court fees and even the forfeiture in case of criminal conviction (Code if Criminal Procedure, article 125 and the next; Law No. 9.613/98, article 4, caput).

In this case, in addition to the evidence that the crime took place and evidence of the identity of the perpetrators, there is evident risk of inadequacy of a likely conviction sentence in case the defendant's assets and funds needed to guarantee the effects on estate of the criminal sentence are not seized beforehand.

It is important to mention that there has already been an attempt to release the funds frozen at the United States Justice, and this reinforces the need for a formal request from the Brazilian authorities so that the restraint of this account be maintained until the judgment of the crimes against the national financial system and money laundering by which the defendants are being sued before the Brazilian Federal Justice.

Thus I order the <u>seizure of the funds maintained at the FARSWISS account No. 9-006863 at the Merchants Bank/NY.</u>

The Federal Public Prosecution shall arrange, as requested, the gathering and transmission of the request for assistance via MLAT to the United States authorities regarding the measures of lift of bank secrecy and seizure rendered above, enclosing a copy of this decision and the charges-acceptance decision. Notify it.

Curitiba, March 6th 2006

**GUEVERSON FARUS**
**Substitute Federal Judge**



ã.33



## JUSTIÇA FEDERAL
### SEÇÃO JUDICIÁRIA DO PARANÁ
2ª Vara Criminal de Curitiba
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

**CONCLUSÃO**

Aos 06/03/2006, faço estes autos conclusos ao MM. Juiz Federal Substituto da 2ª Vara Criminal. Para constar, lavrei este termo.

---

**Autos 2005.70.00.034011-0**

Diante dos indícios da prática de crimes contra o sistema financeiro nacional e de lavagem de dinheiro expostos na decisão de recebimento da denúncia (fls. 116/120), deve ser deferido o seqüestro cautelar dos valores mantidos na conta FARSWISS, n° 9-006863, do Merchanfs Bank/NY, atualmente já bloqueado em virtude de decisão das autoridades norte-americanas.

A legislação brasileira prevê a possibilidade de seqüestro de bens a fim de garantir o pagamento de pena de multa, das custas processuais e inclusive para perdimento em caso de condenação criminal (Código de Processo Penal, art. 125 e ss; Lei n°.9.613/98, art. 4°, *caput*).

No presente caso, além da prova da existência do crime e indícios de autoria, há evidente risco de ineficácia de eventual sentença condenatória caso não sejam desde já seqüestrados bens e ativos do requerido suficientes para garantir os efeitos patrimoniais da sentença criminal.

Acrescente-se que já houve tentativa de liberação dos valores bloqueados junto à Justiça dos Estados Unidos, o que reforça a necessidade da existência de requerimento formal das autoridades brasileiras a fim de que o bloqueio dessa conta seja mantido até o julgamento dos crimes contra o sistema financeiro nacional e de lavagem de dinheiro pelos quais os requeridos estão sendo acusados perante a Justiça Federal brasileira.

Assim sendo, decreto o seqüestro dos valores mantidos na conta FARSWISS, n° 9-006863, do Merchanfs Bank/NY.

O Ministério Público Federal deverá providenciar, conforme requerido, a juntada e o encaminhamento do pedido de assistência via MLAT às autoridades norte-americanas quanto às medidas de quebra de sigilo bancário e de seqüestro supra deferidas, instruindo-o com cópia da presente decisão e da decisão na qual foi recebida a denúncia. Intime-se.

Curitiba, 06 da março de 2006.

**GUEVERSON FARUS**
Juiz Federal Substituto

# Gatex Corporation
# Acct. No. 9008295

# &

# Harber Corporation
# Acct. No. 9006556



## CONCLUSION

On    of         of 2004, I hereby close this proceeding and submit it to the Honorable Federal Judge of the 2nd Federal criminal court of Curitiba. I prepared this term to enclose herewith.

Request for restraint of accounts owned or controlled by Antônio Pires de Almeida abroad.

During the Beacon Hill Operation, this Court stated the following in relation to the requests for prison, restraint and search and seizure related to Antônio Pires de Almeida and his subgroup:

"1. Pursuant to the Resolution No. 20/2003, of the Presidency of the Federal Regional Court of the 4th Region, this Court was specialized to judge crimes against the national financial system and money laundering in the territory of the state of Paraná.

2. Owing to the specialization, hundreds of inquiries were received, particularly from Foz do Iguaçú , in which it is investigated the illicit transfer of funds abroad, via CC5 accounts.

3. In the investigation concerning the final destination of the funds, it has been verified that a great part of the money was sent to the Banestado branch in New York. After this branch was closed, the assets were transferred to other financial institutions abroad.

4. Due to the fact that it was registered that a substantial part of the funds which were kept in Banestado was transferred to accounts maintained at the Merchants bank of New York or that several accounts maintained in this in institution were controlled by Brazilian "doleiros", it was ordered the lift of bank secrecy for the proceeding No. 2003.7000030333-4.

5. It is important to point out that this institution is already under investigation in the United States for suspect of money laundering, particularly by means of accounts administered by Maria Carolina Nolasco.

6. The investigations under way in this Court have disclosed the existence in Brazil of a real financial system parallel to the official system.

7. This parallel system was allegedly controlled by "doleiros" who carried out the exchange operations outside the official system, with the unauthorized purchase and sale of dollars, whether in cash or by means of the banking clearance system with the delivery of dollars through deposit in accounts abroad in return for the payment of reais in Brazil or vice-versa. This compensation system is commonly called

in Brazil "wire-transfer". The operations are illegal because they are carried out by people who are not authorized to operate with exchange in Brazil, at least not this way (they do not refer to operations in the tourism exchange market) and for they do not deal with authorized financial institutions (article 10, X, "d" of the Law No. 4.595/64 and article 23 of the Law No. 4.131/62). The most serious part is that, because they are illegitimate, these operations are not registered in the official accounting or any control on the part of the public authorities, consisting of an environment conducive to tax evasion, illicit transfer of funds and also money laundering.

7. It was not a coincidence that one of the 'dollar traders ('doleiros`), arrested by this Court, Alberto Youssef is involved in crimes of money laundering, money which was illicitly transferred from public coffers of the City Hall of the cities of Maringá and Londrina and also of the Copel – Companhia Paranaense de Energia Elétrica (proceeding 2003.7000056661-8).

8. The activities of these 'dollar traders ('doleiros`) were apparently carried out by means of accounts maintained abroad in the name of offshore companies. In a first phase of the investigation, it was revealed accounts of this kind maintained in the Banestado branch in New York. After this bank branch was closed, many of the 'dollar traders ('doleiros`) opened accounts in other institutions abroad, including at the Merchants Bank of New York. As an example, the 'doleiro' Paulo Roberto Krug, who owned an account at Banestado in New York in the name of Tallmann Finance Corp, opened an account at the Merchants Bank in the name of the Pacific Way Financial Inc.

9. In this case, the report prepared by the Federal Public Prosecution Task Force CC5 refers to the activity of other 'doleiros'. It aims at the specific object of the accounts owned by "Gatex Corporation", "Sorabe S/A" and Harber Corporation". On pages 64-140 of the enclosure, it was gathered statements of the account Gatex in the period from 01/04/2002 to 28/06/2002, where it was possible to verify the huge transaction of funds (over one million dollars per day). On pages 351-355, it was enclosed a communication of suspect operation issued by the Citibank in New York, which informed that the Sorabe account at Merchants received over thirty two million dollars in 1999. There is not enough information on the transaction in the account Harber.

10. The documents included in the records reveal that Regina Ruriko Inoue and Roseli Ciolfi appeared as responsible for the transactions of the accounts Gatex, Harber and Sorabe (pgs. 08, 19 and 315 of the enclosure). Relating to the two women and the nature of the accounts, it is worth mentioning the document on page 19, which was signed by them, and in which is informed that "our main activity is to exchange currency and help our customers with their investments, we also help them with the international transfer of salaries and, as you know, we carry out a great deal of operations with your customers. From Brazil, we buy and sell currency". In this message the three accounts referenced above are mentioned.

11. It is important to register that they were partners in the exchange offices in Brazil, particularly the Turist Câmbio, Viagens e Turismo in São Paulo/SP, and which may be used to confer legitimate appearance to the operations of the group.

12. Although Antônio Pires de Almeida denied that he was responsible for the Turist and that he is responsible for accounts maintained at Merchants (pgs. 175-178 of the enclosure), it is possible to visualize his signature in the documents on pgs. 09 and 11 of the enclosure, dated 2000 and 2001, and which refer to the opening and the operation of the account Gatex. He also appears as the individual in charge of the account Sorabe S/A in documents, dated 1999 and 2003 (pgs.  286,  290 and 293 of the enclosure). There is also a power-of-attorney document, dated 2003 and granted by the Harber Corporation, Gatex Corporation ans Sorabe S/A to Antônio Pires de Almeida (pg. 310 of the enclosure).

13. In addition, Maria Carolina Nolasco, the account manager at Merchants, declared, in testimony provided to the American authorities, that Antônio Pires de Almeida was the owner of the account Gatex which was operated by Roseli (pg. 144 of the enclosure)

14. Paulo Jacintho Sposito apparently was the accountant of the Turist, as disclosed by Antônio Pires de Almeida, and appeared as witness for the alterations in the articles of incorporation of the company, changes which unduly concealed the participation of Antônio, which disclosed his likely conscious participation in the fraud.

15. There is, therefore, significant evidence of crimes of illicit transfer of funds (article 22 of the Law No. 7.492/86), fraudulent management of a financial institution (article 4th of the Law No. 7.492/86), of tax evasion (article 1st of the Law No. 8.137/90) and association for crime (article 288 of the Criminal Code), without excluding the possibility that the group have made its way towards the perpetration of crimes of money laundering (article 1st of the Law No. 9.613/98).

16. Considering the frequency that the crime was committed and the serious damage to the national financial system and the public order as a whole, there is ample justification for taking tougher measures, such as preventive custody, search and seizure.

17. The search and seizure at the known addresses of the group may result in the gathering of evidentiary material even more representative in relation to the exchange transactions with maybe more information of its real customers.

18. The preventive custody is crucial to prevent the interference from the individuals under investigation in the collection of evidence and will also be useful to prevent momentarily the continuation of the criminal act, safeguarding the public order, and also to prevent people who have significant and undeclared amounts abroad from fleeing. The measure is grounded in the article 1st, I, III, "l" and "o" of the

Law No. 7.960/89. In time, it may be substituted, if that is the case, for preventive custody."

On that occasion, besides the search and seizure, it was ordered the preventive custody of Regina Ruriko Inoue, Roseli Ciolfi and Paulo Jacintho Sposito. The same measure was not taken against Antônio Pires de Almeida owing to his old age, which however may have been a mistake, considering the recent events.

In the petitions submitted by the Federal public Prosecution it was revealed that the group is trying to suspend the restraint on the financial assets in the United States of America, especially in the account named "Venus", which was in the name of Kesten Development Corporation at MTB Bank, currently Hudson United Bank.

The petitions submitted to the Judges on duty were granted and the restraint of assets was maintained for the account Venus, maintained at the MTB Bank, currently Hudson Harber, in the accounts Harber, Gatex and Sorabe, these maintained at Merchants Bank, currently Valley National, and also the account Tadeland, maintained at the EAB Bank. According to the illustrious Judges, the decisions were to be confirmed by this Court.

It has been sufficiently proved the connection between the accounts Harber, Gatex and Sorabe with the group headed by Antônio Pires de Almeida, according to the items 10-14 above. As for the accounts Venus and Tadeland, the connection is evidenced by the fact that the Turist Câmbio, Viagens e Turismo Ltda., company controlled by the group according to the legal basis described above, appears as petitioner in the USA to have the accounts unrestrained.

The Turist or Antônio Pires de Almeida or any company maintained by him in Brazil does not have the authority to operate in the exchange market by means of accounts maintained abroad. All the operations which he carried out and including the declared ones (as in item 10 above) are illegal, according to the Brazilian legislation, and therefore are not registered in the official bookkeeping of his company and not included in the control by the Brazilian public authorities, which constitutes a favorable environment for the laundering of money.

Details of the American investigation also call the attention, particularly the reason for the American restraint, that the group was allegedly involved in money laundering originated in crimes of drug trafficking, in accordance with the report contained in the decision by the Federal Court of Appeals of the Third Judicial Circuit of the United States of America.:

"It is claimed in the seizure action  that the funds seized were involved in a scheme for the laundering of money, proceeds of drugs, headed by a South American money dealer Markos Glikas. Glikas was arrested in April of 1998 and convicted for conspiracy to commit money laundering in March of 1999. As part of the conspiracy, Glikas had allegedly handed in the proceeds of the crime to Antônio Pires

de Almeida ("Pires"), the owner of the Turist-Cambio, who would then launder the money through several intermediary accounts, finally depositing it in the Kesten account at the MTB (the account Venus)"

It is interesting to notice the connection with another case under way at this Court, in which Alexandre Glikas, son of Markos Glikas is being prosecuted against for the crime of fraudulent transfer of funds abroad, for depositing around R$ 8.547.083,84 in the year 1996 (approximately the equivalent in dollars at the time) in accounts owned by people without financial means, named 'nominees', so that it was deposited in accounts owned by non-resident foreigners, the accounts CC5, for transfers abroad (criminal proceeding No. 2002.7000078930-5). Considering that Alexandre was under 21 at that time, it is likely that the funds belonged to his father.

Thus there is relevant evidence of the perpetration of financial crimes by Antônio Pires de Almeida and his group, particularly the illicit transfer of funds abroad (article 22 of the Law No. 7.492/86), fraudulent management of a financial institution (article 4th of the Law No. 7.492/96), tax evasion (article 1st of the Law No. 8137/90) and gang (article 288 of the Criminal Code), and also that the funds maintained abroad are proceeds of illicit activities, as well as money laundering.

Certainly the procedural issues which led to the unfreezing in light of the American legislation do not correspond to the Brazilian legislation. On the other hand, the American authorities were probably unaware that Antônio Pires de Almeida, his companies and his group are not authorized by the Brazilian legislation to operate with exchange using accounts abroad, nor that for this reason his operations in Brazil are maintained off the records of the official accounting on the part of the Brazilian public authorities.

Therefore, I confirm the decision by the judges to order, based on the grounds provided and also in the article 4th of the Law No. 9.613/98, in the article 240, 132 and 137 of the Code of Criminal Procedure, the restraint of the assets maintained by the group:

a) in the account Venus (No. 030101107) maintained at the MTB Bank, currently Hudson United Bank;
b) in the account Tadeland (No. 12108) maintained at the EAB Bank; and
c) in the accounts Harber (No. 9006556), Gatex (No. 9008295) and Sorabe (No. 9005588), maintained at the Merchants Bank, currently Valley National.

Let the Public Prosecution Office know urgently, by sending certified copy of the decision which shall see to the enforcement of the restraint by means of MLAT or another.

Then, enclose it to the proceeding No. 2004.7000023171-6. I order, for the time being and until the enforcement of the measure, the secrecy about the records. Take note as defendant Antônio Pires de Almeida and also request silence.

Curitiba, December 13th 2004

Sergio Fernando Moro
Federal Judge

RECEIPT

On      of      of  2004 I received these records. To register, I wrote this term.



**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ                    **129**

**CONCLUSÃO**

Em 13 de 12 de 2004, faço estes autos conclusos ao MM. Juiz Federal da 2.ª Vara Criminal Federal de Curitiba. Para constar, lavrei este termo.

Pedidos de bloqueio no exterior de contas titularizadas ou controladas por Antônio Pires de Almeida.

Durante a Operação Farol da Colina, este Juízo assim se pronunciou acerca de pedidos de prisão, bloqueio e busca e apreensão relativamente a Antônio Pires de Almeida e seu grupo:

"1. A partir da Resolução n.º 20/2003, da Presidência do TRF da 4.ª Região, esta Vara foi especializada para julgamento de crimes contra o sistema financeiro nacional e de lavagem de dinheiro no âmbito do território paranaense.

2. Por força da especialização, foram recebidas centenas de inquéritos, notadamente de Foz do Iguaçu, nos quais se apura a remessa fraudulenta, via contas CC5, de numerário para o exterior.

3. Na investigação acerca do destino final do numerário, constatou-se que boa parte dele teria sido enviada à agência do Banestado em Nova York. Após o fechamento desta agência, os ativos migraram para outras instituições financeiras no exterior.

4. Diante do registro de que parte substancial do numerário que era mantido no Banestado teria sido remetida para contas mantidas no Merchants Bank of New York ou de que várias das contas mantidas nesta instituição seriam controladas por "doleiros" brasileiros, foi decretada, no processo n.º 2003.7000030333-4, a quebra de seu sigilo bancário.

5. Releva destacar que essa instituição já está sendo investigada nos Estados Unidos por suspeita de lavagem de dinheiro, especificamente através das contas administradas pela gerente Maria Carolina Nolasco.

6. Ora, as investigações em curso perante esta Vara vêm revelando a existência no Brasil de um verdadeiro sistema financeiro paralelo ao sistema oficial.

7. Tal sistema paralelo seria controlado por "doleiros" que realizariam operações de câmbio à margem do sistema oficial, com compra e venda de dólares não-autorizada, seja em espécie, seja através de sistema de compensação, com entrega de dólares através de depósito em conta no exterior em contrapartida a pagamento de reais no Brasil ou vice-versa. Tal sistema de compensação é denominado vulgarmente no Brasil de "dólar cabo". As operações são ilegais porque conduzidas por pessoas não autorizadas no Brasil a operar com câmbio, pelo menos não desta forma (não se tratam de operações do mercado de câmbio turismo), e por não transitarem por instituições financeiras autorizadas



## JUSTIÇA FEDERAL
SEÇÃO JUDICIÁRIA DO PARANÁ

**130**

(artigo 10, X, "d" da Lei n.º 4.595/64, e artigo 23 da Lei n.º 4.131/62). O mais grave é que tais operações, por serem ilegítimas, são mantidas à margem da contabilidade oficial ou de qualquer controle por parte das autoridades públicas, constituindo ambiente propício à sonegação fiscal, evasão de divisas e ainda lavagem de dinheiro.

7. Não por acaso, um dos "doleiros" presos por esta Vara, Alberto Youssef, estaria envolvido em crimes de lavagem de dinheiro desviado dos cofres públicos da Prefeitura de Maringá, da Prefeitura de Londrina e ainda da Copel – Companhia Paranaense de Energia Elétrica (cf. processo 2003.7000056661-8).

8. As atividades desses doleiros seriam, aparentemente, conduzidas através de contas mantidas no exterior em nome de "off shores". Em uma primeira fase da investigação, foram desveladas contas da espécie mantidas na agência do Banestado em Nova York. Após o fechamento desta, vários dos doleiros abriram contas em outras instituições no exterior, inclusive no Merchants Bank de New York. A título exemplificativo, o doleiro Paulo Roberto Krug, que mantinha conta no Banestado em Nova York em nome da Tallmann Finance Corp, abriu conta no Merchants Bank em nome da Pacific Way Financial Inc.

9. No presente caso, o dossiê preparado pela Força Tarefa MPF CC5 trata da atividade de outros doleiros. Tem ele por objeto específico as contas titularizadas por "Gatex Corporation", "Sorabe S/A" e "Harber Corporation". Nas fls. 64-140 do apenso), foram juntados extratos da conta da Gatex no período de 01/04/2002 a 28/06/2002, sendo ali visualizada a sua vultosa movimentação (mais de um milhão de dólares por dia). Nas fls. 351-355, foi juntada comunicação de operação suspeita emitido pelo Citibank em Nova York informando que a conta da Sorabe no Merchants teria recebido créditos de mais de trinta e dois milhões de dólares no ano de 1999. Faltam maiores informações sobre a movimentação da Harber.

10. Os documentos que instruem os autos revelam que Regina Ruriko Inoue e Roseli Ciolfi figurariam como responsáveis pela movimentação das contas da Gatex, Harber e Sorabe (fls. 08, 19 e 315 do apenso). Relativamente à duas e à natureza das contas merece, aliás, destaque o documento de fl. 19, que é por elas subscrito, e no qual é informado que "a nossa principal atividade é a de trocar moeda e auxiliar nossos clientes em seus investimentos, nós também auxiliamos eles em transferência internacional de salários e, como vocês bem sabem, nós fazemos uma grande quantidade de operações com os seus clientes. Do Brasil nós compramos e vendemos moeda". Neste comunicado estão indicadas as três contas acima referidas.

11. Registre-se que elas seriam sócias de casa de câmbio no Brasil, especificamente da Turist Câmbio, Viagens e Turismo em São Paulo/SP, e que pode estar sendo utilizada para conferir aparência legítima às operações do grupo.

12. Apesar da negativa de Antônio Pires de Almeida de ser o verdadeiro responsável pela Turist e de ser o responsável por contas mantidas no Merchants (fls. 175-178 do apenso), é possível visualizar a sua assinatura nos documentos de fls. 09 e 11 do apenso, datados de 2000 e 2001, e que dizem respeito à abertura e movimentação da conta da Gatex. Também figura como o responsável pela conta da Sorabe S/A em documentos datados de 1999 e

 **JUSTIÇA FEDERAL**                    **131**
SEÇÃO JUDICIÁRIA DO PARANÁ

2003 (fls. 286, 290 e 293 do apenso). Há ainda procuração datada de 2003 e outorgada por Harber Corporation, Gatex Corporation e Sorabe S/A em favor de Antônio Pires de Almeida (fl. 310 do apenso).

13. Além disso, Maria Carolina Nolasco, gerente de contas do Merchants, declarou, em depoimento prestado às autoridades norte-americanas, que Antônio Pires de Almeida seria o titular da conta Gatex e que seria administrada por Roseli (fl. 144 do apenso)

14. Já Paulo Jacintho Sposito seria o contador da Turist, cf. revelado pelo próprio Antônio Pires de Almeida, e ainda figuraria como testemunha nas alterações de contrato social da empresa e nas quais foi indevidamente ocultada a participação de Antônio, o que revela a sua possível participação consciente na fraude.

15. Há, portanto, indícios significativos de crime de evasão de divisas (artigo 22 da Lei n.° 7.492/86), gestão fraudulenta de instituição financeira (artigo 4.° da Lei n.° 7.492/86), de sonegação fiscal (artigo 1.° da Lei n.° 8.137/90) e de quadrilha (artigo 288 do CP), sem excluir a possibilidade do grupo ter enveredado na prática de crimes de lavagem de dinheiro (artigo 1.° da Lei n.° 9.613/98).

16. Considerando a habitualidade delitiva e com grave lesão ao sistema financeiro nacional e a ordem pública como um todo, há ampla justificativa para a tomada de medidas enérgicas, como a prisão provisória e a busca e apreensão.

17. A diligência de busca e apreensão nos endereços conhecidos do grupo poderá resultar na colheita de material probatório ainda mais significativo a respeito das transações de câmbio, com, quiçá, melhor revelação de sua real clientela.

18. Já a prisão provisória mostra-se imprescindível para coibir a interferência dos investigados na colheita da prova e também servirá para momentaneamente coibir a continuidade da prática delitiva, resguardando a ordem pública, bem como para coibir a fuga de pessoas que mantêm recursos expressivos e não-declarados no exterior. A medida encontra expresso amparo no artigo 1.°, I, III, "l" e "o", da Lei n.° 7.960/89. Oportunamente, poderá ser substituída, se for o caso, por prisão preventiva."

Na ocasião, além da busca e bloqueio, foi decretada a prisão provisória de Regina Ruriko Inoue, Roseli Ciotti e Paulo Jacintho Sposito. A mesma medida não foi determinada em relação à Antônio Pires de Almeida por sua elevada idade, o que, contudo, talvez tenha sido um equívoco em vista dos recentes acontecimentos.

Nas petições apresentadas pelo Ministério Público Federal é revelado que o grupo busca o levantamento do bloqueio mantido sobre ativos financeiros nos Estados Unidos, principalmente na conta de nome "Venus" que seria mantida em nome da Kesten Development Corporation no MTB Bank, sucedido pelo Hudson United Bank.

As petições apresentadas aos juízes plantonistas foram deferidas, sendo decretado o bloqueio dos ativos mantidos na conta Venus, esta mantida no MTB Bank, sucedido pelo Hudson Harber, nas contas Harber, Gatex e Sorabe, estas mantidas no Merchants Bank, sucedido pelo Valley National, e ainda

 **JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ
**132**

na conta Tadeland mantida no EAB Bank. Segundo seus ilustres prolatores, as decisões deveriam ser ratificadas por este Juízo.

Resta suficientemente demonstrada a ligação da contas Harber, Gatex e Sorabe com o grupo liderado por Antônio Pires de Almeida, cf. itens 10-14 acima. Quanto às contas Venus e Tadeland, o vínculo é evidenciado pelo fato da Turist Câmbio, Viagens e Turismo Ltda, empresa controlada pelo grupo cf. fundamentação acima, figurar como apelante nos EUA para obter o desbloqueio das contas.

A Turist ou Antônio Pires ou qualquer empresa por ele mantida no Brasil não têm autorização para operar no mercado de câmbio através de contas mantidas no exterior. Todas as operações por ele realizadas e inclusive declaradas (cf. item 10 acima) são ilegais, cf. legislação brasileira, e, por conseguinte, são mantidas à margem da contabilidade oficial de sua empresa e do controle por parte das autoridades públicas brasileiras, o que constitui ambiente propício à lavagem de dinheiro.

Chamam também a atenção detalhes da investigação norte-americana, especialmente o motivo do bloqueio norte-americano, especificamente que o grupo estaria envolvido em lavagem de dinheiro proveniente de crimes de tráfico de drogas. Cf. relato contido na decisão da Corte de Apelação Federal do Terceiro Circuito dos Estados Unidos:

"A ação de sequestro alega que os fundos bloqueados estariam envolvidos em uma conspiração para lavagem de dinheiro de drogas liderada por um cambista sul-americano, Markos Glikas. Glikas foi preso em abril de 1998 e condenado por conspiração para cometer lavagem de dinheiro em março de 1999. Como parte da conspiração, Glikas teria, alegadamente, entregue produto de crime de tráfico para Antônio Pires de Almeida ("Pires"), o proprietário da Turist-Cambio, que iria então lavar o dinheiro através de várias contas intermediárias, finalmente depositando na conta da Kesten no MTB (a conta Venus)"

É interessante notar conexão com outro caso em trâmite perante este Juízo, no qual Alexandre Glikas, filho de Markos Glikas, responde pelo crime de evasão fraudulenta de divisas, por ter depositado cerca de R$ 8.547.083,84 no ano de 1996 (aproximadamente o equivalente em dólar na época) em contas titularizadas por pessoas sem capacidade econômica, os assim denominados "laranjas", para que estas depositassem em contas titularizadas por estrangeiros não-residentes, as contas CC5, para remessa ao exterior (ação penal n.º 2002.7000078930-5). Até pela idade de Alexandre à época, menor de 21 anos, é provável que o numerário de fato pertencesse ao seu pai.

Assim, há, portanto, relevantes indícios da prática de crimes financeiros por Antônio Pires de Almeida e seu grupo, especialmente evasão fraudulenta de divisas (artigo 22 da Lei n.º 7.492/86) , gestão fraudulenta de instituição financeira (artigo 4.º da Lei n.º 7.492/86), de sonegação fiscal (artigo 1.º da Lei n.º 8.137/90) e de quadrilha (artigo 288 do CP), e ainda de que o numerário mantido no exterior seja produto dessas atividades ilícitas, bem como de lavagem de dinheiro.

Certamente, as questões processuais que levaram, à luz da legislação norte-americana, ao desbloqueio não são pertinentes à legislação brasileira. Por outro lado, as autoridades norte-americanas provavelmente desconheciam que Antônio Pires de Almeida, suas empresas e seu grupo não estão



# JUSTIÇA FEDERAL
## SEÇÃO JUDICIÁRIA DO PARANÁ

**133**

autorizados, pela legislação brasileira, a operar no câmbio com contas no exterior, nem de que, por este motivo, suas operações são mantidas, no Brasil, à margem da contabilidade oficial e do controle por parte das autoridades públicas brasileiras.

Assim sendo, ratifico a decisão dos juízes plantonistas, para o fim de decretar, com base nos fundamentos expendidos e ainda no artigo 4.° da Lei n.° 9.613/98, no artigo 240, 132 e 137 do Código de Processo Penal, o bloqueio dos ativos mantidos pelo grupo:

a) na conta Venus (n.° 030101107) mantida no MTB Bank, sucedido pelo Hudson United Bank;

b) na conta Tadeland (n.° #12108) mantida no EAB Bank; e

c) nas contas Harber (n.° 9006556), Gatex (n.° 9008295) e Sorabe (n.° 9005588), mantidas no Merchants Bank, sucedido pelo Valley National.

Comunique-se com urgência ao MPF, enviando cópia autenticada da decisão, que deverá providenciar a efetivação do bloqueio pelo MLAT ou outro meio.

Após, distribua-se, como pcd, por dependência ao processo n.° 2004.7000023171-6. Decreto, por ora e até a efetivação da medida, o sigilo sobre os autos. Anote-se no pólo passivo Antônio Pires de Almeida e também o silêncio.

Curitiba, 13 de dezembro de 2004.

Sergio Fernando Moro
Juiz Federal

**RECEBIMENTO**

Em 13 de 12 de 2004, recebi estes autos. Do que, para constar, lavrei este termo.

# Safeport Investment Corporation
# Acct. No. 9009570

# &

# Harborside Corporation
# Acct. No. 9004008



# FEDERAL JUSTICE
## District Court of Paraná

### CONCLUSION

On 06 of 12 of 2005, I hereby close this proceeding and submit it to the Honorable Federal Judge of the 2nd Federal Criminal Court of Curitiba. I prepared this term to enclose herewith.

Proceeding No. 2005.7000033852-7

1. It refers to the charges filed against João Carlos da Cunha Canto Kneese, Ronaldo Spiess Fernandes Cortez, João Carlos Canto Kneese, Abadião Melhem Bouchabki Neto and Flávio Ulhoa Levy, for the perpetration of crimes set forth in the article 4, 16, 22, sole paragraph of the Law No. 7.492/86, article 1 of the Law 9.613/98 and article 288 of the Criminal Code. In the same brief, Sonia Ulhoa Canto Kneese is charged with the perpetration of the crime set forth in the article 22 of the Law No. 7.492/86.

2. In sum, the charges aim at the financial transaction abroad, which were not declared nor controlled by the public authorities, in accounts maintained at the Merchants Bank.

3. Two of the accounts, pursuant to the charges, were probably in the name of the companies Harborside Corporation, Safeport Investment Corporation, these two offshore companies are located in the Caribbean. There is also the account No. 9200797, named "Magnunn" (name of the account's password) and also the account No. 9901000, nicknamed "Jaguara" (name of the account's password) in the name of João Carlos Kneese and Sônia de Ulhoa Canto Kneese.

4. According to police expert reports made by the Federal Police, the company Haborside allegedly operated, in the period from 03/98 to 10/2002, around forty four million dollars, whereas the account Safeport, in the period from 12/2000 to 06/2002, around two million dollars. There is no data in the records about the definitive transaction referring to the account 9200797, even though there are notes and transactions of this account with others in the amount of almost two million dollars (expert report 1032/05). In addition, there is no registry in the records of a definite transaction of the account No. 9901000, and the charges report a balance of US$ 4,655.70 on 30/05/2002.

5. The group would also operate in Brazil by means of the company Levycam Corretora de Câmbio e Valores Ltda., headquartered in São Paulo.

6. Still in accordance with the initial brief, the defendants operated heavily in the parallel exchange market, and used the accounts abroad and companies in Brazil to carry out illegal financial operations, violating the Central Bank of Brazil control system and concealing assets belonging to their own and third parties from the Internal Revenue System, with the perpetration of financial crimes.

7. As they concealed and disguised the origin, the ownership, location or movement of assets belonging to their own and third parties in accounts abroad,

sent there or brought here, they perpetrated crime of money laundering, having as predicate crimes violations to the national financial system.

8. The Federal Public Prosecution also informs that the two first accounts had their balances frozen in the United States by the US authorities in the criminal action 04-CR-617, *United States v. Maria Carolina Nolasco* (the manager at the Merchants Bank responsible for the accounts), under way at the New Jersey Federal Court. Around US$ 285,945.16 and US$ 84,260.01 respectively, would be frozen and the defendants are trying to get these funds back.

9. In the present procedural moment, it is to be verified whether there is evidence of materiality and the identity of the perpetrator to support the charges.

10. In this perspective there are enough elements to support the charges.

11. In the first place, it is important to point out that the documentation referring to the accounts and in which the defendants are pointed out as comptrollers.

12. So, for instance:

a) the record of the account in the name of Harborside, a company incorporated in the British Virgin Islands, is signed by João Carlos da Cunha Canto Kneese and Ronaldo Spiess Fernandes Cortez, with the exclusion of the latter from February 1998 on;

b) the record of the account in the name of Safeport, a company incorporated in the British Virgin Islands, is signed by João Carlos da Cunha Canto Kneese and Ronaldo Spiess Fernandes Cortez, with the exclusion of the latter from February 1998 on;

b) a letter sent to US authorities by the Harborside and Safeport declares that João Carlos da Cunha Canto Kneese is the person who would oversee the daily activities of the account;

c) statements and documents of the account 92.00797 (Magnunn) which point out as the owners of the account, at least from 12/97 on, Ronaldo Spiess Cortez and João Carlos da Cunha Canto Kneese; and

d) statements and documents of the account 9901000 which point out João Carlos da Cunha Canto Kneese and Sonia de Ulhoa Canto Kneese and, João Carlos da Cunha Canto Kneese with powers-of-attorney; and

e) bank statements relating to exchange operations registered in the Central Bank pointing out the accounts Safeport and Harborside for the payment/receiving abroad and the company Levycam as "exchange broker" involved in the operations.

13. In addition, it can be singled out from the documents letters sent in the name of Harborside and Safeport requesting the release of the funds and addressed to the US authorities and mentioning that their exchange transactions were approved by the Central Bank of Brazil, which is questionable. From the Safeport letter it is possible to infer the profile of the company's customers:

"Most of the petitioner's [Safeport] customers are Brazilian exporters, who need the transactions to be paid in dollars, owing to the fact that they are international transactions and the dollar is the international currency.

Moreover, the petitioners help their foreign customers in the acquisition of fungible or immovable assets in Brazil. These customers, by way of the petitioners, exchange their foreign currency for Brazilian currency so that the transactions can be closed in Brazil. In Brazil, no transaction in foreign currency is allowed and individuals and companies do not have in Brazil permission to keep accounts in foreign currency."

14. In another letter, there is evidence of their acts in the parallel exchange market and some contradiction with the previous statement:

"Harborside Cor and Safeport never interacted with the Central Bank of Brazil. However, Harborside and Safeport received funds from some of their customers from Brazilian banks and banks from other countries."

15. So, acts of this sort, of exchanging foreign currency for reais, and also of supporting Brazilian exporters, is far beyond, in principle, the activities per se of a securities and currency exchange office. The fact that the exporters or importers resort to the exchange black market is usually associated with the perpetration of undercharging exports or imports, in detriment to the Brazilian foreign exchange credits.

16. On the other hand, the company Levy Cam Corretora de Câmbio e Valores Ltda., in its income tax declarations to the Internal Revenue Service does not declare to have assets or operations abroad, neither profits nor losses with its activities overseas.

17. The referred to company has as managing-partners the defendants Flavio Ulhoa Levy, João Carlos da Cunha Canto Kneese and Abidao Mlhem Bouchabki Neto.

18. None of them declared to be the owner of the funds maintained abroad in their revenue declarations. João Carlos da Cunha Canto Kneese submitted correcting declarations in 09/2004, soon after the so-called Operation Farol da Colina (Beacon Hill), declaring to be the owner of 100% of the shares of the companies Harborside and Safeport, both of which were estimated in R$ 3.150,00, but without any reference to the assets of this one.

19. There is also registry in the records of the declaration provided by the manager of the accounts abroad, in the sense that she had dealt with the accounts with Flavio Ulhoa Levy, João Carlos da Cunha Canto Kneese and Ronaldo Spiess Fernandes Cortez.

20. Note that the foreign exchange regime in Brazil allows for the transfer of money abroad either in the form of payments or in the form of investments. However, as it is reasonable in any liberal-democratic regime, there is a control system by the monetary authority, especially the requirement that the transactions and the investments at the Central Bank be registered and carried out by financial institutions duly registered (article 10, X, "d" of the Law No. 4.595/64; article 23 of the Law No. 4.131/62; and article 1 of the Law No. 5.601/70). Even the recent liberalization of the foreign exchange regime by means of the Central Bank - Bacen Resolutions No. 3.265 and 3.266, dated 04/03/2005, did not alter this fundamental situation, The activity carried out by the defendant is seemingly part of the foreign exchange black market Such black market is likely controlled by "doleiros" who would carry out exchange operations outside the official system,

unofficially buying and selling either in cash or by means a clearance system, with the delivery of dollars by way of deposits in accounts abroad in compensation for the payment of reais in Brazil or vice-versa. This clearance system is vulgarly known in Brazil as "dólar-cabo" (wire transfers) and "dollar discounting" abroad. (cf. denomination arising from RICHARDS, James R. *Transnational criminal organizations, cyber crime, and money laundering.* CRC Press, 1999, pg. 57.) The system is similar, due to its informal nature and because it is operated partly outside the formal financial system, to what has been named internationally as "hawala system". These operations, besides illegal, are maintained outside the official accounting or any other kind of control on the part of public authorities, constituting an environment favorable to tax evasion, illicit transfer of funds abroad and also money laundering. Hence the deliberate purpose of these operations, in addition to a likely cut in costs, is the carrying out of transactions outside any public control.

21. Certainly if they are legal and regular, there is nothing to prevent that it be shown to this Court by means of the thorough description of the transactions and the identification of their customers, as well as the submission of the balance of the accounts.

22. Of everything explained, it is to be concluded that there is enough evidence to support the charges that the defendants, by means of their companies in Brazil and accounts not-declared abroad, dedicated, in a businesslike and habitual manner, to carry out illegal financial crimes, including exchange operations, which can constitute the perpetration of the financial crimes described in the charges. As for the crime of money laundering, considering that the funds maintained abroad in their own names or in the name of third parties were proceeds of financial crimes and that the methods used by the defendants consist in the concealing or disguise of the nature and origin, there is enough grounds for them to be charged with the crime of money laundering. As for the crime of association for crime, the complex connections among the defendants constitutes evidence of association for the perpetration of crimes.

23. Before all the facts described, noting that this judgment is based on what has been learned from a summary of the proceeding, I accept the charges against João Carlos da Cunha Canto Kneese, Ronaldo Spiess Fernandes Cortez, João Carlos Canto Kneese, Abidão Melhem Bouchabki Neto and Flávio Ulhoa Levy, as proposed by the prosecution.

24. Based on the same evidence and considering that the balance in the accounts owned by the Harborside Corporation (9004008) and Safeport Investment Corporation (9009570) and maintained at the Merchants Bank, currently Valley National Bank, in the United States constitute proceeds or profits of crime described in the charges, particularly of the illegal financial activity of the defendants, as well as likely object of money laundering of the proceeds or profits of the financial crimes perpetrated by them or their customers, I hereby order the freezing or the restraint of these funds, which are subject to the penalty of forfeiture pursuant to the article 91 of the Criminal Code. The order involves request from the United States authorities, via MLAT or legal assistance, for the freezing of the balance of the accounts abroad as well as judicial order under the penalty of contumacy to the defendants so that they stop operating the two accounts and dispose of the funds in these accounts personally or by means of powers of attorney. It is up to the Federal Public Prosecution to arrange the transmission, by means of a MLAT or legal assistance, of the request for mutual legal assistance.

25. Based on the same grounds and considering what has been requested from the Federal Public Prosecution, I order the lift of bank and tax secrecy of the defendants João Carlos da Cunha Canto Kneese, Individual Taxpayer Registry – CPF No. 107.088.658-01, Ronaldo Spiess Fernandes Cortez CPF No. 123.869.488-70, João Carlos Canto Kneese CPF No. 002.899.498-15, Abidão Melhem Bouchabki Neto CPF No. 028.344.418-55 and Flávio Ulhoa Levy CPF 004.360.468-49, and the companies LevyCam Corretora de Câmbio e Valores Ltda., National Taxpayer's Registry No. 50.579.044/0001-96.

26. The Federal Public Prosecution must, by way of MLAT or legal assistance, request from the United States authorities the formal transmission of the account-opening documentation and others available concerning the accounts 9901000 (Jaguara) and 9200797 (Magnunn), including the statements from the opening to the closing of the account, which is to be arranged by the Federal Public Prosecution by means of a MLAT or legal assistance.

27. The secretariat is to report to the Central Bank of Brazil (Bacen) in Curitiba  and request: a) information about the existence at the Bacen of a statement of maintenance of assets abroad by the defendants and by the company LevyCam Corretora de Câmbio e Valores Ltda.; b) information whether the company LevyCam is authorized to operate exchange, and if so, how, and the monthly total volume of operations from 06/96 to 11/2005; c) records of the operations of remittance to or receiving of funds from overseas in the Sisbacen, including relating to import or export payments which had in the credited-abroad field the names "Safeport", "Harborside", "Suntrade" or also "Safe Port" or "Harbor Side" and "Sun Trade" in the period from 01/2000 to 11/2005. Deadline: 60 days.

28. The secretariat is to report to the Securities and Exchange Commission  and request information about the existence of legal authorization for the company LevyCam Corretora de Câmbio e Valores Ltda. to operate as an exchange office and, if so, the provisions of such authorization, and also as information about the record of likely inspection procedures relating to it, with the transmission of the result in case it is positive. Deadline: 30 days.

29. The secretariat is to report to COAF – Council for Financial Activities Control and request information about likely records in their databanks concerning the defendants and the company LevyCam Corretora de Câmbio e Valores Ltda. Deadline: 30 days.

30. As for the other requirements, I shall decide at the appropriate time.

31. I designate the date of 20/01/2006 at 15:30 for the interrogation of the defendants.

32. Serve and summon the defendants concerning the date of the hearing and the entire content of this decision, including the restraint of the balance of the accounts Harborside and Safeport ordered by the Court.

33. Inform the Federal Public Prosecution of this decision by means of  a legalized copy.

34. Necessary communications and notes.

35. Certify and request their criminal records in the state of Paraná and in São Paulo.

36. Have the enclosures to the charges organized by numbering them. Get a copy of the CD in the big envelope in two enclosures, filing the original and leaving a copy available for consultation and copy by the defendants.

Curitiba, December 9th 2005

Sergio Fernando Moro
Federal Judge



**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ

**CONCLUSÃO**
Em 06 de 12 de 2005, faço estes autos conclusos ao
MM. Juiz Federal da 2.ª Vara Criminal Federal de Curitiba.
Para constar, lavrei este termo.

Processo n.º 2005.7000033852-7

1. Trata-se de denúncia proposta contra João Carlos da
Cunha Canto Kneese, Ronaldo Spiess Fernandes Cortez, João Carlos Canto
Kneese, Abidão Melhem Bouchabki Neto e Flávio Ulhoa Levy, pela prática dos
crimes previstos nos artigos 4.º, 16, 22, parágrafo único, da Lei n.º 7.492/86, artigo
1.º da Lei n.º 9.613/98 e artigo 288 do CP. Na mesma peça, é atribuída à Sonia
Ulhoa Canto Kneese a prática do crime do artigo. 22 da Lei n.º 7.492/86.

2. Em síntese, a denúncia tem por objeto a movimentação
financeira no exterior, sem qualquer declaração ou controle pelas autoridades
públicas, de contas mantidas no Merchants Bank.

3. Duas das contas, segundo a denúncia, estariam em
nome das empresas Harborside Corporation, Safeport Investment Corporation,
estas duas offshores com sede no Caribe. Haveria ainda a conta de n.º 9200797,
com apelido de "Magnunn" (nome da senha de movimentação da conta) e ainda
uma conta de n.º 9901000 em nome de João Carlos Kneese e Sônia de Ulhoa
Canto Kneese e com o apelido de "Jaguara" (nome da senha de movimentação da
conta).

4. Segundo laudos periciais realizados pela Polícia
Federal a conta Harborside teria movimentado no período de 03/98 a 10/2002 cerca
de quarenta e quatro milhões de dólares, enquanto a conta Safeport, no período de
12/2000 a 06/2002, cerca de dois milhões de dólares. Não há nos autos registro da
movimentação definitiva da conta 9200797, embora há apontamentos e transações
desta conta com outras de quase dois milhões de dólares (laudo 1032/05). Também
não há nos autos registro da movimentação definitiva da conta de n.º 9901000,
reportando-se a denúncia a um saldo de US$ 4.655,70 em 31/05/2002.

5. O grupo ainda operaria no Brasil através da empresa
Levycam Corretora de Câmbio e Valores Ltda., com sede em São Paulo.

6. Também segundo a peça inicial, os acusados seriam
operadores no mercado de câmbio paralelo, com forte atuação, e utilizariam as
contas no exterior e empresas no Brasil para a realização de operações financeiras
ilegais, com a burla de sistema de controle do Banco Central do Brasil e
ocultamento dos ativos próprios e de terceiros da Receita Federal, com a prática de
crimes financeiros.

7. Ao ocultarem e dissimularem a origem, a propriedade,
a localização ou movimentação de valores próprios e de terceiros mantidos em
contas no exterior, para lá remetidos ou de lá trazidos, teriam praticado crime de
lavagem de dinheiro, tendo como antecedentes crimes contra o sistema financeiro
nacional.

8. Informa ainda o MPF que as duas primeiras contas
tiveram os seus saldos bloqueados nos Estados Unidos pelas próprias autoridades
norte-americanas na ação criminal 04-CR-617, *United States v. Maria Carolina
Nolasco* (a gerente do Merchants Bank responsável pelas contas), em trâmite na



**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ

Ulhoa Levy, CPF 004.360.468-49, e da empresas LevyCam Corretora de Câmbio e Valores Ltda., CNPJ 50.579.044/0001-96,

26. Deve o MPF, através do MLAT ou cooperação direta, solicitar às autoridades norte-americanas o encaminhamento formal dos documentos de abertura e outros disponíveis a respeito das contas 9901000 (Jaguara) e 9200797 (Magnunn), incluindo os extratos da abertura ao encerramento, o que deve ser providenciado pelo MPF através do MLAT ou cooperação direta.

27. Oficie a Secretaria ao Bacen, Curitiba, solicitando: a) informação sobre a existência junto ao Bacen de declaração da manutenção de ativos no exterior pelos acusados e pela empresa LevyCam Corretora de Câmbio e Valores Ltda.; b) informações se a empresa LevyCam está autorizada a operar com câmbio, se positivo de que forma, e a totalização, mês a mês, de 06/96 a 11/2005, do volume de operações; c) registros de operações de remessas/recebimentos internacionais no Sisbacen pela mesma empresa e no mesmo período; d) registros de operações de câmbio no Sisbacen, inclusive relativo a pagamentos de importação ou exportação que tenham no campo creditado no exterior os nomes "Safeport", "Harborside", "Suntrade" ou ainda "Safe Port" ou "Harbor Side" e 'Sun Trade" no período de 01/2000 a 11/2005. Prazo de 60 dias.

28. Oficie a Secretaria à Comissão de Valores Mobiliários solicitando informações sobre a existência de autorização legal para que a a empresa LevyCam Corretora de Câmbio e Valores Ltda., opere como corretora e, em caso positivo, os termos de tal autorização, bem como informação acerca do registro de eventuais procedimentos de fiscalização em relação a ela, com o envio do resultado se positivo. Prazo de 30 dias.

29. Oficie a Secretaria ao COAF - Conselho de Controle sobre Atitividades Financeiras solicitando informações sobre eventuais registros em seus bancos de dados acerca dos acusados e da empresa LevyCam Corretora de Câmbio e Valores Ltda. Prazo de 30 dias.

30. Quanto aos demais requerimentos, decidirei oportunamente.

31. Designo a data de 20/01/2006, às 15:30 para o interrogatório dos acusados.

32. Citem-se e intimem-se os acusados, da data da audiência e do inteiro teor desta decisão, inclusive sobre o bloqueio do saldo das contas Harborside e Safeport determinada pelo Juízo.

33. Ciência desta decisão por cópia autenticada ao MPF.

34. Comunicações e anotações necessárias.

35. Certifiquem-se e solicitem-se seus antecedentes no Estado do Paraná e em São Paulo.

36.Organizem-se os apensos à denúncia, numerando-os. Extraia-se cópia do CD constante no envelope grande em dos apensos, arquivando o original e deixando a cópia disponível para consulta e cópia pelos acusados.

Curitiba, 09 de dezembro de 2005.

Sergio Fernando Moro
Juiz Federal

# Mabon Corporation
# Acct. No. 9007663

# FEDERAL COURT
JURISDICTION OF PARANÁ

**CONCLUSION**

On December 06, 2006, I give this case to the Honorable Federal Judge of the 2nd Federal Criminal Court of Curitiba.
For the record, I drew up this entry.

Case number 2005.7000034012-1

1. It is the accusation formulated by the Federal Public Prosecutor's Office against Elcio Martins Areia, Antônio Gonçalves Carneiro and Maria Izilda Bernardes Duarte Silva, for having performed the crimes established in articles 4, 16, 22, sole paragraph, of Law number 7.492/86, article 1 of Law number 9.613/88 and article 299 of the Penal Code.

2. In summary, the matter in issue in the accusation is the financial movement abroad, without any statement or control from the public authorities, of an account on behalf of the off-shore Company Mabon Corporation, headquartered in the British Virgin Islands, and held at the Merchants Bank in New York

3. According to expert report performed by the Federal Police the Mabon account would have had activities of approximately forty-six million dollars in the period from 01/2000 to 12/2002.

4. The Group would also have activities in Brazil through the Company called New Sands Câmbio, Viagens e Turismo Ltda., registered with the CNPJ/MF Corporate Taxpayer Roll under the number 73.799.561/0001-76, with headquarters in Rio de Janeiro

5. Also according to the complaint, the charged would be black market traders, with strong actuation, and they would use the foreign accounts and companies in Brazil to perform illegal financial operations, deceiving the control systems of the Brazilian Central bank and concealing their own or third parties' assets from the Federal Revenue, performing financial crimes.

6. When concealing and dissimulating the provenance, ownership, location or handling or their own or third parties' amounts held in accounts abroad, sent there or brought whence, they would have practiced the crime of money laundering, having crimes against the National financial system as precedings.

7. The Federal Public Prosecutor's Office also informs that the account had its balance, US$ 774,013.88, frozen in the United States by the North American authorities themselves in the criminal suit number 04-CR-617, *United States v. Maria Carolina Nolasco (the manager of the Merchants Bank responsible for the accounts), in path in procedural progress at the Federal Court of New Jersey.*

8. At the present procedural moment, all that has to be done is to verify if there are indications enough of materiality and authorship to authorize the accusation.

9. In that perspective, there are elements enough to authorize the accusation.

10 It has to be pointed out that the bank records from the Mabon account that are signed by the first two charged (pages 278-279 of appendant I, vol. II), power of attorney received by both and in which they are appointed de facto representatives of the Company (page 324 of appendant I, vol. II). Both are also formally present in the articles of Association of the New Sands Company until 2001. Afterwards, Elcio was replaced by Maria  Izilda.  As of her, although she is not listed as responsible for the



# FEDERAL COURT

JURISDICTION OF PARANÁ

activity of the account abroad, she is indicated as the manager of the New Sands Company which, according to the Public Prosecutor's Office, was used as the base for the illegal operations in Brazil.

11. There is also a sworn statement, signed in 01/2005 by the charge Antonio in which he presents himself, before the US consul in Brazil, as the de facto agent of Mabon (page 17 of appendant II, vol. I).

12. On the other hand, the expressive activity of the account, as well as the identification of several transactions with offshore companies controlled by other alleged Brazilian dollar dealers (such as Milano, Bradner, Tigrus), constitute indications of activities in the parallel exchange market. Besides, among the documents, a petition signed by the lawyer indicated by Mabon stands out, in which it is stated that "the petitioner is in the business of providing its customers services of foreign currency exchange in a global base for use in a wide variety of business and personal International transactions " (page 15 of appendant I, vol. I).

13. Now, this type of activity - foreign currency exchange for Real through an account held abroad, greatly deviates, in principle, from the activities that are proper to a travel and exchange agency. Even the exchange activity of travel agencies is limited to the market of floating rates, with exchange of foreign currency at the counter, and not the use of accounts abroad.

14. On the other hand, the charge, in their tax return forms to the Federal Revenue did not register having assets or operations abroad, nor profits or losses resulting from activities abroad.

15. It has to be noticed that the exchange system in Brazil allows the remittance of money abroad, whether as payments, or as investments. However, as it is reasonable in any liberal-democratic system, there is a control system on the part of the monetary authority, especially the demand for recording the transactions and investments at the Central bank, as well as that they are performed by duly accredited financial institutions (article 10, X, "d" of Law number 4.595/64; article 23 of Law number 4.131/62; and article 1 of Law number 5.601/70). Even the recent flexibilization of the exchange system with Bacen's Resolutions numbers 3.265 and 3.266, from March 4, 2005, did not alter this basic structure. The activity carried out by the accused party seems to be part of the parallel exchange system. Such parallel system would be controlled by "dollar dealers" that would perform exchange transactions outside the official system, with unauthorized purchase and sale of dollars, whether in cash or through the clearance system, with the delivery of dollars through deposit in foreign bank accounts in return to payment in Real in Brazil or vice-versa. Such clearance system is commonly called "dollar cable" in Brazil and "dollar discounting" abroad (as names extracted from RICHARDS, James R.Transnational criminal organizations, cybercime, and money Laundering. CRC Press, 1999, p. 57). It also bears resemblance, due to its informality and partially being outside the formal financial system, with what has been internationally called the "hawala system". Such operations, besides illegal, are kept outside the official accounting or any control on the part of the public authorities, constituting a favorable environment for tax dodging, foreign currency drain, and also money laundering. In fact, the deliberate purpose of such operations,



# FEDERAL COURT
## JURISDICTION OF PARANÁ

besides any final cost reduction, is carrying out transactions away from any public control.

16. Of course if they are legal and regular, nothing shall prevent such from being demonstrated to this Court through the meticulous description of the transactions and the identification of their customers, as well as the presentation of the bookkeeping of the accounts.

17. From all that has been exposed, one should conclude that there is enough evidence to authorize the accusation that the accused parties, through their Company in Brazil and their undeclared foreign account, dedicated themselves, in a business-like and habitual way, to practice illegal financial operations, including exchange ones, which may characterize the practice of the financial crimes described in the complaint. As of the crime of money laundering, whereas taking into considering that the amounts held abroad on their own behalf and on behalf of third parties were the proceeds of financial crimes and that the actions performed by the accused parties implicate in the concealment or dissimulation of their kind and provenance, there is equally enough grounds for the accusation for crime of money laundering.

18. Considering everything that has been exposed, bearing in mind that judgement is made here based on the yet summary cognition of the case, process, I receive the accusation against Elcio Martins Areia, Antônio Gonçalves Carneiro and Maria Izilda Bernardes Duarte Silva.

19. Based on the same evidence and considering that the existing balance on the account on behalf of Mabon Corporation and held at the Merchants Bank, currently Valley National Bank, in the United States, constitute the proceedings or gains from crimes described in the accusation, especially of the illegal financial activity of the parties, as well as the possible object of money laundering of the proceedings or gains of the financial crimes practiced by them or their customers, I also decree the blockade or the freezing of those assets, those being subject to the sentence of loss as established by article 91 of the Penal Code. The determination involves the request to the North American authorities, through MLAT or direct cooperation, for the blockade of the balance of the accounts abroad, as well as the determination, under penalty of disobedience, that the very accused parties refrain from personally or through attorneys-in-fact make withdrawals from the account and use the amounts held in them. The Federal Public Prosecutor's Office is to provide for the formal arrangement, through MLAT or direct cooperation, of the request of International legal cooperation.

20. Based on the same ground and bearing in mind what is requested by the Public Prosecutor's Office, I proclaim the breach of bank confidentiality of the charged Elcio Martins Areia, registered with the Individual Taxpayers' Registry with the Ministry of Finance – CPF – under the number 093.278.007-53, Antônio Gonçalves Carneiro, registered with the Individual Taxpayers' Registry with the Ministry of Finance – CPF – under the number 037.521.787-87, and Maria Izilda Bernardes Duarte Silva, registered with the Individual Taxpayers' Registry with the Ministry of Finance – CPF – under the number 604.673.637-49, and of the Company New Sands Câmbio, Viagens e Turismo Ltda., registered with the CNPJ/MF Corporate Taxpayer Roll under the number 73.799.561/0001-76.

21. Bacen's Office in Curitiba shall be sent an official communication requesting: a) information about the existence, at Bacen, of any statement for the maintenance of assets abroad from the accused parties and from the Company New Sands Câmbio, Viagens e Turismo Ltda., registered with the CNPJ/MF Corporate

Taxpayer Roll under the number 73.799.561/0001-76; b) information if the Company New Sands Câmbio, Viagens e Turismo Ltda. is authorized to perform exchange operation, and if positive, in which way, and the monthly totals, from 01/2000 to 11/2005, of the volume of the operations; c) records of the international remittance/receipt operations at Sisbacen from the same Company and during the same period; d) records of exchange transactions at Sisbacen, including those referring to importation or exportation payments

# ⌐EDERAL COURT
## JURISDICTION OF PARANÁ

that have, in the field "credited abroad", the names "Mabon" or "Mabor Corporation" in the period from 01/2000 to 11/2005. Within 60 days.

22.    The Office of COAF – Conselho de Controle sobre Atividades Financeiras (Council of Control on Financial Activities) shall be sent an official communication requesting information about any records in its databases concerning the charged and of the Company New Sands Câmbio, Viagens e Turismo Ltda., registered with the CNPJ/MF Corporate Taxpayer Roll under the number 73.799.561/0001-76.

23.    The Bureau of the Federal Revenue Office of Rio de Janeiro shall be sent an official communication requesting the sending of copies of the last five income tax returns of the New Sands Câmbio, Viagens e Turismo Ltda. Company.

24.    Considering that there are indications that the Company New Sands Câmbio, Viagens e Turismo Ltda., registered with the CNPJ/MF Corporate Taxpayer Roll under the number 73.799.561/0001-76, has been used to cover up illegal activities of the group, I proclaim the freezing of its accounts, which shall be done by Bacenjud on this date.

25.    I appoint the date of March 08, 2006, at 3:00 p.m. for the examination of the charged.

26.    The charged shall be notified and summoned, of the date of the hearing and of all the contents of this decision, including the blockade of the balance of the Mabon account ordered by the Court.

27. Acknowledgement of this decision by copy authenticated to the Federal Public Prosecutor's Office.

28. Being timely, the already constituted defenders of Antônio Gonçalves Carneiro shall be summoned by report.

29. Necessary communications and registrations.

30. Have them certified and be requested their records in the States of Paraná and Rio de Janeiro.

31. Register, at last, and only for the sake of argumentation, that the competence of this Court over the case results from its connection with the so-called "Caso Banestado" (Banestado Case), the Merchants account having been found through the tracking of amounts evaded from Foz do Iguaçu, which was determined in the investigation number 2003.7000030333-4 in procedural progress at this Court. Besides, the accusation relates to the crime of money laundering having as their precedings the financial crimes performed by other dollar dealers and that is matter in issue in other criminal cases or investigations in procedural progress in this Court. This way, for example, the accounts controlled by the accused parties would have had transactions with accounts on behalf of other off-shores companies and which are matter in issue of investigation in other cases at this Court (e.g.: Tigrus, case number 2005.7000034211-7). Between the crime of money laundering and the previous crime there is an evident procedural connection in the terms of article 76, II and III, of the Code of Criminal Procedure. There is precedent in this very sense in the recourse instance (HC 2005.0401047806-0/PR). Besides, in the activities of the account, there are records of transactions made with people who are domiciled in Paraná.

Curitiba, January 23, 2005.

Sergio Fernando Moro

Federal Judge

## RECEIPT
On January 23, 2006, I received these records. Of which, for the records, I drew up this entry.





**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ

**CONCLUSÃO**

Em 06 de 12 de 2006, faço estes autos conclusos ao MM. Juiz Federal da 2.ª Vara Criminal Federal de Curitiba. Para constar, lavrei este termo.

Processo n.º 2005.7000034012-1

1. Trata-se de denúncia formulada pelo MPF contra Elcio Martins Areia, Antônio Gonçalves Carneiro e Maria Izilda Bernardes Duarte Silva, pela prática dos crimes previstos nos artigos 4.º, 16, 22, parágrafo único, da Lei n.º 7.492/86, artigo 1.º da Lei n.º 9.613/98 e artigo 299 do CP.

2. Em síntese, a denúncia tem por objeto a movimentação financeira no exterior, sem qualquer declaração ou controle pelas autoridades públicas, de conta em nome da off-shore Mabon Corporation, com sede nas Ilhas Virgens Britânica, e mantida no Merchants Bank de Nova York.

3. Segundo laudo pericial realizado pela Polícia Federal a conta Mabon teria movimentado no período de 01/2000 a 12/2002, cerca de quarenta e seis milhões de dólares.

4. O grupo ainda operaria no Brasil através da empresa New Sands Câmbio, Viagens e Turismo Ltda., CNPJ 73.799.561/0001-76, com sede no Rio de Janeiro.

5. Também segundo a peça inicial, os acusados seriam operadores no mercado de câmbio paralelo, com forte atuação, e utilizariam as contas no exterior e empresas no Brasil para a realização de operações financeiras ilegais, com a burla de sistema de controle do Banco Central do Brasil e ocultamento dos ativos próprios e de terceiros da Receita Federal, com a prática de crimes financeiros.

6. Ao ocultarem e dissimularem a origem, a propriedade, a localização ou movimentação de valores próprios e de terceiros mantidos em contas no exterior, para lá remetidos ou de lá trazidos, teriam praticado crime de lavagem de dinheiro, tendo como antecedentes crimes contra o sistema financeiro nacional.

7. Informa ainda o MPF que a conta teve o seu saldo, de US$ 774.013,88, bloqueado nos Estados Unidos pelas próprias autoridades norte-americanas na ação criminal 04-CR-617, *United States v. Maria Carolina Nolasco* (a gerente do Merchants Bank responsável pelas contas), em trâmite na Corte Federal de Nova Jersey.

8. No presente momento processual, cumpre apenas verificar se há indícios suficientes de materialidade e autoria para amparar a denúncia.

9. Nessa perspectiva, há elementos suficientes a amparar a denúncia.

10. Cumpre destacar os cadastros bancários da conta Mabon que são assinados pelos dois primeiros acusados (fls. 278-279 do apenso I, vol. II), procuração por ambos recebida e na qual são nomeados representantes de fato da empresa (fl. 324 do apenso I, vol. II). Ambos ainda figuraram formalmente no contrato social da empresa New Sands até 2001. Depois Elcio foi substituído por Maria Izilda. Quanto a esta, embora não figure como responsável pela





**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ

movimentação da conta no exterior, é apontada como gerente da empresa New Sands que, segundo o MPF, era utilizada como base das operações ilegais no Brasil.

11. Há ainda declaração juramentada subscrita em 01/2005, pelo acusado Antônio na qual se apresenta, perante o cônsul norte-americano no Brasil, como representante de fato da Mabon (fl. 17 do apenso II, vol. I).

12. Por outro lado, a expressiva movimentação da conta, bem como a identificação de diversas transações com off-shores controladas por outros supostos doleiros brasileiros (v.g.: Milano, Bradner, Tigrus), constituem indícios de operação no mercado de câmbio paralelo. Além disso, entre os documentos, destaca-se petição subscrita por advogada nomeada pela Mabon no qual se afirma que "a peticionária está no negócio de providenciar a seus clientes serviços de troca de moeda estrangeira em uma base global para uso em uma ampla variedade de transações de negócio e pessoais internacionais" (fl. 15 do apenso I, vol. I).

13. Ora, atuação da espécie, de troca de moeda estrangeira por reais através de conta mantia no exterior, refoge, em princípio, em muito das atividades próprias de agência de turismo e câmbio. Mesmo a atividade cambial de agências de turismo restringe-se ao mercado de taxas flutuante, com troca de moeda estrangeira em balcão, e não a utilização de conta no exterior.

14. Por outro lado, os acusadso, em suas declarações de rendimento á Receita Federal, não declaram possuir ativos ou operações no exterior, nem lucros ou perdas auferidas com atividades no exterior.

15. Registre-se que o regime cambial existente no Brasil permite a remessa de dinheiro ao exterior seja na forma de pagamentos, seja na forma de investimentos. Como, contudo, é razoável em qualquer regime liberal-democrático, existe um sistema de controle por parte da autoridade monetária, especialmente a exigência de registro das transações e investimentos junto ao Banco Central, bem como que elas sejam realizadas por instituições financeiras devidamente credenciadas (artigo 10, X, "d" da Lei n.º 4.595/64; artigo 23 da Lei n.º 4.131/62; e artigo 1.º da Lei n.º 5.601/70). Mesmo a recente flexibilização do regime cambial com as Resoluções n.os 3.265 e 3.266, de 04/03/2005, do Bacen, não alterou este quadro fundamental. A atividade desenvolvida pelos acusados parece fazer parte do sistema paralelo de câmbio. Tal sistema paralelo seria controlado por "doleiros" que realizariam operações de câmbio à margem do sistema oficial, com compra e venda de dólares não-autorizada, seja em espécie, seja através de sistema de compensação, com entrega de dólares através de depósito em conta no exterior em contrapartida a pagamento de reais no Brasil ou vice-versa. Tal sistema de compensação é denominado vulgarmente no Brasil de "dólar cabo" e de "dollar discounting" no exterior (cf. denominação extraída de RICHARDS, James R. *Transnational criminal organizations, cybercime, and money laundering.* CRC Press, 1999, p. 57.). Ainda guarda semelhanças, pela sua informalidade e por transitar em parte fora do sistema financeiro formal, com o que vem sendo denominado internacionalmente de "hawala system". Tais operações, além de ilegais, são mantidas à margem da contabilidade oficial ou de qualquer controle por parte das autoridades públicas, constituindo ambiente propício à sonegação fiscal, evasão de divisas e ainda lavagem de dinheiro. Aliás, o propósito deliberado de tais operações,

**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ

além de eventual redução de custos, é a realização de transações à margem de qualquer controle público.

16. Por certo, se forem legais e regulares, nada impede que isso demonstrado a este Juízo mediante a descrição minuciosa das transações e identificação de seus clientes, bem como a apresentação da contabilidade das contas

17. De todo o exposto, é de se concluir que há prova suficiente para amparar a denúncia de que os acusados, através de sua empresa no Brasil e conta não-declarada no exterior, dedicavam-se, de forma empresarial e habitualmente, a praticar operações financeiras ilegais, inclusive cambiais, o que pode configurar a prática dos crimes financeiros narrados na inicial. Quanto ao crime de lavagem de dinheiro, considerando que os valores mantidos no exterior em nome próprio e de terceiros eram produto de crimes financeiros e que os expedientes adotados pelos acusados implicam na ocultação ou dissimulação de sua natureza e origem, há igualmente suficiente base para a acusação por crime de lavagem de dinheiro.

18. Ante todo o exposto, lembrando que se faz aqui juízo com base em cognição ainda sumária do processo, recebo a denúncia contra Elcio Martins Areia, Antônio Gonçalves Carneiro e Maria Izilda Bernardes Duarte Silva.

19. Com base nos mesmas provas e tendo em vista que o saldo existente na conta titularizada pela Mabon Corporation e mantida no Merchants Bank, atualmente Valley National Bank, nos Estados Unidos constitui produto ou provento dos crimes narrados na denúncia, especialmente da atividade financeira ilegal dos acusados, bem como possível objeto de lavagem de dinheiro do produto ou provento dos crimes financeiros por eles ou por seus clientes praticados, decreto igualmente o bloqueio ou a indisponbilidade destes ativos, estando eles sujeito à pena de perdimento na forma do artigo 91 do Código Penal. A determinação envolve solicitação às autoridades norte-americanas, via MLAT ou cooperação direta, para o bloqueio do saldo das conta no exterior, bem como determinação judicial, sob pena de desobediência, aos próprios acusados para que se abstenham de, pessoalmente ou por procuradores, de movimentar a conta e dispor das quantias nela constante. **Cumpre ao MPF** providenciar a formalização, via MLAT ou cooperação direta, da solicitação de cooperação judiciária internacional.

20. Com base nos mesmos fundamentos e tendo em vista o requerido pelo MPF, decreto a quebra do sigilo bancário e fiscal dos acusados Elcio Martins Areia, CPF 093.278.007-53, Antônio Gonçalves Carneiro, CPF 037.521.787-87, e Maria Izilda Bernardes Duarte Silva, CPF 604.673.637-49, e da empresa New Sands Câmbio, Viagens e Turismo Ltda., CNPJ 73.799.561/0001-76.

21. Oficie a Secretaria ao Bacen, Curitiba, solicitando: a) informação sobre a existência junto ao Bacen de declaração da manutenção de ativos no exterior pelos acusados e pela empresa New Sands Câmbio, Viagens e Turismo Ltda., CNPJ 73.799.561/0001-76; b) informações se a empresa New Sands Câmbio, Viagens e Turismo Ltda está autorizada a operar com câmbio, se positivo de que forma, e a totalização, mês a mês, de 01/2000 a 11/2005, do volume de operações; c) registros de operações de remessas/recebimentos internacionais no Sisbacen pela mesma empresa e no mesmo período; d) registros de operações de câmbio no Sisbacen, inclusive relativo a pagamentos de importação ou exportação



# JUSTIÇA FEDERAL
SEÇÃO JUDICIÁRIA DO PARANÁ

que tenham no campo creditado no exterior os nomes "Mabon" ou "Mabo Corporation" no período de 01/2000 a 11/2005. Prazo de 60 dias.

22. Oficie a Secretaria ao COAF - Conselho de Control sobre Atitividades Financeiras solicitando informações sobre eventuais registros er seus bancos de dados acerca dos acusados e da empresa New Sands Câmbic Viagens e Turismo Ltda., CNPJ 73.799.561/0001-76. Prazo de 30 dias.

23. Oficie a Secretaria à Delegacia da Receita Federal d Rio de Janeiro, solicitando o envio de cópia das últimas cinco declarações d rendimento da empresa New Sands Câmbio, Viagens e Turismo Ltda.

24. Considerando que há indícios de que a empresa Nev Sands Câmbio, Viagens e Turismo Ltda., CNPJ 73.799.561/0001-76, esteja send utilizada para acobertar as atividades ilícitas do grupo, decreto o bloqueio em sua contas, o que será feito pelo Bacenjud nesta data.

25. Designo a data de 08/03/2006, às 15:00 para c interrogatório dos acusados.

26. Citem-se e intimem-se os acusados, da data da audiência e do inteiro teor desta decisão, inclusive sobre o bloqueio do saldo da conta Mabon determinada pelo Juízo.

27. Ciência desta decisão por cópia autenticada ao MPF.

28. Por oportuno, ciência por boletim aos defensores já constituídos de Antônio Gonçalves Carneiro *ou f cru*

29. Comunicações e anotações necessárias.

30. Certifiquem-se e solicitem-se seus antecedentes no Estado do Paraná e no Rio de Janeiro.

31. Registre-se, por fim, e apenas a título de argumentação, que a competência deste Juízo sobre o caso decorre da conexão do mesmo com o assim denominado "Caso Banestado", tendo se chegado às contas do Merchants mediante rastreamento de valores evadidos de Foz do Iguaçu, o que foi determinado no inquérito 2003.7000030333-4 em trâmite nesta Vara. Além disso, a denúncia reporta-se ao crime de lavagem tendo por antecedentes crimes financeiros praticados por outros doleiros e que são objeto de outras ações penais ou inquéritos em trâmite por esta Vara. Assim, por exemplo, as contas controladas pelo acusado teriam transacionado com contas em nome de outras off-shores e que são objeto de investigação em outros processos perante esta Vara (v.g.: Tigrus, ação penal 2005.7000034211-7). Entre crime de lavagem e crime antecedente há uma evidente conexão processual no termos do artigo 76, II e III, do CPP. Há precedente neste exato sentido da instância recursal (HC 2005.0401047806-0/PR). Além disso, na movimentação da conta, há registro de transações efetuadas com pessoas domiciliadas no Paraná.

Curitiba, 23 de janeiro de 2005.

Sérgio Fernando Moro
Juiz Federal

**RECEBIMENTO**
Em *03* de *01* de 2006, recebi estes autos. Do que, para constar, lavrei este termo.

# Midland Financial, Inc.
# Acct. No. 9010133

FEDERAL JUSTICE
District Court of Paraná
2nd Criminal Court of Curitiba
Specialized in crimes of money laundering and against the National Financial System

**Proceeding No. 2005.70.00.012518-0**

I

        According to the charges and the elements gathered during the investigation, HENRIQUE LAMBERTI JUNIOR and MARIANEL GANDOLFO MIRANDA illicitly transferred US$ 38,429,103.77 by means of the company *Suissa Administração, Participação e Representação Ltda*, which made the deposits in 'nominees' accounts for a later transfer to CC5 accounts; and transferred such proceeds in the period from March 29th 2001 to September 20th 2002, by means of the offshore Midland Financial Inc. at the Merchants Bank of New York. For such they are liable to sanctions for keeping deposits abroad which were not declared to the Brazilian authorities.

        Concealing and disguising the origin, ownership, location or disposition of these assets, the defendants committed the crime of money laundering whose prior crimes were offences against the financial system referenced above. Owing to the amount of funds transacted and the nature of the operations – exchange – the defendants are liable to sanctions for operating a clandestine financial institution and mismanagement.

        Also in accordance with the charges, HENRIQUE LAMBERTI JUNIOR and MARIANEL GANDOLFO transferred/maintained proceeds of their own abroad, hiding their identities by means of the account Midland, in the period comprised between the years 1998 and 2002 which demonstrates the crimes of illicit transfer of funds abroad and money laundering.

        Among the pieces of evidence which support the prosecution, we can point out the following as material evidence and active participation in the crime:



a) documents relating to the opening and operation of the account and the off-shore MIDLAND;
b) Expert report No. 621/05-INC and enclosed documents which reveal the transactions made in the referred to account in the period comprised between March 2001 and September 2002;
c) Testimony provided by Portuguese citizen Maria Carolina Nolasco, manager in charge of the account Midland;
d) income statements of the defendants and the companies controlled by them which reveal incompatibilities between the information declared by them and the huge transactions carried out in the name of the company SUISSA;

        Hence, owing to the existence of material evidence and participation,

I ACCEPT the charges filed by the Federal Public Prosecution against HENRIQUE LAMBERTI JÚNIOR and MARIANEL GANDOLFO MIRANDA, for the perpetration, in thesis, of crimes set forth in the arts. 4th, 16th and 22nd, sole paragraph, together with the article 1st sole paragraph, subsections I and II from the Law 7.492/86 (Crimes against the National Financial System) and art. 1st, VI and VII, together with the art. 1st, paragraph 1st, I and II, paragraph 2nd, I and II and paragraph 4th all from the Law 9.613/98 ( Money Laundering).

I schedule the interrogatory of the defendants Henrique Lamberti Júnior and Marianel Gandolfo Miranda for the 24th of May, 2005.

The defendants are to be served and notified at the addresses indicated in the report in order to appear before this Court with their defense attorneys for the hearing scheduled.

The defendants' criminal records are requested and are to be certified.

I take this chance to point out that in case the certificates are accompanied by the criminal records, from now it is requested that it is enclosed the descriptive certificates including the information concerning the date(s) of the fact(s) which in thesis are criminal.

II

The Secretariat is to calculate the statute of limitation and refer to it on a stamp on the cover of the records.

III

I defer the Federal Public Prosecution's request in the items 3 to 12 of its prosecution on pgs. 42-46.

Hence, I order that the following are informed by means of an official memo:

a) to the Central Bank – BACEN so that it can inform all the operations of the type "international availability in reais" and exchange operations carried out by the defendants or by the corporate entity SUISSA ADMINISTRAÇÃO, PARTICIPAÇÃO E REPRESENTAÇÃO LTDA., between January 1st 1999 and the present day (item 4);

b) to the Federal Internal Revenue Service in São Paulo/SP so that it initiate tax proceedings against Henrique Lamberti Júnior due to the likely perpetration of the crime set forth in article 1st of the Law 8.137/90 (item 3);

c) to the Council for Financial Activities Control – COAF in Brasília/DF, requesting the transmission to this Court of all the information from its records involving the defendants, RICARDO CLEMENTE KHERLAKIAN and the corporate entities SUISSA SOCIEDADE CORRETORA DE CÂMBIO LTDA (National Corporation Registration Number – CNPJ No. 96.362.918/0001-50), PACTUAL OVERSEAS BANK & TRUST LTD. And TREND BANK LTD. (item 07);

   d) to the Securities and Exchange Commission – CVM in Rio de Janeiro so that it informs about the likely irregularities detected in the operations of SUISSA SOCIEDADE CORRETORA DE CÂMBIO LTDA (CNPJ No. 96.362.918/0001-50), during its operational period and the companies PACTUAL OVERSEAS BANK & TRUST LTD and TREND BANL LTD., as well as any sanction to the company or to the defendant Henrique Lamberti Júnior. On the same letter, request that it is transmitted to this Court all the information in its records involving the corporate entities of the defendants and the abovementioned exchange company especially the full list of customers of the company during the period comprised between January 1st 1999 until the end of its operations (item 07);

   e) to the Piracy Parliamentary Inquiry Commission – CPI, requesting a copy of the testimony given at that Commission by Ricardo Kherlakhian and Reinaldo Kherlakhian, who supposedly are the owners of the Galeria Pajé in São Paulo/SP (item 10);

   f) to the Federal Court of Blumenau/SC requesting copy of the transcriptions of the wiretapping in which it is mentioned the name of the offshore company NAKIA, customer of the account Midland referred to in the charges filed in the proceeding No. 2002.72.05.005466-4 (item !!).

## IV

The Federal Public Prosecution requests the lift of bank secrecy of the accounts of the off-shore companies Midland Financial Inc., Odin Ltd and Nakia Holdings maintained in banks headquartered abroad (items 5 and 6).

The right to secrecy of information (Federal Constitution, article 5th X) is not absolute, and the it is possible its lift as set forth in the article 1st , paragraph 4th, of the Complementary Law 105/01, which revoked the provision set forth in the art. 38, paragraph 1st of the Law 4.595/65.

In the concrete case, there is evidence of the perpetration of crimes against the national financial system and money laundering.

It is then necessary to authorize the access to the banking information of defendants, crucial evidence in this kind of offense.

Owing to the facts presented herein, I ORDER the lift of bank secrecy of:

   - the accounts of the offshore company MIDLAND FINANCIAL INC., ODIN LTD. and NAKIA HOLDINGS INC. maintained in the International Bank of Miami (companies Midland and Odin), MTB ( currently Hudson United Bank – HUB) – both headquartered in New York – (only the company Nakia Holdings Ltd) and Ocean Bank (only the company Odin), Bank AMTRADE, branch located in Miami, and Central Bank of Uruguay, in the period from January 1st until December 31st 2002.

V

The Federal Public Prosecution requests search and seizure at the addresses of the defendant Henrique Lamberti Junior.

The measure should be approved.

According to the preliminary investigation led by the Federal Public Prosecution with the help from the Federal Police, it has been verified that the defendant carried out operations by using the account MIDLAND, being the memos and statements concerning the referred to account were identified as hold mail, commonly used amongst 'doleiros' in order to avoid the production of documents.

For being the likely individual responsible for the transactions of the referred to account and for the incorporation of the homonymous offshore company, the defendant Henrique may keep in his house documents which clarify/explain the facts described in the brief, such as customers files and financial operations orders.

Under such circumstances, it is deemed necessary a search and seizure at the addresses indicated by the Federal Public Prosecution in order to enable the gathering of any evidentiary element relating to the financial activity or to the parallel exchange by the individuals under investigation, particularly documents, statements, accounting records and databank of any kind (Code of Criminal procedure art. 240, paragraph 1st, subsections d, e and h).

Owing to the facts presented herein, I approve of the search and seizure requested by the Federal Public Prosecution at the following addresses:

- rural property at the district of Terra Preta and Olaria , s/n, Joanópolis/SP;
- Praça Antonio Prado, No. 33, conjunto 1609/1610, centro São Paulo/SP;
- Rua Vicente Leporace No. 1220, apt. 71, São Paulo/SP

Issue the corresponding warrant.

Let the Federal Police know by means of forwarding the warrant for execution.

It is authorized to the Federal Police the access to any databank and files stored in magnetic media (hard disk or floppy disks) in the defendants' computers.

All objects seized shall be at the disposal of the Federal Police, which should sent this Court within 15 (fifteen) days at the most, a detailed report of the search and seizure operation.

VI

In the item 12 on pg. 46, the Federal Public Prosecution requests the seizure of the amount of US$ 1,624,609.13, which is deposited in the account Midland at Merchants

Bank of New York in the name of the offshore with the same name, controlled by the defendants. The Federal Public Prosecution also informs that such funds are already restrained by the American Justice in the criminal proceeding US vs. Nolasco (04-CR-617), at the New Jersey Criminal Court.

In order for the measure to be taken, it is necessary evidence of the existence of crime and evidence of participation (Code of Criminal Procedure art. 134) which, as stated in item I of this order, are verifiable in this case.

In the concrete case, the measure turns out to be necessary in order to ensure, in case of conviction, the payment of a fine, the court fees and also the likely compensation for damages to the victim, in this case the Union.

The prior restraint of assets is set forth in the article 136 of the Code of Criminal Procedure which sets forth that *"The seizure of assets may be ordered at first, and may be revoked, however, if within 15 (fifteen) days the registration of the legal mortgage is not proceeded."* However the provision refers to immovable assets, the article 137 of the procedural statute comprises also movable assets and funds. It refers to a measure which aims to avoid that the delay in the process of specialization of the legal mortgage makes the measure inefficient.

It is important to register that the operation in the account Midland in the period comprised between 2001 and 2002 corresponds to an amount equivalent to almost 40 million dollars, which undoubtedly legitimates the restraint of the US$ 1,624,609.13 currently requested, an amount which is significantly inferior to that one.

The lapse of time until the end of the main proceeding may cause a damage which is irreparable or hard to be compensated for, consisting in the ineffectiveness of a convictional provision, at least in reference to the measures which have (or should have) effect on the defendant's estate, which makes the precautionary measure absolutely necessary.

Furthermore, it is verified that the defendants requested from the American Federal Justice the restitution of the amount restrained (according to pages 329-338 of the enclosure I). There is a risk that the referred to proceeds be released at any time.

In this context, either the referred to amount is reserved or there is a chance that it is frustrated the execution of the order requested by the prosecution and the effectiveness of the law per se because even though there is an order for legal restraint from the American Justice, this order may be revoked at any time, as mentioned before.

As both *fumus boni iuris* – consubstantiated in the existence of evidentiary elements concerning the existence of the crime and the identification of the perpetrators – and *periculum in mora* – owing to the risk of awaiting the res judicata of the final decision - are present in this matter, there is an urge to order the provisional remedy of seizure (confiscation) of assets.

Thus, from this term I request that a seizure order be issued. All the communications referring to the seizure must be enclosed in the specific records for the measure.

## VII

Owing to the lift of secrecy and the search and seizure ordered above, these records must proceed confidentially until the search and seizure is executed and after its execution in camera proceeding, enabling exclusive access to its parties and its legal representatives.

Owing to the need of confidentiality in relation to the search and seizure, the order herein shall be executed only after notification on the execution of the warrant. The Federal Public Prosecution must be requested to take action in order to see to the restraint of funds in the United States.

## VIII

Request the Federal Public Prosecution to take the appropriate measures, to forward the request for mutual legal assistance by means of a MLAT to the American authorities in reference to the measures deferred in the items IV and VI above.

Execute it urgently.

Curitiba, April 20th 2005

Gueverson Rogério Farias
Federal Judge In Charge

**Receipt**
**On 22** April, 2005, I received these records. In order to register such fact I prepared this **term.**



**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ
2ª Vara Criminal de Curitiba
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

### Autos n° 2005.70.00.009240-0

I

De acordo com a denúncia e os elementos colhidos durante a investigação, HENRIQUE LAMBERTI JUNIOR e MARIANEL GANDOLFO MIRANDA teriam promovido a **evasão de divisas** de US$ 38.429.103,77, por intermédio da empresa Suissa Administração, Participação e Representação Ltda, a qual efetuaria depósitos em contas de "laranjas" para posterior transferência a contas CC5; e movimentado tais valores, no período de 29 de março de 2001 a 20 de setembro de 2002, por meio da conta da *off shore* Midland Financial Inc., junto ao Merchants Bank de Nova Iorque, **depósitos no exterior não declarados** às autoridades brasileiras.

Ocultando e dissimulando a origem, propriedade, localização ou movimentação desses recursos, os acusados praticariam o crime de **lavagem de dinheiro**, cujo antecedente seriam os crimes contra o sistema financeiro acima referidos. Em face do volume de recursos movimentados e da natureza das operações – câmbio – **manutenção de instituição financeira clandestina e de gestão fraudulenta.**

Ainda nos termos da denúncia HENRIQUE LAMBERTI JUNIOR e MARIANEL GANDOLFO MIRANDA teriam remetido/mantido no exterior recursos de sua propriedade, com a ocultação de suas identidades, através da conta Midland, no período compreendido entre os anos de 1998 e 2002, o que caracterizaria os crimes de **evasão de divisas e de lavagem de dinheiro.**

Dentre os elementos de prova que amparam a acusação, destacam-se como indícios de materialidade e autoria os seguintes:

a) documentos relativos à abertura e movimentação da conta e da *off-shore* MIDLAND;

b) Laudo Pericial n° 621/05-INC e documentos anexos, que revelam as movimentações feitas na referida conta no período compreendido entre março de 2001 a setembro de 2002;

c) depoimento prestado pela cidadã portuguesa Maria Carolina Nolasco, gerente responsável pela conta Midland;

d) declarações de rendimentos dos acusados e da empresa por eles controlada, que revelam desconformidade entre os dados por eles declarados e as vultosas movimentações realizadas em nome da sua empresa SUISSA;

Assim sendo, presentes indícios de materialidade e autoria, **RECEBO a denúncia** oferecida pelo Ministério Público Federal contra HENRIQUE LAMBERTI JUNIOR e MARIANEL GANDOLFO MIRANDA, pela prática, em tese, dos crimes

1



## JUSTIÇA FEDERAL
### SEÇÃO JUDICIÁRIA DO PARANÁ
#### 2ª Vara Criminal de Curitiba
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

previstos no arts. 4º, 16 e 22, parágrafo único, c/c o artigo 1º, parágrafo único, incisos I e II, todos da Lei nº 7.492/86 (Crimes Contra o Sistema Financeiro Nacional) e art. 1º, VI e VII, c/c art. 1º, §1º, I e II, §2º, I e II e §4º, todos da Lei 9.613/98 (Lavagem de Dinheiro).

Designo o dia **24 de maio de 2005, às 14:00 horas,** para a audiência de interrogatório dos réus Henrique Lamberti Junior e Marianel Gandolfo Miranda.

**Citem-se e intimem-se** os denunciados, nos endereços indicados na denúncia, a fim de que, acompanhados de defensor, compareçam neste Juízo para a audiência ora designada.

Sem prejuízo, **certifiquem-se e requisitem-se** seus antecedentes criminais.

Ressalto, por oportuno, caso as certidões venham com ocorrências criminais, desde já, solicitem-se as respectivas certidões narratórias, inclusive com a informação acerca da(s) data(s) do(s) fato(s), em tese, delituoso(s).

### II

Promova a Secretaria o cálculo da prescrição, apondo a respectiva etiqueta na capa dos autos.

### III

**Defiro** o requerido pelo Ministério Público Federal nos itens 3 a 12 de sua manifestação de fls. 42-46.

Assim sendo, **oficie-se:**

a) **ao BACEN,** para que informe todas as operações, na modalidade 'disponibilidade internacional de reais' e operações de fechamento de câmbio realizadas pelos denunciados ou pela pessoa jurídica SUISSA ADMINISTRAÇÃO, PARTICIPAÇÃO E REPRESENTAÇÃO LTDA., entre 1º de janeiro de 1999 e a presente data (item 4);

b) **à Receita Federal em São Paulo/SP,** para que inicie procedimentos fiscais em face de Henrique Lamberti Junior, em virtude do possível cometimento do delito tipificado no artigo 1º da Lei 8.137/90 (item 3);

c) **ao COAF,** em Brasília/DF, solicitando a remessa a este Juízo de todas as informações constantes em seus arquivos envolvendo as pessoas físicas dos denunciados, de RICARDO CLEMENTE KHERLAKIAN e as pessoas jurídicas SUISSA SOCIEDADE CORRETORA DE CÂMBIO LTDA (CNPJ 96.362.918/0001-50), PACTUAL OVERSEAS BANK & TRUST LTD. e TREND BANK LTD. (item 07);

2



**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ
2ª Vara Criminal de Curitiba
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

d) à **Comissão de Valores Mobiliários – CVM**, no Rio de Janeiro/RJ, para que informe acerca de eventuais irregularidades detectadas nas operações da SUISSA SOCIEDADE CORRETORA DE CÂMBIO LTDA (CNPJ 96.362.918/0001-50), em todo o período em que operou, e das empresas PACTUAL OVERSEAS BANK & TRUST LTD. e TREND BANK LTD., bem como eventuais penalidades aplicadas à empresa ou a ao réu Henrique Lamberti Junior. No mesmo ofício, solicite-se que sejam remetidas a este Juízo todas as informações constantes em seus arquivos envolvendo as pessoas físicas dos denunciados e a sociedade corretora supra mencionada, sobretudo a relação integral de clientes da empresa durante o período compreendido entre 1º de janeiro de 1999 até o encerramento de suas atividades (item 07);

e) à **CPI da Pirataria**, solicitando cópia dos depoimentos prestados àquela comissão por Ricardo Kherlakhian e Reinaldo Kherlakhian, supostamente proprietários da Galeria Pajé, em São Paulo/SP (item 10);

f) ao **Juízo Federal de Blumenau/SC**, solicitando cópia das transcrições das interceptações telefônicas em que surge o nome da empresa *off shore* NAKIA, cliente da conta MIDLAND, mencionada na denúncia oferecida no processo nº 2002.72.05.005466-4 (item II).

IV

O Ministério Público Federal requer a quebra de sigilo bancário das contas das empresas *off-shore* Midland Financial Inc., Odin Ltd. e Nakia Holdings Inc. mantidas em bancos sediados no exterior (itens 5 e 6).

O direito ao sigilo de dados (CF, art. 5º, X) não é absoluto, sendo possível sua quebra nos termos do disposto no art. 1º, § 4º, da Lei Complementar 105/01, o qual revogou o disposto no art. 38, § 1º, da Lei 4.595/65.

No caso concreto, há indícios, como visto, da prática de crimes contra o sistema financeiro nacional e de lavagem de dinheiro.

Torna-se assim **necessário** autorizar o acesso aos dados bancários dos investigados, prova essencial nessa espécie de delito.

Ante o exposto, **DECRETO o afastamento do sigilo bancário:**

- das contas das empresas *off shore*, MIDLAND FINANCIAL INC., ODIN LTD. E NAKIA HOLDINGS INC. mantidas nos International Bank of Miami (empresas Midland e Odin), MTB (hoje Hudson United Bank – HUB) – ambos sediados em Nova Iorque – (somente a empresa Nakia Holdings Ltd) e Ocean Bank (somente a empresa Odin)Banco AMTRADE, agência situada em Miami, e Banco Central do Uruguai, no período de *1º de janeiro de 2001 até 31 de dezembro de 2002.*

3

54

**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ
2ª Vara Criminal de Curitiba
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

**V**

O Ministério Público Federal requer busca e apreensão nos endereços do denunciado Henrique Lamberti Junior.

A medida deve ser deferida.

De acordo com as investigações preliminares realizadas pelo Ministério Público Federal, com o auxílio da Polícia Federal, foi constatado que o denunciado realizava operações utilizando-se da conta MIDLAND, sendo que os informes e extratos a respeito da referida conta eram identificados como *hold mail*, de uso comum entre os doleiros, a fim de evitar a produção de documentos.

O réu Henrique, por ser o possível responsável pelas movimentações da referida conta e pela constituição da empresa *off shore* homônima, pode manter em sua residência documentos que esclareçam/elucidem os fatos descritos na peça inicial, como cadastros de clientes e ordens de operações financeiras.

Nessas circunstâncias torna-se necessária a realização de busca e apreensão nos endereços indicado pelo Ministério Público Federal, a fim de possibilitar a colheita de quaisquer elementos de prova relacionados à atividade financeira ou no câmbio paralelo dos investigados, em especial documentos, extratos, registros contábeis e bancos de dados de qualquer espécie (CPP, art. 240, § 1º, alíneas *d, e* e *h*).

Ante o exposto, defiro a **busca e apreensão** requerida pelo Ministério Público Federal, nos seguintes endereços:

Joanópolis/SP;
- propriedade rural no bairro da Terra Preta e Olaria, s/n,

Pauo/SP;
- Praça Antonio Prado, nº 33, conjunto 1609/1610, centro, São

- Rua Vicente Leporace, nº 1220, ap. 71, São Paulo/SP.

**Expeça-se** o respectivo mandado.

**Oficie-se à Polícia Federal**, encaminhando o mandado para cumprimento.

Fica desde já autorizado à Polícia Federal o acesso a quaisquer bancos de dados e arquivos mantidos em meio magnético (disco rígido ou disquetes) nos computadores do investigado.

Todos os objetos apreendidos ficarão à disposição da Polícia Federal, devendo a mesma enviar, a este Juízo, no prazo máximo de 15 (quinze) dias, relatório circunstanciado da operação de busca e apreensão.

4





**JUSTIÇA FEDERAL**
SEÇÃO JUDICIÁRIA DO PARANÁ
2ª Vara Criminal de Curitiba
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

**VI**

No item 12 da fl. 46, o *parquet* federal requer o seqüestro da quantia de US$ 1.624.609,13, depositada na conta Midland do Merchants Bank of New York, em nome da *off shore* homônima, controlada pelos denunciados. Informa ainda o Ministério Público Federal que tais valores já se encontram bloqueados pela Justiça norte-americana na ação criminal US v. Nolasco (04-CR-617), da Corte Criminal de New Jersey.

Para que a medida seja decretada, faz-se necessária **prova da existência do crime e indícios de autoria** (CPP, art. 134), que, conforme visto no item I da presente decisão, existem no presente caso.

No caso concreto, a medida se revela como necessária a fim de assegurar, em caso de condenação, o pagamento da **pena de multa**, das **custas processuais** e também de eventual **ressarcimento de danos à vítima**, no caso a União.

O **seqüestro prévio** de bens está previsto no artigo 136 do Código de Processo Penal, o qual dispõe que *"o seqüestro do imóvel poderá ser decretado de início, revogando-se, porém, se no prazo de 15 (quinze) dias não for promovido o processo de inscrição da hipoteca legal."* Muito embora o dispositivo se refira somente a imóvel, o artigo 137 do estatuto processual estende seu alcance também a **bens móveis e valores**. Trata-se de medida que visa a evitar que eventual demora no processo de especialização da hipoteca legal acabe por tornar ineficaz a medida.

Vale consignar que a movimentação da conta Midland, no período compreendido entre os anos de 2001 e 2002, corresponderia a uma quantia equivalente a quase **40 milhões de dólares**, o que sem dúvida legitima o bloqueio de US$ 1.624.609,13ora requerido, valor significativamente inferior àquele.

O decurso do tempo até o término da ação principal pode causar dano irreparável ou de difícil reparação, consistente na ineficácia de eventual provimento jurisdicional condenatório, ao menos no que se relaciona com medidas que teriam (ou deveriam ter) efeito no patrimônio do acusado, o que torna a medida cautelar absolutamente **necessária**.

Ademais, verifica-se que os réus requereram à Justiça Federal norte-americana a restituição da quantia por ela bloqueada (cf. fls. 329-338 do apenso I), existindo o risco de que a qualquer momento referido numerário seja liberado.

Nesse contexto, ou se reserva desde já o referido valor, ou se correrá o risco de ter frustrada a realização do provimento almejado pela acusação e a efetividade do próprio direito, pois muito embora haja determinação de bloqueio judicial pela justiça norte-americana, tal medida pode ser revogada a qualquer momento, como se discorreu anteriormente.

Presentes, portanto, tanto o *fumus boni iuris* – consubstanciado na existência de elementos de prova acerca da existência do crime e de sua autoria –,

5





## JUSTIÇA FEDERAL
### SEÇÃO JUDICIÁRIA DO PARANÁ
**2ª Vara Criminal de Curitiba**
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

quanto o *periculum in mora* – decorrente do risco em aguardar o trânsito em julgado da decisão definitiva – há de ser decretada a medida cautelar de seqüestro (arresto) de bens.

Assim, formem-se autos de seqüestro a partir do presente despacho, a serem distribuídos por dependência a este. Todos os informes referentes ao seqüestro deverão ser juntados nos autos específicos para a medida.

### VII

Em face da quebra de sigilo e da determinação de busca e apreensão acima decretadas, estes autos deverão tramitar em **silêncio de justiça** até que a busca e apreensão seja cumprida e, após o cumprimento dessa medida em **segredo de justiça**, possibilitando acesso exclusivamente às partes e seus procuradores.

Tendo em vista a necessidade de sigilo em relação à busca e apreensão, as diligências ora determinadas deverão ser cumpridas somente após a notícia de cumprimento do mandado, devendo ser providenciada desde já apenas a intimação do MPF para que se possibilite a esse órgão a adoção das medidas atinentes ao bloqueio de valores nos Estados Unidos.

### VIII

**Intime-se** o Ministério Público Federal que deverá providenciar, conforme requerido, a juntada e o encaminhamento do pedido de assistência via MLAT às autoridades norte-americanas quanto às medidas deferidas nos itens IV e VI supra.

Cumpra-se, **com urgência**.

Curitiba, 20 de abril de 2005.

**Gueverson Rogério FARIAS**
Juiz Federal Substituto

Aos _____ `22 | 04`      RECEBIMENTO
termo.                         de 2005, recebi estes autos. Do que, para constar, lavrei este

6

# Fares Baptista Pinto
# Acct. No. 9204181



True and correct
according to original



## FEDERAL COURT
### JURISDICTION OF PARANÁ
#### 2nd Federal Criminal Court of Curitiba

Specialized in crimes of Money laundering and against the National Financial System

**CONCLUSION**

On March 7, 2006, I give this case to the Honorable Deputy Federal Judge of the 2nd Federal Criminal Court. For the record, I drew up this entry.

### Record Number 2005.70.00.034210-5

**I**

In view of the text of certificate on page the defendants were not found, but that they would return from a trip soon after the date originally designated for their questioning, I redesignate the act for the April 18, 2006, at 2 p.m.

A new rogatory letter be issued for the citation and the notification of the charged.

**II**

Before the indications of the practice of crimes against the national financial system and of money laundering exposed in the decision of receipt of the accusation (pages 29/31), the provisional seizure of the amounts held at the BENFICA account, number 9204181, of the Merchants Bank/NY – currently already blocked because of a decision of the North American authorities – shall be granted.

The Brazilian Legislation establishes the possibility of seizure of assets in order to guarantee the payment of a sentence of fine, court costs, and also for loss in case of criminal conviction (Code of Criminal Procedure, articles 125 anf following, Law number 9613/98, article 4, main body).

In the current case, besides the evidence of existence of crime and the indications of authorship, there is evident risk of inefficacy of an eventual conviction in case the resources and assets of the defendants, in sufficient value to ensure the patrimonial effects of the criminal sentence, are not impounded immediately.

It has to be added that there has already been an attempt, on the part of the charged, to liberate of the amounts blocked at the Justice of the United States, which reinforces the need of the existence of a formal request from the Brazilian Authorities so that the blockade of that account is held until the judgement of the crimes against the National Financial System and of money laundering, with which they have been charged at the Brazilian Federal Court.

Thus, I decree the impounding of the amounts held at the BENFICA, account, number 9204181, at the Merchants Bank/NY.

The Federal Public Prosecutor's Office shall arrange for, as requested, the attachment of documents and the request of assistance through



True and correct
according to original



# FEDERAL COURT
### JURISDICTION OF PARANÁ
### 2nd Federal Criminal Court of Curitiba
Specialized in crimes of Money laundering and against the National Financial System

MLAT to the North American authorities regarding the measures of breach of bank confidentiality and impounding granted above, supporting it with a copy of the present decision and of the decision in which the accusation was accepted.

At the time, a request of assistance for the formal delivery of the documents attached to pages 68/80 shall be forwarded,

An appendant with the documents of pages 58/86.

As for the request of  breach of bank data confidentiality  of accounts abroad (pages 29, Item 8), I consign that it has already been the object of request in the records of Criminal Representation number 2005.70.00.020830-9, distributed to the Head Judge of this Court.

This way, before the possible connection between the present criminal action and the breach of confidentiality, object of those records, be an official letter sent  to that court so that, in case it is understood that way, it determines the redistribution of the records and the appending to this criminal suit.

Later, examination be granted to the Federal Public Prosecutor's Office for the taking of the necessary actions described above as of the issuance of Request of Assistance - MLAT.

Curitiba, March 7, 2006.

### GUEVERSON FARIAS
Deputy Federal Judge

### RECEIPT
On  02/03/2006, I received these records. Of which, for the records, I drew up this entry.





## JUSTIÇA FEDERAL
### SEÇÃO JUDICIÁRIA DO PARANÁ
2ª Vara Criminal de Curitiba
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

**CONCLUSÃO**

Aos 07/03/2006, faço estes autos conclusos ao MM. Juiz Federal Substituto da 2ª Vara Criminal. Para constar, lavrei este termo.



**Autos 2005.70.00.034210-5**

I

Diante do teor da certidão de fl. 100, a qual noticia que os réus não foram encontrados, mas que retornariam de viagem logo após a data originalmente desiganda para seus interrogatórios, <u>redesigno</u> o ato para o <u>dia 18 de abril de 2006, às 14:00 horas.</u>

<u>Expeça-se</u> nova carta precatória para citação e intimação dos acusados.

II

Diante dos indícios da prática de crimes contra o sistema financeiro nacional e de lavagem de dinheiro expostos na decisão de recebimento da denúncia (fls. 30/32), deve ser deferido o <u>seqüestro cautelar</u> dos valores mantidos na conta BENFICA, nº 9204181, do Merchant's Bank/NY, atualmente já bloqueada em virtude de decisão das autoridades norte-americanas.

A legislação brasileira prevê a possibilidade de seqüestro de bens a fim de garantir o pagamento de pena de multa, das custas processuais e inclusive para perdimento em caso de condenação criminal (Código de Processo Penal, art. 125 e ss; Lei nº 9.613/98, art. 4º, *caput*).

No presente caso, além da prova da existência do crime e indícios de autoria, há evidente risco de ineficácia de eventual sentença condenatória caso não sejam desde já seqüestrados bens e ativos do requerido suficientes para garantir os efeitos patrimoniais da sentença criminal.

Acrescente-se que já houve tentativa, por parte dos requeridos, de liberação dos valores bloqueados junto à Justiça dos Estados Unidos, o que reforça a necessidade da existência de requerimento formal das autoridades brasileiras a fim de que o bloqueio dessa conta seja mantido até o julgamento dos crimes contra o sistema financeiro nacional e de lavagem de dinheiro pelos quais eles foram acusados perante a Justiça Federal brasileira.

Assim sendo, decreto o <u>seqüestro dos valores</u> <u>mantidos na conta BENFICA, nº 9204181, do Merchant's Bank/NY.</u>

O Ministério Público Federal deverá providenciar, conforme requerido, a juntada e o encaminhamento do pedido de assistência via





## JUSTIÇA FEDERAL
### SEÇÃO JUDICIÁRIA DO PARANÁ
#### 2ª Vara Criminal de Curitiba
Especializada em delitos de Lavagem de dinheiro e contra o Sistema Financeiro Nacional

MLAT às autoridades norte-americanas quanto às medidas de quebra de sigilo bancário e de seqüestro supra deferidas, instruindo-o com cópia da presente decisão e da decisão na qual foi recebida a denúncia.

Na oportunidade, deverá ser encaminhado ainda pedido de assistência para entrega dos documentos juntados às fls. 58/86 na forma prevista no artigo XIII do MLAT.

Forme-se Apenso com os documentos de fls. 58/86.

Quanto ao requerimento para quebra de sigilo de dados bancários de contas no exterior (fl. 29, item 8), consigno que já foi objeto de requerimento nos autos da Representação Criminal nº 2005.70.00.020830-9, distribuída ao Juízo Titular desta Vara.

Assim sendo, diante de possível conexão entre a presente ação penal e a quebra de sigilo objeto daqueles autos oficie-se àquele juízo para que, caso assim entenda, determine a redistribuição dos autos e apensamento á presente ação penal.

Após, abra-se vista ao Ministério Público Federal para adoção das providências acima determinadas quanto à expedição de Pedido de Assistência - MLAT.

Curitiba, 7 de março de 2006.

GUEVERSON FARIAS
Juiz Federal Substituto

**RECEBIMENTO**
Aos      de 2006, recebi estes autos. Do que, para constar, lavrei este termo.

# Tigrus Corporation
# Acct. No. 9004681

# &

# Pompeu Maia
# Acct. No. 9200172



 # FEDERAL COURT
JURISDICTION OF PARANÁ



## CONCLUSION

On January 13, 2006, I give this case to the Honorable Federal Judge of the 2nd Federal Criminal Court of Curitiba.
For the record, I drew up this entry.

### Case number 2005.7000034211-7

1. It is the accusation formulated by the Federal Public Prossecutor's Office against

Pompeu Costa Lima Pinheiro Maia and Isabel Cristina Dutra Pinheiro Maia, for the practice of the crimes establised in articles 4, 16, 22, sole paragraph, of Law number 7.492/86, and article 1 of Law number 9.613/98.

2. In summary, the matter in issue in the accusation is the financial movement

abroad, without any statement or control from the public authorities, of an account on behalf of the off-shore company Tigrus Corporation, headquartered in the British Virgin Islands, and of account number 9200172 on behalf of the very accused party, Pompeu Maia, both held at the Merchants Bank in New York

3. According to expert reports performed by the Federal Police

the Tigrus account would have handled, in the period from August, 1998 to December, 2002, around forty-four million dollars, whereas the account on behalf of the very accused party around six million dollars in the period from January, 1998 to July, 2002.

4. The group would also have activities in Brazil through the company

called Imatur Viagens e Tourism Ltda., registered with the CNPJ/MF Corporate Taxpayer Roll under the number 31.234.636/0001-21, with headquarters in Rio de Janeiro.

5. Also according to the complaint, the accused parties would be

black market traders, with strong actuation, and they would use the foreign accounts and companies in Brazil to perform illegal financial operations, deceiting the control systems of the Brazilian Central bank and concealing of their own or third parties' assets from the Federal Revenue, performing financial crimes.

6. When conceiling and dissimulating the provenance, ownership, location or handling or their own or third parties' amounts held in accounts abroad, sent there or brought whence, they would have practiced the crime of money laundering, having crimes against the national financial system as precedings.

7. The Public Prosecutor's Office also informs that Tigrus account and the one on behalf of

the very accused party had their balance, of US$ 237,093.80 and US$ 86,401.27, respectively, frozen in the United States by the North American authorities themselves in the criminal suit number 04-CR-617, *United States v. Maria Carolina Nolasco* (the manager of the Merchants Bank responsible for the accounts), in path in procedural progress at the Federal Court of New Jersey.



# FEDERAL COURT

JURISDICTION OF PARANÁ

large volume of handling and the identification of several transactions with accounts controlled by alleged Brazilian dollar dealers (Milano, Harber, Pelican, etc.) are indicators that the accounts were used for the practice of illlegal exchange transactions.

11. It deserves equal prominence petition sent by Tigrus to the North American authorities, intending the unfreezing of the account, in which it claims that the manager of the account would be the first accused party and that Tigrus "assists its foreign customers in obtaining goods and services, including travel services such as vacations, events, cruises, flights and hotels, and products such as electronics and machine parts, essentially operating as a buyer and/or messenger for those customers" (page 171 of appendant I, vol. I).

12. Well, although the claims deserve further explanations, the use of foreign accounts, with transactions with dollar dealers and seemingly the acquisition of electronic products or machines greatly difers, in principle, from the activities that are proper to travel and exchange agencies. Even the exchange activity of travel agencies is limited to the market of floating rates, with exchange of foreign currency at the counter, and not serving importers or exporters or the use of accounts abroad.

13. On the other hand, the Imatur company, in its tax return forms to the Federal Revenue does not register having assets or operations abroad, nor profits or losses resulting from activities abroad. There are also no records about the holding of the Tigrus account abroad in the tax return forms of the accused parties. There are only records of an account held on behalf of his very name in the tax return form of Pompeu for the base periods of 2002 and 2003, which does not include the whole period.

14. It has to be taken into account that the existing exchange system in Brazil allows the sending of money abroad whether as payments or as investments. However, as it is reasonable in any liberal-democratic system, there is a control system on the part of the monetary authority, especially the demand for recording the transactions and investments at the Central bank, as well as that they are performed by duly accredited financial institutions (article 10, X, "d" of Law number 4.595/64; article 23 of Law number 4.131/62; and article 1 of Law number 5.601/70). Even the recent flexibilization of the exchange system with Bacen's Resolutions numbers 3.265 and 3.266, from March 4, 2005, did not alter this basic structure. The activity carried out by the accused party seems to be part of the parallel exchange system. Such parallel system would be controlled by "dollar dealers" that would perform exchange transactions outside the official system, with unauthorized purchase and sale of dollars, whether in cash or through the clearance system, with the delivery of dollars through deposit in foreign bank accounts in return to payment in Real in Brazil or vice-versa. Such clearance system is commonly callled "dollar cable" in Brazil and "dollar discounting" abroad (as names extracted from RICHARDS, James R. *Transnational criminal organizations, cybercrime, and money laundering*. CRC Press, 1999, p. 57). It also bears resemblance, due to its informality and partially being outside the formal financial system, with what has been internationally called the "hawala system". Such operations, besides illegals, are kept outside the official accounting or any control on the part of the public authorities, constituting a favorable environment for tax dodging, foreign currency drain, and also money laundering. In fact, the deliberate purpose of such operations,



# FEDERAL COURT
JURISDICTION OF PARANÁ





abroad the names "Tigrus Corporation" or "Tigrus" in the period between 01/1998 and 11/2005. 60-day term.

      21.   The Office of COAF – Conselho de Controle sobre Atividades Financeiras (Council of Control on Financial Activities) shall be sent an official communication requesting information about any records in its databases concerning the accused parties and of the company Imatur Viagens e Tourism Ltd. 30-day term.

      22.   I appoint the date of March 06, 2006, at 3:00 p.m. for the examination of the accused parties.

      23.   The accused parties shall be notified and summoned, of the date of the hearing and of all the contents of this decision, including the blockade of the balance of the accounts ordered by the Court.

      24.   Being timely, the defenders shall be summoned, by report, of the date and time of the hearing.

      25.   Acknowledgement of this decision by copy authenticated to the Federal Public Prossecutor's Office.

      26.   Necessary communications and registrations.

      27.   Have them certified and be requested their records in the States of Paraná and Rio de Janeiro.

      28.   Organize the appendants to the accusation, numbering them. Filed at the General Office the originals of the CDs (inside cover of appendant I, vol. 3 and 4), keeping copies in the inside covers at the disposition so the accused parties can make copies of them.

      29.   Register, at last, and only for the sake of argumentation, that the competence of this Court over the case results from its connection with the so-called "Caso Banestado" (*Banestado Case*), the Merchants account having been found through the tracking of amounts evaded from Foz do Iguaçu, which was determined in the investigation number 2003.7000030333-4 in procedural progress in this Court. Besides, the accusation relates to the crime of money laundering having as their precedings the financial crimes performed by other dollar dealers and that are matter in issue in other criminal cases or investigatinos in procedural progress in this Court. This way, for example, the accounts controlled by the accused parties would have had transactions with accounts on behalf of other off-shores companies and which are matter in issue of investigation in other cases at this Court (e.g.: Ônix, case number 2003.7000035861-0, and Tupi Câmbios, criminal case number 2002.7000039533-2; Depolo, case number 2004.7000033195-4, and Braza, criminal case number 2004.7000025085-1). Between the crime of money laundering and the preceeding crime there is an evident procedural connection in the terms of article 76, II and III, of the Code of Criminal Procedure. There is precedent in this very sense in the recourse instance (HC 2005.0401047806-0/PR).

Curitiba, January 20, 2006.

Sergio

Sergio Fernando Moro